## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SANDRA RODRÍGUEZ-COTTO;
RAFELLI GONZÁLEZ-COTTO,

*Plaintiffs*,

v.

WANDA VÁZQUEZ-GARCED, Governor
of Puerto Rico; DENNISE NOEMÍ
LONGO-QUIÑONES, Secretary of
Department of Justice of Puerto Rico;
PEDRO JANER, Secretary of Puerto Rico
Department of Public Safety; HENRY
ESCALERA, Puerto Rico Police
Commissioner, all in their official capacities,

*Defendants*.

Civil Action No. _____

Preliminary and Permanent Injunction

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      Plaintiffs Sandra D. Rodríguez-Cotto and Rafelli González-Cotto bring this lawsuit to challenge two provisions of the Law of the Puerto Rico Department of Safety, 25 L.P.R.A. § 3501 *et seq.*, both of which make it a crime to share so-called fake news about emergencies in Puerto Rico, including the current public health emergency caused by COVID-19.

2.      The first provision, 25 L.P.R.A. § 3654(a), makes it a crime to raise "a false alarm in relation to the imminent occurrence of a catastrophe in Puerto Rico or, if there is already a state of emergency or disaster, spread[] rumors or rais[e] a false alarm regarding non-existing abnormalities."

1

3.      The law was amended on April 6, 2020, to include a second fake news provision, 25 L.P.R.A. § 3654(f), which makes it a crime to "[t]ransmit or allow [another person] to transmit by any means, through any social network or mass media, false information with the intention of creating confusion, panic or collective public hysteria, regarding any proclamation or executive order decreeing a state of emergency or disaster or curfew." [1]

4.      25 L.P.R.A. §§ 3654(a) and (f) (the Challenged Provisions) violate the constitutional rights to free speech, a free press, and due process. First, the Challenged Provisions violate the First Amendment because they are substantially overbroad. For instance, they do not require the government to establish that the defendant knew the information was false or acted with reckless disregard as to falsity. Second, the Challenged Provisions violate the First Amendment because they impose an impermissible content-based restriction on speech about emergency conditions in Puerto Rico. Finally, the Challenged Provisions violate the

---

[1] The Challenged Provisions read as follows:

Será sancionada con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de cinco mil (5,000) dólares o ambas penas a discreción del tribunal, toda persona que realizare cualquiera de los siguientes actos:

(a) Dé una falsa alarma en relación con la inminente ocurrencia de una catástrofe en Puerto Rico o, si existiendo ya un estado de emergencia o desastre, disemine rumores o dé falsas alarmas sobre anormalidades no existentes.
. . . .
(f) Transmita o permita transmitir por cualquier medio, a través de cualquier red social o medio de comunicación masivo, información falsa con la intención de crear confusión, pánico o histeria pública colectiva, con respecto a cualquier proclama u orden ejecutiva decretando un estado de emergencia o desastre o toque de queda. En el caso de que la diseminación de información falsa resulte en daños al erario público, o a terceros, o la propiedad pública o privada, que excedan los diez mil (10,000) dólares, o cuando la conducta resulte en lesiones o daños físicos, se impondrá la pena correspondiente a la de un delito grave en cuarto grado.

25 L.P.R.A. § 3654(a), (f), http://www.agencias.pr.gov/ogp/Bvirtual/LeyesOrganicas/pages/20-2017.aspx. Pursuant to Local Rule 5(g), Plaintiffs will file a certified translation of these provisions. All English translations hereinafter are uncertified.

Fourteenth Amendment's Due Process Clause because they are unconstitutionally vague. Terms like "non-existing abnormalities" and "confusion" are so vague that they provide inadequate notice about what speech is prohibited and give law enforcement officials largely untethered discretion to prosecute the government's critics and opponents.

5.     The threat of prosecution under 25 L.P.R.A. §§ 3654(a) and (f) has chilled Plaintiffs' reporting on the COVID-19 public health emergency and the government's response to the crisis, as well as their access to sources.

6.     Plaintiffs bring claims for declaratory and injunctive relief under 42 U.S.C. § 1983 against Defendants Governor Wanda Vázquez Garced, Secretary of Justice Dennise Noemí Longo Quiñones, Secretary of Public Security Pedro Janer, and Police Commissioner Henry Escalera, in their official capacities. Plaintiffs seek a ruling declaring that the Challenged Provisions violate the First and Fourteenth Amendments to the Constitution, both on their face and as applied to Plaintiffs, and enjoining Defendants from enforcing these provisions. Plaintiffs further allege as follows:

**PARTIES**

7.     Plaintiff Sandra D. Rodríguez Cotto is an independent journalist with over 30 years of experience in print, television, magazine, radio and digital media in Puerto Rico, the United States and several Latin American countries. She hosts the syndicated radio program "En Blanco y Negro con Sandra," which airs daily, Monday to Friday, at 1 PM on at least 11 broadcast and online radio stations throughout Puerto Rico. Since 2010, she has published a blog by the same name, where she features her own news stories, in-depth reporting, and analysis of the media and politics. In 2019, she received the Bolívar Pagán National Literature and Journalism Award from the Institute of Puerto Rican Literature.

8.    Ms. Rodríguez Cotto's coverage of the use of misogynistic language and descriptions of violence against women in a Telegram chat between Governor Ricardo Rosselló and his aides sparked island-wide protests that led to Governor Rosselló's resignation. Her reporting has been picked up by media outlets across the world, including *The New York Times*, *The Guardian*, *Vice*, *MTV*, *Christian Science Monitor*, and many others.

9.    Ms. Rodríguez Cotto is a resident of Guaynabo, Puerto Rico.

10.    Plaintiff Rafelli González Cotto is an independent journalist with over 10 years of experience in print, magazines, radio, TV and digital media in Puerto Rico. He is also a lawyer and notary public. He has worked with several newspapers on the island, including *El Nuevo Día*, *Caribbean Business* and *CB en Español*, where he was the Digital Editor. Subsequently, he was appointed as the Digital Executive Editor at Latin Media House, a publishing house, where he directed the electronic platforms of six publications, two newspapers and four magazines, for approximately three years.

11.    In 2017, while serving as the Digital Editor for *Caribbean Business* and *CB en Español*, Mr. González Cotto participated in the publication of several digital stories about the Whitefish Energy scandal. Those stories revealed that the Puerto Rico Electric Power Authority ("PREPA") awarded a $300 million contract to rebuild Puerto Rico's electric grid to a small private company with limited experience and only two registered employees, instead of requesting cooperation through the mutual assistance program of the American Public Power Association. *Id.* Notably, the contract also prohibited the government from auditing the "cost and profit elements" of the contractor's labor rates. The story generated significant controversy in Puerto Rico and the United States. PREPA subsequently canceled the contract at the request of then-Governor Ricardo Rosselló.

12.     Mr. González Cotto is a resident of Bayamón, Puerto Rico

13.     Defendant Wanda Vázquez Garced is the Governor of Puerto Rico. As Puerto Rico's chief executive officer, she is charged with executing the laws of Puerto Rico. P.R. Const., Art. IV, § 4. She is sued in her official capacity.

14.     Defendant Dennise N. Longo Quiñones is the Secretary of Justice for Puerto Rico. As the head of the Department of Justice and the chief law enforcement officer for Puerto Rico, she is charged with enforcing Puerto Rico's civil and criminal laws. 3 L.P.R.A. § 292. Secretary Longo Quiñones is sued in her official capacity.

15.     Defendant Pedro Janer is the Secretary of Public Security. He is charged with overseeing the Department of Public Security and its constituent bureaus. 25 L.P.R.A. § 3505. He is also charged with establishing and implementing public policy with regard to all matters of security, emergency, disasters, and criminal investigation. *Id.* He is sued in his official capacity.

16.     Defendant Henry Escalera is the Commissioner of the Puerto Rico Police Bureau. He is charged with overseeing the Puerto Rico Police Bureau. 25 L.P.R.A. § 3534. He is sued in his official capacity.

## JURISDICTION AND VENUE

17.     This action arises under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

18.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

19.     Venue in the District of Puerto Rico is based on 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

### Law 20-2017

20.    On April 10, 2017, Puerto Rico enacted Law 20-2017, the Law of the Puerto Rico Department of Public Safety, 25 L.P.R.A. § 3501 *et seq*.

21.    Section 6.14 of Law 20-2017 provides, in relevant part: "Any person  who commits any of the following acts shall be punished by a term of imprisonment not to exceed six (6) months or by a fine not to exceed five thousand (5,000) dollars or both penalties at the discretion of the court:  (a) Raising a false alarm with respect to the imminent occurrence of a catastrophe in Puerto Rico, or spreading rumors or raising a false alarm regarding nonexisting abnormalities." 25 L.P.R.A. § 3654(a).

### The COVID-19 Public Health Emergency and the Government's Response

22.    COVID-19 is a novel infectious disease caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2).

23.    On March 11, 2020, the World Health Organization declared the spread of COVID-19 a global pandemic.

24.    On March 12, 2020, Governor Vázquez declared a "State of Emergency" through Administrative Bulletin No. OE-2020-020.

25.    On March 15, 2020, Governor Vázquez issued the first of several executive orders establishing emergency measures to control the spread of the virus that causes COVID-19 in Puerto Rico, Administrative Bulletin No. OE-2020-023. The order imposed an island-wide curfew and closed all businesses not involved in food sales, medicine, or banking.

26.    On March 30, 2020, through Administrative Bulletin No. OE-2020-029, Governor Vázquez declared that the government would extend the curfew and tightened restrictions on

6

non-essential activity, including by requiring non-essential workers to return home by 7 p.m. and limiting motorists' use of the public roads.

27.     Throughout the COVID-19 public health crisis, the government has been disquietingly opaque about its actions and the current state of the public health emergency. For example, between April 17 and May 17, Governor Vázquez has barely appeared at two official press conferences to speak about the virus. In her last appearance on May 12, she spent five minutes answering questions from the press.

28.     Meanwhile, the government charged Pastor José Luis Rivera Santiago under 25 L.P.R.A. § 3654(a) for allegedly disseminating false information on the messaging platform WhatsApp about a rumored executive order to close all businesses in response to the COVID-19 pandemic. The government alleged that Pastor Rivera Santiago's speech resulted in a rush on the supermarkets. In fact, however, Governor Vázquez did eventually announce an executive order closing almost all businesses in Puerto Rico over Easter weekend, which itself caused a run on the grocery stores. On or about May 7, the Court of San Juan concluded that the government had failed to establish probable cause to prosecute Pastor Rivera Santiago under 25 L.P.R.A. § 3654(a).

## Law 35-2020

29.     To enforce Governor Vázquez's curfew and other emergency orders, Puerto Rico enacted Law 35-2020, which amends Section 6.14 to add two new offenses.

30.     First, Law 35-2020 makes it a crime to "breach[], fail[] to comply or disobey[] in any way an executive order of the Governor of Puerto Rico establishing a curfew or decreeing a state of emergency or disaster." 25 L.P.R.A. § 3654(e). Plaintiffs do not challenge 25 L.P.R.A. § 3654(e) in this Complaint.

31.     Second, Law 35-2020 makes it a crime to "[t]ransmit or allow [another person] to transmit, by any means, through any social network or mass media, false information with the intention of creating confusion, panic or collective public hysteria, regarding any proclamation or executive order decreeing a state of emergency or disaster or curfew." The provision further states that the offense may be charged as a felony in the fourth degree "[i]n the event that the dissemination of false information results in damages to the public treasury, or to third parties, or public or private property, that exceed ten thousand (10,000) dollars, or when the conduct results in physical injury or damage." 25 L.P.R.A. § 3654(f).[2]

32.     Law 35-2020's Statement of Motives provides, in relevant part: ""[I]t is highly reprochable that malicious people use social media or mass media to disseminate false information with the intention of creating confusion, panic or collective public hysteria" during a declared state of emergency or disaster, because "[s]uch conduct threatens the security of the people and the social order, endangering the health and lives of citizens."[3]

33.     Act 35-2020 took effect immediately upon its enactment.

**The Chilling Effect of 25 L.P.R.A. §§ 3654(a) and (f)**

34.     Pastor Rivera Santiago's prosecution under 25 L.P.R.A. § 3654(a) and the recent enactment of Law 35-2020 have alerted many members of the press and public, including

---

[2] Ley Núm. 35-2020 [Law 35-2020], http://www.agencias.pr.gov/ogp/Bvirtual/leyesreferencia/PDF/2020/0035-2020.pdf. Pursuant to Local Rule 5(g), Plaintiffs will file a certified translation of Law 35-2020. *See supra* note 1 for untranslated text.

[3] The untranslated text of the relevant paragraph reads as follows: Por otro lado, resulta altamente reprochable que personas mal intencionadas utilicen las redes sociales o medios de comunicación masiva, para diseminar información falsa con la intención de crear confusión, pánico o histeria pública colectiva en nuestro pueblo, mientras se encuentra vigente un estado de emergencia o desastre o toque de queda promulgado por el gobernador de Puerto Rico mediante una Orden Ejecutiva. Dicha conducta atenta contra la seguridad del pueblo y el orden social, poniendo en peligro la salud y la vida de los ciudadanos.

Plaintiffs, about the danger of being prosecuted for speech about emergency conditions in Puerto Rico.

35.    Plaintiffs are both actively reporting on the COVID-19 public health emergency in Puerto Rico, as well as the government's response to that emergency.

36.    Plaintiffs make every effort to confirm the accuracy of their reporting, in accordance with standard journalistic practices. But developing stories on matters of immense public concern are often complex, contentious, and murky. Plaintiffs recognize that inadvertent inaccuracies are inevitable even in the most thoroughly vetted reporting.

37.    Plaintiffs are also concerned that they could be prosecuted under the Challenged Provisions for speech that the government deems to be false, especially speech that casts the government in a bad light, even if the speech is not demonstrably false.

38.    Ms. Rodríguez Cotto's concerns are informed by her extensive experience reporting on the government.

39.    In 1999, while Ms. Rodríguez Cotto was president of the Overseas Press Club, the Club went to court to defend Obed Betancourt and the newspaper *El Vocero* against a criminal defamation prosecution for articles Mr. Betancourt published describing police corruption. At the probable cause hearing, the government did not attempt to demonstrate that the defendants knew the articles to be false, or even that the articles contained any false information. The court dismissed the prosecution for lack of probable cause.

40.    The Overseas Press Club then sought to intervene in a separate lawsuit challenging Puerto Rico's criminal defamation law. Although the Club's motion to intervene was denied, the U.S. Court of Appeals for the First Circuit ultimately struck down the law on the

ground that it violated the First Amendment. *Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003).

41.     Ms. Rodríguez Cotto's experience with the prosecutions under the now-defunct criminal defamation law demonstrated to her the danger of allowing the government to prosecute speech that it deems to be false.

42.     In 2017, Ms. Rodríguez Cotto reported on the inadequacy of the responses by the U.S. and Puerto Rico governments to the widespread devastation left by Hurricane Maria. Local officials, including then-Governor Ricardo Rosselló, repeatedly failed to provide credible information about the scale of the impact of the hurricane, claiming for months that the death toll was a few dozen, when in reality it was more than a thousand.

43.     During an on-air interview, Ms. Rodríguez Cotto challenged then-Chief of Staff Ramón Rosario about the implausibility of the official death toll, and he responded by accusing her of exaggerating. Immediately following that interview, Ms. Rodríguez Cotto received thousands of messages via social media, many of them racist and misogynistic. Shortly thereafter, Ms. Rodríguez Cotto's house was broken into under suspicious circumstances, though nothing of value was taken. The online bullying of Ms. Rodríguez Cotto continued for months afterward. Ultimately, however, the Puerto Rican government acknowledged that the official death toll of 64 was inaccurate, and that the revised death toll was 1,427.

44.     Mr. González Cotto recently identified a similar problem with the government's case fatality measurement for the COVID-19 public health emergency. In a news article published in *NotiCel*. Mr. González Cotto revealed that the case fatality rate published by the Health Department was not calculated in accordance with generally accepted practices, resulting

in a significant underestimation of the fatality rate. Half an hour after the article was published, the Health Department removed the information from its website.

45.     Mr. González Cotto has published numerous other articles about the COVID-19 public health emergency and the government's response. For instance, he published an article revealing that certain companies with close ties to Governor Vázquez's New Progressive Party received multimillion dollar government contracts for rapid test kits to identify COVID-19 antibodies, even though the companies had little experience managing medical supplies.

46.     Another one of Mr. González Cotto's articles reported that seven powerful businessmen were actively lobbying Governor Vázquez and two agency heads to lift many of the emergency restrictions and reopen businesses, despite the absence of reliable data about how reopening would affect the public health crisis. That article was based on information and documentary evidence provided to Mr. González Cotto by an anonymous source.

47.     Plaintiffs reasonably fear that their investigative reporting about the COVID-19 public health emergency, as well as future reporting on other emergencies, could expose them to criminal prosecution under the Challenged Provisions. Although they continue to report on the COVID-19 public health emergency, and the government's response to the emergency, the threat of prosecution under these provisions has chilled their reporting and caused them to self-censor.

48.     The threat of prosecution under the Challenged Provisions has also made Plaintiffs' sources less likely to share important information with them, out of fear that Plaintiffs might be forced to reveal their sources' identities if they are prosecuted under the Challenged Provisions, as well as fear that the sources that the sources themselves could be prosecuted. One of Mr. González Cotto's sources informed him that other scientists are afraid that the

government would take legal action against them if it were revealed that they disclosed information about the COVID-19 public health emergency in Puerto Rico.

49.     The chilling effect imposed by the threat of prosecution under 25 L.P.R.A. §§ 3654(a) and (f) has already made it significantly harder for Plaintiffs to do their jobs as journalists. For example, Mr. González Cotto has been hindered in his attempts to investigate and report on several mysterious multimillion-dollar contracts awarded by public agencies. The Office of the Comptroller recently lifted the requirement for the registration of public contracts while Governor Vázquez's curfew remains in effect. As a result, Mr. González Cotto and other journalists must obtain this information through other investigative strategies, such as reliance on their sources. But Mr. González Cotto's sources are afraid to share information with him. Even when he is able to confirm the existence of a suspicious contract through two independent sources, he is afraid that he could be prosecuted under 25 L.P.R.A. §§ 3654(a) and (f), because the government has not confirmed the existence of these contracts.

50.     The chill imposed by 25 L.P.R.A. §§ 3654(a) and (f) on Plaintiffs is exacerbated by the vagueness of the provisions themselves. Plaintiffs are unable to determine what constitutes a "non-existing abnormality" under 25 L.P.R.A. § 3654(a) or an intent to cause "confusion, panic, or public hysteria" under 25 L.P.R.A. § 3654(f), or how these provisions might apply to their own reporting if the reporting were deemed to include "false information." For example, Ms. Rodríguez Cotto cannot ascertain whether her reporting about the death toll from Hurricane Maria would have been considered a "non-existing abnormality" before the official death toll was revised.

## CAUSES OF ACTION

### Count I – 42 U.S.C. § 1983 (First Amendment)

51.     All prior paragraphs are incorporated as if fully set forth herein.

52.     The First Amendment prohibits abridgement of the freedoms of speech and of the press.

53.     The First Amendment is applied to the States and to the territory of Puerto Rico through the Fourteenth Amendment.

54.     The Challenged Provisions violate the First Amendment, both on their face and as applied to Plaintiffs.

55.     The Challenged Provisions are substantially overbroad. For example, the Challenged Provisions make it a crime to share false information on matters of immense public concern, but do not require the government to demonstrate that the defendant either knew the information was false or acted with reckless disregard as to whether the information was false. Nor do the Challenged Provisions require the government to demonstrate that the speech was directed to inciting imminent unlawful violence.

56.     The Challenged Provisions criminalize speech on the basis of its content. They criminalize sharing false information only about certain subjects, namely emergencies in Puerto Rico and the government's response to those emergencies.

57.     The Challenged Provisions cannot satisfy strict or even intermediate scrutiny, because they are not appropriately tailored to any overriding government interest.

### Count II – 42 U.S.C. § 1983 (Fourteenth Amendment Due Process Clause)

58.     All prior paragraphs are incorporated as if fully set forth herein.

59.     The Due Process Clause of the Fourteenth Amendment prohibits laws that are unconstitutionally vague.

60.     The Challenged Provisions are unconstitutionally vague, both on their face and as applied to Plaintiffs.

61.     The Challenged Provisions fail to provide adequate notice about what speech is criminalized. For example, it is entirely unclear what 25 L.P.R.A. § 3654(a) means when it prohibits "spread[ing] rumors or giv[ing] false alarms about non-existing abnormalities." It is also unclear what 25 L.P.R.A. § 3654(f) means when it prohibits sharing false information about government emergency orders "with the intent of creating confusion, panic, or collective public hysteria."

62.     Ms. Rodríguez Cotto and Mr. González Cotto cannot ascertain whether their reporting on the government's emergency response measures would be considered to be "spread[ing] rumors or giv[ing] false alarms about non-existing abnormalities," nor can they determine under what circumstances the government might infer that they spoke "with the intent of creating confusion, panic, or collective public hysteria."

63.     Without a well-defined standard of criminal responsibility, law enforcement officials and factfinders are given nearly unfettered discretion to apply their own standards. The Challenged Provisions are thus susceptible to arbitrary, uneven, and selective enforcement.

64.     Ms. Rodríguez Cotto and Mr. González Cotto are concerned that they would be targeted for discriminatory enforcement under the Challenged Provisions due to their critical reporting on the government.

14

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

A.    Declare that 25 L.P.R.A. §§ 3654(a) and (f) violate the First and Fourteenth

Amendments to the United States Constitution, both on their face and as applied to Plaintiffs;

B.    Permanently restrain and enjoin Defendants, including all of Defendants'

subordinates and other persons in active concert or participation with Defendants, from enforcing

25 L.P.R.A. §§ 3654(a) and (f), both on their face and as applied to Plaintiffs;

C.    Preliminarily restrain and enjoin Defendants, including all of Defendants'

subordinates and other persons in active concert or participation with Defendants, from enforcing

25 L.P.R.A. §§ 3654(a) and (f), both on their face and as applied to Plaintiffs while this litigation

remains pending;

D.    Award Plaintiffs attorneys' fees in this action pursuant to 42 U.S.C. § 1988(b);

E.    Award Plaintiffs their costs of suit;

F.    Grant such other and further relief as this Court deems just and proper in the

circumstances.

Dated: May 20, 2020

S/ Fermin L. Arraiza-Navas
#215705
farraiza@aclu.org
William Ramirez-Hernández+
American Civil Liberties Union
of Puerto Rico
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
(787) 753-9493
(646) 740-3865

15

Brian Hauss*
Emerson Sykes+
Arianna Demas+
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
bhauss@aclu.org

*Pro hac vice motion forthcoming
+ Of counsel

Counsel for Plaintiffs