## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SANDRA RODRÍGUEZ-COTTO;** **RAFELLI GONZÁLEZ-COTTO** | **CIVIL No.** 20-01235 (PAD) |
| *Plaintiffs,* | **RE:** Preliminary and Permanent Injunction |
| v. | |
| **WANDA VÁZQUEZ-GARCED**, Governor of Puerto Rico; **DENNISE N. LONGO-QUIÑONES**, Secretary of Justice of Puerto Rico; **PEDRO JANER**, Secretary of the Department of Public Safety of Puerto Rico; **HENRY ESCALERA**, Commissioner of the Puerto Rico Police Bureau, all in their official capacities | |
| *Defendants.* | |

### RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**TO THE HONORABLE COURT:**

**COME NOW**, co-defendants **Wanda Vázquez-Garced**, Governor of Puerto Rico; **Dennise N. Longo-Quiñones**, Secretary of Justice of Puerto Rico; **Pedro Janer**, Secretary of the Department of Public Safety of Puerto Rico; and, **Henry Escalera**, Commissioner of the Puerto Rico Police Department, all in their official capacities, without waiving any right or defense arising from Title III of *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"), 48 U.S.C. **§§**2101 *et seq*., and the Commonwealth's Petition under said Title or under this case and without submitting to the Court's jurisdiction, and through the undersigned attorney, very respectfully **STATE** and **PRAY** as follows:

## I. INTRODUCTION

On May 20, 2020, Sandra Rodríguez-Cotto and Rafelli González-Cotto ("Plaintiffs") filed a Complaint (Docket No. 1); a *Motion for Preliminary Injunction* (Docket No. 1-1); and a *Memorandum of Law in Support of the Motion for Preliminary Injunction* (Docket No. 1-2) against Wanda Vázquez-Garced, Governor of Puerto Rico; Dennise N. Quiñones-Longo, Secretary of Justice of Puerto Rico; Pedro Janer, Secretary of the Department of Public Safety; and Henry Escalera, Commissioner of the Puerto Rico Police Bureau.[1] Essentially, Plaintiffs challenge the constitutionality of Sections (a) and (f) of Article 6.14 of the *Puerto Rico Department of Public Safety Act*, Act No. 20-2017, for alleged infringements to the First and Fourteenth Amendments of the Constitution of the United States.

Plaintiffs base their claim on the "fear that inadvertent inaccuracies or critical reporting on the government will result in their prosecution," and contend that "[this] fear has made it more difficult for [them] to perform their journalistic duty to inform the public about the COVID-19 public health emergency in Puerto Rico." *See* Docket No. 1-2 at 8. In consequence, Plaintiffs assert that their irrational fear and "threat of prosecution under the [c]hallenged [p]rovisions is [imposing] a chilling effect on [them] and other members of the press" (Docket No. 1-2 at 8), which is sufficient to configure an irreparable harm for purposes of a preliminary injunction. However, as it will be further explained in this motion, a plaintiff's subjective, speculative and irrational fear of prosecution is not enough to confer standing under Article III for either type of injury supporting a First Amendment challenge to a statute. This Court will

---

[1] On May 22, 2020, Plaintiffs filed the *Motion of Preliminary Injunction* and the *Memorandum in Support of the Motion of Preliminary Injunction* in a separate docket entry. Docket Nos. 4 & 4-1. However, since the documents filed are the same as the ones originally filed on May 20, 2020, we will be referencing them with the original docket numbers (Docket Nos. 1-1 and 1-2, respectively).

be able to confirm that Plaintiffs do not meet the necessary requirements of Article III standing and have brought a non-justiciable controversy, based on speculations, **in hope of obtaining an advisory opinion regarding the applicability of the challenged statutory provisions**. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (stating that federal courts do not render advisory opinions; for adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions, are requisite). Therefore, based on the ensuing grounds regarding standing, the Court will be able to swiftly deny the preliminary injunction request and dismiss the case.

Nevertheless, in the event that the Court recognizes that Plaintiffs have standing— which it is vehemently denied—they also fail to satisfy each prong of the preliminary injunction standard since (i) they are unlikely to succeed on the merits of a facial challenge to Sections (a) and (f) based on vagueness and overbreadth doctrine; (ii) they will not suffer any irreparable harm if the preliminary injunction is denied since they admit that they have continued to publish news articles during the emergency despite of their alleged fear of prosecution and the supposed chilling effect the challenged provision have on them; and (iii) the balance of equities, as well as the (iv) adverse effect that the issuing of a preliminary injunction would have on the public interest tip the scale in favor of denying the preliminary injunction.

Therefore, based on the ensuing grounds, Defendants request that the Court **DENY** Plaintiffs' *Motion for Preliminary Injunction* for **lack of standing** and for failing to meet the necessary requirements for a preliminary injunction.

## II. THE CONTROVERSY IS NOT JUSTICIABLE BECAUSE PLAINTIFFS LACK STANDING TO CHALLENGE THE STATUTORY PROVISIONS OF ACT NO. 20-2017

### A. Plaintiffs' self-inflicted injury based on the unfounded fear of a hypothetical prosecution is not sufficient to satisfy the necessary elements of Article III standing.

In order to gain access to federal courts, a plaintiff has the burden of establishing that he or she has standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A federal court must satisfy itself as to its jurisdiction, which requires it to primarily evaluate if a plaintiff has Article III standing to sue, before addressing particular claims. *See Orr v. Orr*, 440 U.S. 268, 271 (1979); *Juidice v. Vail*, 430 U.S. 327, 331 (1977); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that standing is a threshold issue in every federal case). The standing inquiry is both plaintiff-specific and claim-specific and its requirement "is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009); *Warth v. Seldin*, 422 U.S. 490 (1975); *Pagán v. Calderón*, 448 F.3d 16, 26 (1st Cir. 2006). Only if a particular plaintiff has standing to pursue a particular claim will the court proceed to assess them. *See Pagán*, 448 F.3d at 26. Thus, a court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he or she asserts as the standing issue is tied to its jurisdiction. *Allen v. Wright*, 468 U.S. 737, 752 (1984); *Donahue v. City of Boston*, 304 F.3d 110, 116 (1st Cir.2002).

In the case at bar, Plaintiffs request a preliminary injunction to enjoin Defendants from enforcing Sections (a) and (f) of Article 6.14 of Act No. 20-2017, for allegedly violating the First and Fourteenth Amendments of the U.S. Constitution. Essentially, Plaintiffs claim that the challenged statutory provisions are unconstitutional because they: (1) "criminalize a substantial amount of core speech on matters of immense public concern" (Docket No. 1-2 at 6); (2)

"impose a content-based restriction on speech about matters of public concern" (Docket No. 1-2 at 7); (3) "are too vague for criminal restrictions on speech" (Docket No. 1-2 at 7). Plaintiffs assert that their "fear that inadvertent inaccuracies or critical reporting on the government will result in their prosecution, [has] made it more difficult for [them] to perform their journalistic duty to inform the public about the COVID-19 public health emergency in Puerto Rico". *See* Docket No. 1-2 at 8. Also, Plaintiffs claim that their irrational fear of the "threat of prosecution under the [c]hallenged [p]rovisions", [produces] a chilling effect on [them] and other members of the press" (Docket No. 1-2 at 8). That is simply not enough to establish Article III standing and invoke the jurisdiction of this Court.

In order to establish Article III standing, Plaintiffs' alleged injury has to be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Lujan*, 504 U.S. at 560–61. Moreover, Plaintiffs' supposed injury cannot be "too speculative for Article III purposes", rather it must be "certainly impending to constitute injury in fact." *Lujan*, 504 U.S. at 565, n. 2. In that sense, "[a]llegations of possible future injury" are not sufficient. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). While the Supreme Court case-law sustains that Plaintiffs do not have to actually undergo criminal prosecution in order to have standing under the First Amendment to challenge to the statutory provisions of Act No. 20-2017, **they have to demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement**. *See Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979). That has not been done in the case at bar.

Plaintiffs have failed to establish a **realistic danger of sustaining a direct injury because of the statute's operation or enforcement**. Instead, they rely on a hypothetical,

speculative, remote, and baseless fear of prosecution that has not occurred and that cannot be reasonably inferred form the well-pleaded facts that has a real probability of occurring. Specifically, co-plaintiff Rodríguez-Cotto alleges that her fear of prosecution is "informed by her years of experience reporting on the government" and states that **in 1999** a colleague was prosecuted under a **different statute** for supposedly publishing information regarding police corruption. *See* Docket No. 1-2 at 15. It is very revealing that co-plaintiff Rodríguez-Cotto had to travel back in time 21 years to find some sort "support" for her baseless and unrealistic "fear" of being prosecuted and relied on an **unrelated event** that had absolutely no connection whatsoever with the challenged statutory provisions. Similarly, co-plaintiff **González-Cotto is unable to state a specific fact that can demonstrate a realistic danger of being prosecuted** and simply relies on the baseless possibility that it could hypothetically happen because he has published journalistic articles that "challenge the government narrative" and the challenged statutory provisions are currently "chilling" him. *See* Docket No. 1-2 at 17.

Evidently, Plaintiffs' will never be able to meet the Article III standing standard since they fall short of demonstrating a realistic and imminent danger of being prosecuted for publishing journalistic articles or blog entries against government actions and their alleged injuries cannot be fairly traceable to Sections (a) and (f) of Article 6.14 of Act No. 20-2017. *See Clapper*, 568 U.S. at 413 (holding that to satisfy Article III standing it is required that the injury be fairly traceable to the legal provision at issue and not be based on speculations). Simply put, Plaintiffs "**cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending**." *Id*. at 416. That is, because "[a] plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III for either type of injury." *See Mangual v. Rotger-Sabat*, 317 F.3d

45, 57 (1st Cir. 2003). Further, the mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13-14.

Plaintiffs own allegations sustain that the challenged provisions **have not caused them a chilling effect of a very serious nature**. *See Mangual*, 317 F.3d at 58 (recognizing standing to a plaintiff that asserted the existence of a "chilling effect of a very serious nature."). For example, co-plaintiff Rodríguez-Cotto states that in 2017, she "reported on the inadequacy of the responses by the U.S. government and the Puerto Rico government to the widespread devastation left by Hurricane Maria." *See* Docket No. 1-2 at 15. Similarly, co-plaintiff González-Cotto stated that he "participated in the publication of several digital stories about the Whitefish Energy scandal" that took place in 2017 after Hurricane María (Docket No. 1-2 at 10); published a news article revealing "the case fatality rate published by the Health Department was not calculated in accordance with generally accepted practices, resulting in a significant underestimation of the fatality rate" (Docket No. 1-2 at 16), as well as "numerous other articles about the COVID-19 public health emergency and the government's response" (Docket No. 1-2 at 16).

Plaintiffs admitted that Section (a) of Article 6.14 of Act No. 20-2017 has existed since the enactment of said statute on April 10, 2017. *See* Docket No. 1-2 at 10. Plaintiffs also admitted that they published news articles criticizing government actions in the aftermath of Hurricane María, of which this Court can take judicial notice that said hurricane hit Puerto Rico on September 20, 2017.[2] If Section (a) of Article 6.14 of Act No. 20-2017 would have really caused

---

[2] The date that Hurricane María made landfall in Puerto Rico, September 20, 2017, is a fact that is not subject to reasonable dispute because is generally known within this Court's territorial jurisdiction. *See* Fed. R. Evid. 201(b)(1).

Plaintiffs a chilling effect, the referenced news articles challenging the Commonwealth government's actions in the aftermath of Hurricane María would not have been published. Likewise, Plaintiffs have published numerous articles attacking the Commonwealth government's response to the COVID-19 pandemic which makes it more evident that they have never been chilled by the challenged provisions. *See* Docket 1-2 at 16.

It is shocking that co-plaintiff Rodríguez-Cotto declared that the challenged provisions have a chilling effect "in her reporting about the COVID-19 public health emergency" considering the multiple articles published on her website regarding the pandemic. For example, **(1)** on March 29, co-plantiff Rodríguez-Cotto published a story regarding an alleged corruption scheme in the Department of Health in connection with contracts issued during the COVID-19 pandemic; **(2)** on May 5, 2020, she published a story regarding a public hearing held by the Puerto Rico House of Representatives in connection with the purchase of COVID-19 rapid tests by the Department of Health; **(3)** on May 13, 2020, she published another story regarding the alleged corruption scheme in the Puerto Rico Department of Health; **(4)** on May 16, 2020, she published a journalistic article in which she denounced the alleged squandering of funds in the Department of Health during the COVID-19 pandemic; **(5)** on May 23, 2020, she published a story asserting that the Puerto Rico Electric Power Authority was providing erroneous information as to the cause of a blackout; and, **(6)** on May 26, 2020, she published a

story in which the statistics provided by the Department of Health regarding the COVID-19 pandemic were questioned; among other articles.[3]

Furthermore, it is also shocking that co-plaintiff González-Cotto suggests that he has been chilled since he admits he has "written numerous news articles about the COVID-19 public health emergency" reporting "on conditions during the public emergency, as well as emergency curfew orders." *See* Docket No. 1-2 at 2-3, ¶¶6-9. Co-plaintiff González-Cotto merely relies on hypotheticals and on a completely unrelated case that is not connected to a journalist or to the publishing of journalistic articles. *See Clapper*, 568 U.S. at 413 (holding that to satisfy Article III standing it is required that the injury be fairly traceable to the legal provision at issue and not be based on speculations). This Court must ask the following: if Plaintiffs are chilled due to their fear to be prosecuted pursuant the challenged provisions, why have they published tens of articles during the **current** emergency? Why were they not chilled during other states of emergencies in which the admit they published where the challenged Section (a) was in full effect? Why are they chilled by Section (f) if no prosecutions have ever been made pursuant to the same? The answer is apparent: there is no real chill or fear of prosecution. The allegations set forth by Plaintiffs are purely consist of a subjective chill and hypothetical situations in a

---

[3] *See* **(1)** S. Rodríguez-Cotto, *Cabeza en Salud: El esquema de contrataciones en medio de la pandemia de COVID-19*, https://enblancoynegromedia.blogspot.com/2020/05/sou-mabel-comentario.html (published on March 29, 2020) (retrieved on June 3, 2020); **(2)** S. Rodríguez-Cotto, *'Sou' Mabel*, https://enblancoynegromedia.blogspot.com/2020/05/sou-mabel-comentario.html (published on May 5, 2020) (retrieved on June 3, 2020); **(3)** S. Rodríguez-Cotto, *Se valida el poder de Mabel Cabeza*, https://enblancoynegromedia.blogspot.com/2020/05/se-valida-el-poder-de-mabel-cabeza.html (published on May 13, 2020) (retrieved on June 3, 2020); **(4)** S. Rodríguez-Cotto, *Los chupasangre de Salud*, http://enblancoynegromedia.blogspot.com/2020/05/los-chupasangres-en-salud.html (published May 16, 2020) (retrieved on June 3, 2020); **(5)** S. Rodríguez-Cotto, *Caso AEE: A oscuras por un engreído*, http://enblancoynegromedia.blogspot.com/2020/05/caso-aee-oscuras-por-un-engreido.html (published on May 23, 2020) (retrieved on June 3, 2020); and, **(6)** S. Rodríguez-Cotto, *Municipios con más peligro por COVID-19*, https://enblancoynegromedia.blogspot.com/2020/05/municipios-con-mas-peligro-por-covid-19.html (published on May 26, 2020) (retrieved on June 3, 2020).

blatant attempt to manufacture standing. Therefore, since Plaintiffs plainly do not have Article III standing, which makes the instant case not justiciable, this Court cannot issue a preliminary injunction to enjoin Defendants because it lacks jurisdiction to review the constitutionality of the provisions at issue.

It is important to highlight that Plaintiffs also failed to state a single fact in which any of the Defendants or any other public officer threatened to prosecute them or a journalist, started a prosecutorial process against them or another journalist or actually prosecuted one of them or another journalist pursuant to the challenged statutory provisions. As this Court can confirm, Plaintiffs only relied on two unrelated events that have no connection with the case at bar in their attempt to manufacture standing. First, Plaintiffs attempt to support their irrational fear with an unconnected event **that occurred 21 years ago** in which co-plaintiff Rodríguez-Cotto reminisces that a colleague was supposedly prosecuted under a defunct libel law for publishing information regarding police corruption. *See* Docket No. 1-2 at 15. Second, Plaintiffs mention an unconnected event in which an individual was accused under Section (a) of Article 6.14 of Act No. 20-2017, for "disseminating false information on the messaging platform WhatsApp about a rumored executive emergency order to close all businesses" that resulted "in a rush on the supermarkets." *See* Docket No. 1-2 at 12. However, **none of these events are related to Plaintiffs' claims since one happened 21 years ago and the latter did not involve the prosecution of a journalist for publishing articles adverse to the government**. Plaintiffs bear the burden of pleading and proving concrete facts showing that the Defendants' actual action has caused the substantial risk of harm and cannot simply rely on speculations about the unfettered choices made by independent actors not before the court to establish Article III standing. *See Clapper,* 568 U.S. at 415; *see also Lujan,* 504 U.S. at 562

(holding that when the plaintiff is not himself the object of the government action or inaction he challenges, standing is "substantially more difficult" to establish.).

In addition, Plaintiffs allege that "other journalists and members of the public, are now on notice that they may be criminally prosecuted under 25 L.P.R.A. §§ 3654 (a) and (f) for inadvertent inaccuracies in their speech about emergency conditions in Puerto Rico, or for sharing news or commentary about the emergency that contradicts the government's official narrative." *See* Docket No. 1-2 at 14. It can be reasonably inferred from Plaintiffs' statements and from their reliance on the experience of other individuals that they are attempting to obtain third-party standing to assert the alleged rights of journalists and the public. Yet, it is firmly established that, generally, "a litigant 'must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Simply put, "one may not claim standing ... to vindicate the constitutional rights of [a] third party." *Barrows v. Jackson*, 346 U.S. 249, 255 (1953). Exceptionally, the Supreme Court "has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Kowalski v. Tesmer*, 543 U.S. 125, 130, (2004).

In the case at bar, Plaintiffs cannot be allowed third-party standing because they do not have a specific injury and cannot rely on the legal rights or interests of others to invoke the jurisdiction of this Court. Therefore, since Plaintiffs do not have individual or third-party standing, this Court must not issue the requested preliminary injunction.

**B. The instant case is distinguishable from the First Circuit's case *Mangual v. Rotger-Sabat***

Plaintiffs cite *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003), a United States Court of Appeals for the First Circuit ("First Circuit") case, to support their conclusory assertion that "the [c]hallenged [p]rovisions may be used to prosecute reporters and other members of the public for inadvertent inaccuracies or even for true speech that casts the government and its officials in a negative light, as Puerto Rico's former criminal defamation law was used to prosecute reporters who exposed police misconduct." *See* Docket No. 1-2 at 7. Also, Plaintiffs suggest that they have Article III standing because the challenged statutory provisions "suffer[s] from the same fundamental defect as the criminal defamation law struck down in *Mangual*" and that "[a]lthough the [c]hallenged [p]rovisions have not yet been enforced against [them], the mere threat of prosecution already operates to chill [their] speech as well as the speech of their sources." *See* Docket No. 1-2 at 20. However, Plaintiffs opted to ignore the specific facts of *Mangual* and the reason as to why the First Circuit recognized Article III standing to the plaintiff in that case.

In *Mangual v. Rotger-Sabat*, Mr Mangual, a newspaper reporter, sued for declaratory and injunctive relief, challenging the Puerto Rico criminal libel statute as unconstitutional under the First Amendment. Essentially, Mr. Mangual had published several articles about police corruption and made accusations against a specific police officer. *See Mangual*, 317 F.3d at 54. The police officer that Mr. Mangual accused of corruption wrote a letter to notify the then-Secretary of Justice that he was prepared to file criminal charges, as well as to file a suit against the reporter. *Id.* After the letter was received, an Assistant Attorney answered the police officer stating that the Department of Justice would not take actions but forwarded the complaint to the Police Department for any action it may deem pertinent. *Id.* As a result, Mr.

Mangual challenged Puerto Rico's libel statute and asserted that he feared "prosecution by at least Officer Rivera, and possibly by other persons whose interest is obstructing publications regarding official corruption." *Id*. Mr. Mangual also claimed that he felt the effects of the threat of prosecution after publishing the newspaper article and that police officers were being pressured not to give him information and were afraid to even be seen with him, which seriously interfered with his work as a journalist. *Id*.

The Court found that Mr. Mangual had standing to challenge the criminal libel statute because: (1) he faced and continued to face **<u>a real</u>** threat of prosecution; and (2) he asserted the existence of a **chilling effect of a very serious nature** on his investigative reporting due to **<u>the real</u>** possibility of prosecution. *See Mangual*, 317 F.3d at 58. Clearly, in *Mangual* the plaintiff had an objectively reasonable fear of prosecution because a police officer had threatened to file criminal charges against him, filed a grievance in the Department of Justice, another journalist had recently been prosecuted under the challenged statute and felt the effects of the threat of prosecution after police officers were pressured to not give him information. However, the Court reiterated that "[a] plaintiff's subjective and irrational fear of prosecution [was] not enough to confer standing under Article III for either type of injury." *Id*. at 57.

In the instant case, Plaintiffs have not stated specific facts that could reasonably move this Court to presume that they face **a real** threat of prosecution like the plaintiff in *Mangual* did. The Complaint (Docket No. 1) and the *Memorandum of Law in Support of Request for Preliminary Injunction* (Docket No. 1-2) are devoid of specific instances in which Plaintiffs have been threatened, investigated, or prosecuted pursuant the challenged provisions like the plaintiff on *Mangual* was. As explained before, Plaintiffs attempt to support their alleged threat of prosecution based on (1) an unrelated event that happened 21 years ago in which a journalist

was prosecuted for criminal libel pursuant to a different and now defunct statue; and, (2) a prosecution of an individual that was not a journalist or reporter, which case was completely different to the present one. Thus, as explained before, Plaintiffs are attempting to manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that cannot be reasonably believed that is certainly impending. *See Clapper,* 568 U.S. at 416. After all, the First Circuit clearly stated in *Mangual* that "[a] plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III for either type of injury." *See Mangual* , 317 F.3d at 57.

Similarly, Plaintiffs failed to state specific facts that support the actual existence of a chilling effect of a very serious nature like the plaintiff of *Mangual* did. In *Mangual,* the plaintiff clearly stated facts relating to events that could be reasonably traced to his fear of prosecution and to a plausible chilling effect: (1) recent prosecution of a journalist under the challenged statute; (2) a complaint filed by a police officer in the Department of Justice; (3) a referral of an Assistant Attorney to the Police Department for the pertinent actions; and, specific claims of police officers refusing to give him information based on the mentioned events. In the instant case, Plaintiffs merely assert that they fear a hypothetical, speculative and unfounded possibility of prosecutions and vaguely alleged that the challenged provisions have chilled their reporting (Docket No. 1-2 at 14 & 17). Those allegations are not enough to confer standing as the Supreme Court has ruled that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm". *See Laird*, 408 U.S. at 13-14.

Finally, the challenged law in *Mangual* was criminal libel statute. In the case at bar, plaintiffs are not challenging a criminal libel statute that requires "the *New York Times and*

*Garrison* standard of actual malice be proven in order for a statement disparaging a public official or figure to be successfully prosecuted." *See Mangual*, 317 F.3d at 66. In that sense, the requirement of actual malice applied to the criminal libel statute challenged in *Mangual* is inapposite to the challenged provisions in the present case. Therefore, since the facts of *Mangual* are clearly distinguishable from the facts in the instant case, Plaintiffs cannot rely on said case to sustain that they have Article III standing for a facial challenge of the provisions at issue.

### III. A PRELIMINARY INJUNCTION IS UNWARRANTED IN THE PRESENT CASE

### A. Standard of a preliminary injunction

The First Circuit evaluates four factors in determining whether to issue a preliminary injunction, to wit: (1) the movant's probability of success on the merits; (2)the likelihood of irreparable harm absent preliminary injunctive relief; (3) a comparison between the harm to the movant if no injunction issues and the harm to the objectors if one does issue; and (4) how the granting or denial of an injunction will interact with the public interest. *See New Comm Wireless Services v. SprintCom, Inc.,* 287 F.3d 1 (1st Cir.2002); *see also Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996). Whether to issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others. *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 611–13 (1st Cir.1988). Although a hearing is often held prior to entry of a preliminary injunction, a hearing is not an indispensable requirement. *Aoude v. Mobil Oil Corp.,* 862 F.2d 890, 893 (1st Cir.1988). As it will be discussed below, Defendants contend that Plaintiffs failed to meet all the four prongs that are required to be satisfied for the issuing of a preliminary injunction.

**B. Plaintiffs fail to meet the necessary requirements for the issuance of a preliminary injunction.**

    **1. Plaintiffs are unlikely to succeed on the merits.**

At threshold, as it was discussed earlier in this motion, Plaintiffs failed to establish the necessary elements to have Article III standing. That itself is more than sufficient to not only deny the request of preliminary injunction but to dismiss the entire case. *See Osediacz v. City of Cranston*, 414 F.3d 136, 142 (1st Cir. 2005) (stating that even though prudential standing concerns are relaxed in certain facial challenges implicating the First Amendment, a litigant still must demonstrate that she satisfies the constitutional minimal essential to establish standing). However, if this Court were to determine that the case at bar is justiciable because Plaintiffs comply with all the necessary requirements of Article III standing—which we vehemently deny—they are highly unlikely to succeed on the merits.

Essentially, Plaintiffs allege that the challenged provisions: (1) "are substantially overbroad, criminalizing and chilling a significant amount of protected speech on matters of immense public concern" (Docket No. 1-2 at 18) and, (2) "are unconstitutionally vague, especially for criminal laws regulating speech" (Docket No. 1-2 at 18). Plaintiffs err in their conclusions.

    **a. Plaintiffs will not prevail in a facial challenge of the statutory provision at issue.**

"[A] party who mounts a facial challenge to a statute must carry a significantly heavier burden than one who seeks merely to sidetrack a particular application of the law." *McGuire v. Reilly*, 260 F.3d 36, 46-47 (1st Cir. 2001). A plaintiff will not prevail in a facial challenge if a law "has a plainly legitimate sweep." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). "A facial challenge to a legislative Act is [...] the most difficult

challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *McGuire v. Reilly*, 386 F.3d 45, 57 (1st Cir. 2004) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In determining whether a law is facially invalid, the Court must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases. *Washington State Grange*, 552 U.S. at 449–50.

The Supreme Court has concluded that facial challenges to constitutionality of laws are disfavored for several reasons. Among the reasons, the Supreme Court has held that such facial challenges often rest on speculation, and that they also run contrary to fundamental principle of judicial restraint, under which courts should neither anticipate question of constitutional law in advance of necessity of deciding it nor formulate a rule of constitutional law broader than it is required by precise facts to which it is to be applied. *Washington State Grange*, 552 U.S. 442 at 450-51. On facial challenge to the constitutionality of law, a court must keep in mind that ruling of unconstitutionality frustrates intent of elected representatives of the people. *Id*. at 451.

In terms of a specific speech, the Supreme Court has recognized that "false statements of fact ... belong to th[e] category of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' " *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 (1974) (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 (1942)). While in *United States v. Alvarez*, 567 U.S. 709 (2012), the Court suggested that false statements generally are not a new category of unprotected speech exempt from the normal prohibition on content-based restriction, the history of Supreme Court case-law has

consistently confirmed that false speech enjoys little First Amendment protection. *See BE & K Constr. Co. v. N.L.R.B.,* 536 U.S. 516, 531 (2002) ("[F]alse statements [are] unprotected for their own sake."); *Hustler Magazine v. Falwell,* 485 U.S. 46, (1988) ("False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas ...."); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776 (1984) (false statements of fact have "no constitutional value" because they "harm both the subject of the falsehood *and* the readers of the statement" (quotation marks omitted)); *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731, 743 (1983) ("[F]alse statements are not immunized by the First Amendment right to freedom of speech."); *Herbert v. Lando,* 441 U.S. 153, 171 (1979) ("Spreading false information in and of itself carries no First Amendment credentials.").

In that sense, false statements will have very little protection from the First Amendment, except in a limited set of contexts where such protection is necessary "to protect speech that matters," *Gertz,* 418 U.S. at 341, such as "expression critical of the official conduct of public officials," *New York Times Co. v. Sullivan,* 376 U.S. 254, 268 (1964). And even in these special contexts, "the *knowingly* false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." *Garrison v. Louisiana,* 379 U.S. 64, 75 (1964) (emphasis added). In fact, in *Schenck v. United States* 249 U.S. 47, 52 (1919), Justice Holmes famously noted that "[t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic." Although *Schenck* was concerned with seditious speech, it is particularly instructive here since it is quintessentially about a false statement of fact. As explained in *Schenck,* the power of the government to punish such speech involves careful consideration of "proximity and degree" of the harm.

In the instant case, Plaintiffs are facially challenging Sections (a) and (f) of Article 6.14 of Act No. 20 for allegedly being overbroad. Specifically, they assert that "the [c]hallenged [p]rovisions authorize the government to prosecute people for inadvertent inaccuracies or speech that the government deems false." *See* Docket No. 1-2 at 20. Plaintiffs interpretation of the law is incorrect. First, Section (a) of Article 6.14 requires various elements in order to apply: (1) that the information is false; (2) that it creates alarm in the citizenship; (3) that it relates to the false occurrence of an imminent catastrophe; or (1) that while in an state of emergency or disaster; (2) an individual creates a false alarm in the citizenship; (3) that the information relates to inexistent abnormalities.

Evidently, a substantial number of the applications of Section (a) of Article 6.14 applications are **not** unconstitutional, judged in relation to the challenged provision's plainly legitimate sweep. Section (a) does **not** punish false speech against the government nor it can be construed, as Plaintiffs allege, to the extent that it covers news articles criticizing a governmental emergency response even if false. The plain language in Section (a) proscribes false information in very specific instances and requires a precise consequence that consists of panic in the general population to be configured. Moreover, Section (a) specifically proscribes false alarms which by definition are deceptive or erroneous report of an emergency, causing unnecessary panic and/or bringing resources (such as emergency services) to a place where they are not needed.[4] In that sense, a news or journalistic articles challenging the government's "narrative", as Plaintiff allege, cannot reasonably be thought to be proscribed when the challenged provision is analyzed from its face.

---

[4] *See* <u>Merriam-Webster Dictionary</u>, defining a *false alarm* as "an alarm (such as a fire or burglar alarm) that is set off needlessly" and as "something causing alarm or excitement that proves to be unfounded", https://www.merriam-webster.com/dictionary/false%20alarm (retrieved on June 4, 2020).

Yet, Plaintiffs invite this Court to go beyond Section (a) facial requirements and speculate about hypothetical or imaginary cases. For example, they assert that Section (a) could have been applied against journalists that challenged the governments' official death toll caused by Hurricane María. *See* Docket No. 1-2 at 20. However, that hypothetical ignores that Section (a) was in full force during, as well as after, Hurricane María and neither Plaintiffs nor any journalist that published information challenging the government's response was chilled or investigated or prosecuted pursuant the provision at issue. *See Mangual*, 317 F.3d at 57 ("a finding of no credible threat of prosecution under a criminal statute requires a long institutional history of disuse"). Plain and simple, from a facial analysis of Section (a), a journalist cannot be prosecuted, even if based on false information, for criticizing or challenging government officials or official information because said provision does not proscribe all false speech and requires other elements to be applicable. Therefore, Plaintiffs failed to meet their burden as it can be reasonably concluded that the alleged impermissible application of Section (a) is not substantial in relation to its plainly legitimate sweep. *See United States v. Williams*, 553 U.S. 285, 292 (2008) (holding that to prevail in a facial challenge of a statute for being overbroad the movant is required to establish that it *substantially* proscribes protected speech, not only in an absolute sense, but also in relation to the statute's plainly legitimate sweep).

Second, Plaintiffs facially attack the constitutionality of Section (f) of Article 6.14 for being overbroad. Essentially, Section (f) proscribes the transmission, through any public or massive medium, of false information **with the intent** to create confusion, panic or collective public hysteria regarding an executive order establishing a state of emergency a disaster or a curfew. Plaintiffs allege that "any speech criticizing emergency measures the government

deems necessary or important will likely be viewed by the government as motivated by illicit desire to cause 'confusion, panic or public hysteria'". *See* Docket 1-2 at 20. Once again, Plaintiffs invite the Court to go beyond Section (f) facial requirements and speculate about hypothetical or imaginary cases which is not the standard for a facial challenge. *See Washington State Grange*, 552 U.S. at 449–50.

As clarified before, Section (f) requires that the following elements be configured in order to be applied: (1) an individual has to transmits false information through a massive medium; (2) the false information has to be transmitted **with the intent** to cause confusion, panic or collective public hysteria; and (3) the false information has to be regarding an executive order declaring a state of emergency or a disaster or a curfew. It is evident that, from its face, Section (f) does not substantially proscribes protected speech, not only in an absolute sense, but relative to its plainly legitimate sweep, which is essential to prevail in a facial challenge based on the overbreadth doctrine. In that sense, Section (f), from its face, cannot be construed as to prohibit protected speech as it requires a specific intent to cause a precise result in order to configure the criminal conduct.

A person who causes a particular result is said to act with a specific intent if " 'he consciously desires that result, whatever the likelihood of that result happening from his conduct,' " while he is said to act with general intent if he is aware " 'that that result is practically certain to follow from his conduct, whatever his desire may be as to that result.' " *United States v. Bailey*, 444 U.S. 394, 404 (1980). Certainly, protected speech, even if false, cannot be chilled or punished under Section (f) since it not only requires the publication of a false statement that is related to a particular issue (an executive order declaring a state of

emergency, disaster or curfew) but the individual must have the *mens rea* (mental state) with the specific intent to cause a precise result among the population.

In the instant case, Plaintiffs allege that Section (f) chills their speech because they could be prosecuted pursuant that provision if they inadvertently publish a journalistic article criticizing or challenging official governmental actions or information. That simply cannot be inferred from the face of Section (f). Undoubtedly, from a plain facial analysis of Section (f), Plaintiffs cannot be prosecuted for inadvertently publishing false information due to a faulty source because the offense would lack an essential element to be configured: the *mens rea*. Here, Plaintiffs have not asserted that they are chilled because they often publish false information with the intent to cause public unrest which would have to be the specific allegation for the challenged provision to be applicable. Therefore, it cannot be reasonably inferred that Plaintiffs, or journalists, are chilled because even if they published journalistic articles with false information, they would lack the element of specific intent to cause confusion, panic, or collective public hysteria.

In fact, as stated before, of Plaintiffs' alleged fear is based on the notion that they be prosecuted after **unintentionally** publishing false information regarding a governmental action. Nevertheless, in order to arrive at Plaintiffs' conclusion that Section (f) is unconstitutional from its face, this Court would not only have to rely on hypothetical situations but assume that Plaintiffs often publish false information with the intent to create confusion, panic or collective public hysteria during states of emergency disasters or curfews. That simply does not pass the facial challenge muster. *See Laird*, 408 U.S. at 13-14 (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Thus, it is apparent that Plaintiffs are unlikely to

succeed on the merits because they failed to establish the necessary elements to prevail in a facial challenge to Sections (a) and (f) of Article 6.14 of Act No. 20-2017.

### b. Plaintiffs are unlikely to succeed on the merits of a facial vagueness challenge.

To survive a vagueness challenge, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). The Constitution, however, does not impose "impossible standards of clarity," *Kolender v. Lawson,* 461 U.S. 352, 361 (1983) (internal quotation marks and citation omitted), nor does it require "mathematical certainty" from statutory language, *Grayned,* 408 U.S. at 110. Instead, a statute is not vague if it is "clear what the [statute] as a whole prohibits." *Id.* "**[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications**." *Hill v. Colorado,* 530 U.S. 703, 733 (2000) (internal quotation marks, citation omitted, and emphasis added). Moreover, federal courts have a duty, if it is fairly possible, to construe the statute to provide clarity and to avoid unconstitutional vagueness. *See, e.g., X-Citement Video, Inc.,* 513 U.S. at 69; *Dennis v. United States,* 341 U.S. 494, 501-502 (1951). A plaintiff may challenge a regulation as vague as applied to his particular conduct. *See Parker v. Levy,* 417 U.S. 733, 757 (1974. In other words, given the language of the rule, the challenger must show that he did not have sufficient warning that his conduct would violate the statute or regulation. *Wagner v. City of Holyoke,* 100 F. Supp. 2d 78, 84 (D. Mass. 2000).

In the instant case, Plaintiffs assert that the challenged provisions are unconstitutionally vague from its face and as applied to their conduct. First, Plaintiffs allege that Section (a) is constitutionally vague "because it is entirely unclear what the law means when it prohibits

sharing false information about 'non-existing abnormalities' during a state of emergency or disaster." *See* Docket No. 1-2 at 27. Second, Plaintiffs claim that Section (f) is constitutionally vague because the statute's intent requirement is too nebulous to bring it within constitutional bound [and] [i]t is unclear what the law means by "confusion," and the terms "panic" and "public hysteria" are not much clearer as standards for criminal culpability." Plaintiffs' claims are flawed.

First, Section (a) is clear as to the conduct it proscribes: the dissemination of **false alarms** in connection with the occurrence of a catastrophe or if within an emergency false information about non existing abnormalities. The definition of abnormal is deviating from what is normal.[5] In that sense, a person of reasonable intelligence can understand that during an emergency or disaster, providing **false alarms** about non-existing irregularities is the conduct proscribed. Evidently, the statute is not vague as it clearly does not punish every false information but only those that constitute a false alarm, which by definition is the erroneous report of an emergency, causing unnecessary panic.[6] *See Kolender*, 461 U.S. at 361 (1983) (stating that the Constitution does not impose "impossible standards of clarity"); *see also Grayned*, 408 U.S. at 110 (stating that the Constitution does not require "mathematical certainty" from statutory language).

However, Plaintiffs, once again, invite this Court to speculate about hypothetical situations regarding the vagueness of the challenged provisions. As stated before, "speculation about possible vagueness in hypothetical situations not before the Court will not support

---

[5] *See* <u>Merriam-Webster Dictionary</u>, defining *abnormal* as "deviating from the normal or average" and as "unusual in an unwelcome or problematic way," https://www.merriam-webster.com/dictionary/abnormal (retrieved on June 4, 2020).

[6] *See*, *supra*, n. 4.

a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill,* 530 U.S. at 733. Plaintiffs allege that they do not know if Section (a) applies to "disputes about the death toll or the fatality rate" with the government. *See* Docket 1-2 at 27. That is completely hypothetical and speculative because that issue is not before the Court.

It is very easy to comprehend that reporting an issue—even if it is false and adverse to government—cannot be plainly considered a "false alarm". Plaintiffs have already alleged that they published information regarding the death toll during Hurricane María and were not threatened to be prosecuted or actually prosecuted pursuant said provision. In that sense, Plaintiffs do not state plausible facts from which it can be reasonably concluded that they have been chilled to publish a story because they are confused of the legality of the content of their news article. Contrarywise, Plaintiffs have provided multiple examples of news articles published by them during emergencies that attacked the government's response or information. Therefore, the facial vagueness challenge to Section (a) cannot succeed on the merits because the Court would have to rely on hypothetical situations to arrive at Plaintiffs' conclusions and because a journalist of ordinary intelligence is able to understand the plain language of provision at issue. *See Hill,* 530 U.S. at 733 (holding that speculation about possible vagueness in hypothetical situations will not support facial attack on statute on vagueness grounds when it is surely valid in vast majority of its intended applications).

Second, Plaintiffs allege that Section (f) is unconstitutionally vague from its face because it "requires members of the press to ascertain in advance, on pain of criminal penalty, whether their speech would likely cause confusion, panic, or public hysteria in Puerto Rico." *See* Docket No. 1-2 at 31. That is simply incorrect. In order for the proscribed conduct in Section (f) to be configured the following elements must be commit by an individual: (1) transmits false

information through a massive medium; (2) the false information has to be transmitted with the intent to cause confusion, panic or collective public hysteria; and (3) the false information has to be regarding an executive order declaring a state of emergency or a disaster or a curfew.

From its face, to configure the crime in Section (f) it is not enough to publish false information—knowingly or unknowingly—and that the information creates confusion, panic, or public hysteria, **there has to be an intent to create such reaction**. In that sense, no member of the press can reasonably believe that they could violate Section (f) if their news article creates confusion, panic, or public hysteria if they have no **intent** (*mens rea*) to obtain that result. Therefore, it is forceful to conclude that since a journalist of ordinary intelligence can know what is prohibited by Section (f), Plaintiffs are unlikely to succeed on the merits of a facial vagueness challenge.

Also, Plaintiffs attempt to support their claim that Section (f) is unconstitutionally vague based on hypothetical assertions. For example, Plaintiffs argue that Section (f) "empowers police officers and prosecutors to initiate criminal proceedings against any member of the public whose speech includes real or imagined inaccuracies about government emergency orders" (Docket No. 1-2 at 28) and that they have "concerns about discriminatory enforcement against speakers critical of the government" (Docket No. 1-2 at 28). It is evident that Plaintiffs concerns are purely hypothetical as they rely on a speculative possibility that Section (f) is applied in a certain way or with a certain purpose.

The factual reality is that Plaintiffs and other journalists have continually published journalistic articles challenging government responses during emergencies, as well as the veracity of official information, without being processed. Moreover, to date, the State has not prosecuted a single individual pursuant to Section (f) which makes Plaintiffs' assertions even

more speculative. Thus, since when faced with a facial challenge, the Court cannot to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases, Plaintiffs are unlikely to succeed on the merits. *See Washington State Grange*, 552 U.S. at 449–50 (holding that, when faced with a facial challenge of a statute, federal courts cannot speculate about hypothetical or imaginary cases but rely in the specific facts before it).

Finally, it is unclear whether Plaintiffs are claiming that the challenged provisions are vague "as applied to them, in violation of the Fourteenth Amendment's Due Process Clause." Docket No. 1-2 at 25. If that is their contention, Plaintiffs' *Memorandum of Law in Support of Request for Preliminary Injunction* (Docket No. 1-2) is devoid of any discussion regarding that allegation. In that sense, the First Circuit has clearly stated that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990); *see also Alejandro-Martínez v. Ortiz-Vazquez*, 485 F. App'x 441 (1st Cir. 2012). Therefore, since Plaintiffs did not argue how the challenged provisions are vague as applied to their conduct, the Court must disregard said allegation.

**2. The Plaintiffs have no potential of irreparable harm if the injunction is denied.**

A preliminary injunction is an extraordinary remedy never awarded as of right. *Munaf,* 553 U.S. at 689-690. Irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief. Preliminary injunctions are strong medicine, and they should not issue merely to calm the imaginings of the movant. *Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004). A preliminary injunction should not issue except to prevent a real threat of harm. *Ross–Simons,* 102 F.3d at 19; 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2948.1, at 153–54 (2d ed.1995). A threat

that is either unlikely to materialize or purely theoretical will not do. *Ross–Simons,* 102 F.3d at 19; *Pub. Serv. Co. v. Town of W. Newbury,* 835 F.2d 380, 382 (1st Cir.1987). If a case can be adjudicated on the merits before the harm complained of will occur, there is no sufficient justification for preliminary injunctive relief. 11A Wright, Miller, & Kane, *supra* § 2948.1, at 149. The irreparable harm must be "neither remote nor speculative, but actual and imminent. *In re Bora Bora, Inc.,* 424 B.R. 17, 26 (Bankr. D.P.R. 2010)

The Supreme Court has frequently reiterated that the standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction. *Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983) "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Mazurek v. Armstrong,* 520 U.S. 968 (1997) (*per curiam*). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.,* 480 U.S., at 542, 107 S.Ct. 1396.

In most cases, irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.  Irreparable harm is "an essential prerequisite" for receiving such redress. The burden of demonstrating that a denial of interim relief is likely to cause irreparable harm rests squarely upon the movant. *Charlesbank Equity Fund II v. Blinds to Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004) (Internal citation omitted). A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's **unsubstantiated fears of what the future may have in store**. *Regan v. Vinick & Young (In re Rare Coin Galleries of Am., Inc.),* 862 F.2d 896, 902 (1st Cir.1988) (emphasis ours).

28

Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; "the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) An injunction should issue only where the intervention of a court of equity "is essential in order effectually to protect property rights against injuries otherwise irremediable." *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919).

In the case at hand, Plaintiff utterly failed to specify the necessary factual allegations of irreparable harm needed to clear the threshold for an award of preliminary injunctive relief. Instead, Plaintiffs aver in a slapdash fashion that since they have made a strong showing of likelihood of success on the merits of their First Amendment claim, it follows that the irreparable injury component of the preliminary injunction analysis is satisfied as well. Docket No. 1-2 at 29. This is an incorrect presumption on behalf of Plaintiffs. Defendants have already demonstrated Plaintiffs' likelihood of success because they do not have standing and even if they did their facial challenges to the alluded provisions would most likely fail. Moreover, the irreparable harm requirement stands on its own as a prerequisite to a preliminary injunction.

This Court should not issue Plaintiffs' request for preliminary injunction unless they can corroborate that it will prevent a real threat of harm. To this end, plaintiffs have failed to demonstrate that an irreparable injury is *likely* in the absence of an injunction because the challenged provisions have not been enforced against Plaintiffs. In fact, Plaintiffs did not show that a journalist has been prosecuted for a violation of the challenge provisions. In its place, Plaintiffs contend that the mere threat of prosecution already operates to chill Plaintiffs speech as well as the speech of their sources. Docket No. 1-2 at 29. This is pure speculation on behalf of Plaintiffs. The First Circuit has pronounced that a threat that is either unlikely to materialize

or purely theoretical will not do. *Ross–Simons*, 102 F.3d at 19. Moreover, allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. *Laird*, 408 U.S. 1.

Plaintiffs have continued to published news stories related to the current state of emergency due to the COVID-19 pandemic. By visiting co-plaintiff Rodríguez-Cotto's news website one can appreciate that her journalistic endeavors appeared to be unaffected by the challenge provisions.[7] Also, Plaintiffs admit that they have published numerous news articles during the current COVID-19 pandemic emergency, as well as prior emergencies. It is difficult to understand the supposedly chilling effect that Plaintiffs are enduring when their journalistic work has continued uninterrupted. Plaintiffs rely in *Mangual*, 317 F.3d at 58, to support an alleged ongoing chilling effect in high hopes of satisfying the irreparable harm requirement. However, as we have explained, *Mangual* can be readily distinguished from the present case, since in *Mangual* a criminal investigation had been initiated against a journalist. This is not the situation here. No investigations have been initiated against Plaintiffs regarding the challenge provisions. As a result, this Court must deny Plaintiffs' request for preliminary injunctive relief because they that have not shown the potential for irreparable harm if the injunction is denied.

3. **The balance of equities and the effect of the Court's ruling on the public interest tip the balance in favor of denying the request for preliminary injunction.**

A preliminary injunction is a potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests. *Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 163 (1st Cir. 2004). Constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except

---

[7] *See* S. Rodríguez-Cotto, *En Blanco y Negro*, http://enblancoynegromedia.blogspot.com.

where such advocacy **is directed to inciting or producing imminent lawless action and is likely to incite or produce such action**. *Brandenburg*, 395 U.S. at 447 (emphasis ours). Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as well as the substance of the legal issues it presents. *See Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, at 20 & 24 (2008). The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward. *University of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981).

In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.,* 480 U.S. at 542. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger,* 456 U.S. 305, 312 (1982). Thus, "[a]n injunction should issue only where the intervention of a court of equity is essential to effectually protect property rights against injuries otherwise irremediable. *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,* 645 F.3d 26, 32 (1st Cir. 2011). This involves weighing "the balance of relevant hardships as between the parties." *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 482 (1st Cir. 2009). The Court must balance "the hardship that will befall the nonmovant if the injunction issues ... with the hardship that will befall the movant if the injunction does not issue." *Mercado-Salinas v. Bart Enterprises Int'l, Ltd.*, 671 F.3d 12, 19 (1st Cir. 2011).

A preliminary injunction is not appropriate unless there is "a fit (or lack of friction) between the injunction and the public interest." *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 120 (1st Cir.2003). In assessing a First Amendment challenge, a court looks not only at the

private claims asserted in the complaint, but also inquiries into the governmental interests that are protected by the injunction, which may include an interest in public safety and order. *Madsen,* 512 U.S. at 767–68. A burden on protected speech always causes some degree of irreparable harm. *See Elrod v. Burns,* 427 U.S. 347, 373–74 (1976).

In the instant case, it would serve the public interest to maintain the status quo until this Court can rule on the merits of the Complaint. In the past, the First Circuit Court has acknowledged the importance of the public interest weighing in favor of denying a preliminary injunction. *See Water Keeper All. v. U.S. Dep't of Def.,* 271 F.3d 21, 35 (1st Cir. 2001) (determining that any injury is outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors). Here, safety and security of the public during an emergency are factors that need to be considered if the challenged provision are strike down.

Plaintiffs request for preliminary injunction does not take those concerns into consideration and rather have no legal consequences for those who cause harm and havoc during a state of emergency. The challenge provisions as they stand now protect the public from false information that could cause panic during a state of emergency. The challenge provisions serve as a deterrent for people that have the intention to cause harm. As Plaintiffs pointed out, during this emergency due to the Covid-19 pandemic, a person caused disruption in the food supply chain by falsely announcing that the government would close the food markets. *See* Docket No. 1-2 at 11. Although, the government clarified that this was false, the damage was done, and the food supply chain was disrupted by the many people who went to the food market in fear that said markets would be closed. It bears noting that the public interest cuts both ways. On the one hand, freedom of expression is vital to the health of our

democracy. On the other hand, seeking public safety and ensuring that people are safe during an emergency is also valuable.

A determination of the public interest necessarily encompasses the practical effects of granting or denying preliminary injunctive relief. *Bl(a)ck Tea Soc'y v. City of Bos.*, 378 F.3d 8, 15 (1st Cir. 2004). "When resolving preliminary injunction motions, '[a]ny potential harm caused to [a plaintiff] by the denial of [his] motion must be balanced against any reciprocal harm caused to [the defendant] by the imposition of an injunction." *Allman v. Padilla*, 979 F. Supp. 2d 205, 221 (D.P.R. 2013) Plaintiffs have not demonstrated that the balancing of the equities favors an injunction. In this instance, justice deferred for trial is not justice denied when taking into consideration the consequences of striking down the challenge provisions with a preliminary injunction. Consequently, the balance of hardships and the public interest tip sharply in favor of denying Plaintiffs' request for preliminary injunction.

### 4. Plaintiffs have not posted the required security deposit for the issuance of a preliminary injunction.

Rule 65(c) requires that movant posts "security in an amount that the court considers proper **to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained**" before issuing a preliminary injunction. *See* Fed. R. Civ. P. 65(c). At this time, Plaintiffs have not posted the required bond which prevents this Court from issuing a preliminary injunction. As argued in the present motion, this Court will be hard pressed to specifically find that Plaintiffs/movants have demonstrated: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; or (4) that the grant of an injunction will not disserve the public interest. Given that Plaintiffs do not have standing, they are unlikely to succeed on

the merits, and due to the adverse impact that granting the preliminary injunction will have in the public interest, Defendants move the Court to establish a proper security deposit to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. In this case, Defendants estimate that the bond posted should be in the amount of no less than **ten thousand dollars** ($10,000).

## IV. CONCLUSION

It has been clearly established that Plaintiffs lack Article III standing to invoke this Court's jurisdiction. Plaintiffs failed to establish a **realistic danger of sustaining a direct injury because of the challenged statute's operation or enforcement**. Instead, they rely on a hypothetical, speculative, remote, and baseless fear of prosecution that has not occurred and that cannot be reasonably inferred from the well-pleaded facts that has a real probability of occurring. However, Plaintiffs "**cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending**." *Clapper*, 568 U.S. at 416. That is, because "[a] plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III for either type of injury." *See Mangual*, 317 F.3d at 57. Further, the mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13-14. It is apparent from the arguments raised in this motion that Plaintiffs have attempted to manufacture standing by inflicting harm on themselves based on hypothetical fears and by alleging a subjective chill. A ruling in favor of granting a preliminary injunction would be based exclusively on Plaintiffs' imagination, **resulting in an advisory opinion**. Thus, this Court must swiftly **deny** Plaintiffs request for preliminary injunction because they clearly lack standing.

In the alternative, it has also been clearly established that Plaintiffs failed to comply with each prong of the preliminary injunction standard. First, they are highly unlikely to succeed on the merits since their facial challenge cannot pass the vagueness and overbreadth doctrines muster. Second, Plaintiffs will not suffer any irreparable harm if the preliminary injunction is denied since they admit that they have continued to publish news articles during the emergency despite of their alleged fear of prosecution and the supposed chilling effect that the challenged provisions have on them. Finally, the balance of equities, as well as the adverse effect that the issuing of a preliminary injunction would have on the public interest tip the scale in favor of denying the preliminary injunction. Therefore, it is forceful to conclude that Plaintiffs request for a preliminary injunction must be deny for lack of standing and for not meeting the necessary requirements for the issuance of said extraordinary remedy.

**WHEREFORE**, the Defendants pray that this Honorable Court take notice of the present motion and consequently **DENY** Plaintiffs' request for preliminary injunction.

**I HEREBY CERTIFY** that the undersigned attorney electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to the parties subscribing to the CM/ECF System.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 3rd day of June 2020.

*[Space intentionally left in blank]*

**DENNISE N. LONGO-QUIÑONES**
Designated Secretary of Justice

**WANDYMAR BURGOS-VARGAS**
Deputy Secretary in Charge of Litigation

**SUSANA I. PEÑAGARÍCANO-BROWN**
Director of Legal Affairs
Federal Litigation and Bankruptcy Division

*/s/ Juan C. Ramírez-Ortiz*
**JUAN C. RAMÍREZ-ORTIZ**
USDC-PR No. 306507
Department of Justice of Puerto Rico
Federal Litigation Division
PO Box 9020192
San Juan, PR 00902-0192
Tel. (787)721-2900, ext. 1421
juramirez@justicia.pr.gov

*/s/Joel Torres Ortiz*
**JOEL TORRES ORTIZ**
USDC-PR No. 302311
Department of Justice of Puerto Rico
Federal Litigation Division
PO Box 9020192
San Juan, PR 00902-0192
Tel. (787) 721-2900, ext. 1421 & 1412
joeltorres@justicia.pr.gov