**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| SANDRA RODRÍGUEZ COTTO;<br>RAFELLI GONZÁLEZ COTTO,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>WANDA VÁZQUEZ GARCED, Governor of<br>Puerto Rico; DENNISE NOEMÍ<br> LONGO QUIÑONES, Secretary of<br>Department of Justice of Puerto Rico;<br>PEDRO JANER, Secretary of Puerto Rico<br>Department of Public Safety; HENRY<br>ESCALERA, Puerto Rico Police<br>Commissioner, all in their official capacities,<br><br>   *Defendants*. | Civil Action No.: 3:20-01235-PAD |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY INJUNCTION**

**INTRODUCTION**

In times of emergency, governments often seek to suppress speech in the name of public safety. But the First Amendment stands firmly for the principle that free speech and a free press are essential to the security of an open society.

Plaintiffs Sandra D. Rodríguez Cotto and Rafelli González Cotto seek a preliminary injunction against two provisions of the Law of the Puerto Rico Department of Public Safety, 25 L.P.R.A. §§ 3654(a) and (f), which make it a crime to share false information about emergency conditions in Puerto Rico. Plaintiffs—investigative journalists who report frequently on the COVID-19 public health emergency and the Government's response to that emergency—argued that the Challenged Provisions are unconstitutional for three independent reasons, any one of

1

which would justify a preliminary injunction: (1) the Challenged Provisions are substantially overbroad, because they do not require the Government to demonstrate actual malice; (2) the Challenged Provisions impose a content-based restriction on speech about matters of public concern, and cannot survive strict (or even intermediate) scrutiny; and (3) the Challenged Provisions are too vague for criminal restrictions on speech.

Defendants Gov. Wanda Vázquez Garced, Secretary of Justice Dennise Noemí Longo Quiñones, Secretary of Public Security Pedro Janer, and Police Commissioner Henry Escalera (collectively, the "Government") do not contest Plaintiffs' first two claims. The Government concedes that the Challenged Provisions do not include an actual malice requirement. It does not dispute that the Challenged Provisions impose a content-based restriction on speech about matters of public concern. And it makes no attempt to justify either deficiency.

Instead, the Government argues principally that Plaintiffs lack standing to bring this lawsuit because they have not been personally threatened with prosecution under the Challenged Provisions. However, this attempt to evade judicial review runs up against decades of Supreme Court and First Circuit precedent establishing that plaintiffs may bring a pre-enforcement challenge to a statute that allegedly restricts their First Amendment rights, so long as the statute has not fallen into desuetude.

The Government's arguments on the merits fare no better. First, it contends that the Challenged Provisions are not substantially overbroad, but it fails to reconcile its position with the First Circuit's decision in *Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003), which held that even criminal libel laws are facially unconstitutional if they do not include an actual malice requirement for speech about public officials and public figures. If an actual malice requirement is essential for criminal defamation laws, despite the limited First Amendment protection for

defamation, the requirement must also be essential to criminal restrictions on fully protected speech about matters of public concern.

Second, although the Government does not dispute that the Challenged Provisions impose a content-based restriction on speech about emergency conditions in Puerto Rico, a topic of immense public concern, it makes no attempt to carry its burden of demonstrating that the Challenged Provisions survive strict scrutiny. The Government has not demonstrated that the Challenged Provisions are necessary to maintain public order and public health, and it has done nothing to rebut the strong First Amendment presumption that counterspeech, rather than censorship, is the appropriate response to any concerns about false information.

Third, instead of addressing the substance of Plaintiffs' vagueness challenge, the Government simply repeats the statutory elements of the Challenged Provisions and insists they are not vague. The Government's interpretation of 25 L.P.R.A. § 3654(a) does nothing to alleviate the statute's capacious ambiguity, which could conceivably encompass speech on just about any matter of public concern during an emergency. And the Government does not even attempt to clarify 25 L.P.R.A. § 3654(f)'s *mens rea* requirement. The net result is that the Challenged Provisions effectively deter all manner of speech about emergency conditions in Puerto Rico, and law enforcement officers enjoy dangerously broad discretion to pursue their personal predilections.

Finally, the Government fails to rebut the strong presumption that Plaintiffs' likelihood of success on the merits of their constitutional claims entails their success on the other preliminary injunction factors. Plaintiffs' decision to self-censor, in the face of a credible threat of prosecution under the Challenged Provisions, is sufficient to establish irreparable harm. And both the balance of hardships and the public interest support a preliminary injunction vindicating the First Amendment rights of the free press, which is a public good. Although the Government argues that

3

granting a preliminary injunction would undermine public safety, its *ipse dixit* cannot overcome the deep skepticism the First Amendment requires whenever the Government proposes to criminalize speech on matters of public concern. Additionally, because a preliminary injunction would vindicate Plaintiffs' First Amendment rights and the public interest, the Court should waive any bond requirement under Federal Rule of Civil Procedure 65(c).

## ARGUMENT

I.   **Plaintiffs Have Article III Standing Under the Relaxed Standard Applied to Pre-Enforcement First Amendment Challenges to Criminal Restrictions on Speech.**

The Government argues at length that Plaintiffs lack standing to bring this lawsuit because they have not yet been personally threatened with prosecution, but the Government does not address the test applied to pre-enforcement First Amendment challenges. "[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). In the context of facial pre-enforcement challenges, the Supreme Court has "held that a plaintiff satisfies the injury-in-fact requirement where he alleges '[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Plaintiffs easily satisfy all three prongs of this relaxed standard.

First, Plaintiffs' intended speech is "arguably affected with a constitutional interest." *Id.* at 161 (citation and internal quotation marks omitted). Plaintiffs have alleged an intention to continue reporting on emergency conditions in Puerto Rico, including the COVID-19 public health crisis, and the government's response to such emergencies. Declaration of Sandra D. Rodríguez Cotto ¶ 25, Dkt. No. 1-3; Declaration of Rafelli González Cotto ¶ 10, Dkt. No. 1-4. Reporting on

"subject[s] of legitimate news interest" constitutes speech on "matters of public concern," which lies "at the heart of the First Amendment's protection. *Snyder v. Phelps*, 562 U.S. 443, 453 (2007) (citations and internal quotation marks omitted). *See also Mangual*, 317 F.3d at 64 (stating that reporting on police corruption sits "at the heart of the First Amendment protections of speech and the press").

Second, Plaintiffs' intended speech "is 'arguably . . . proscribed by [the] statute' they wish to challenge," because the Challenged Provisions "cover[] the subject matter of [Plaintiffs'] intended speech." *Susan B. Anthony List*, 573 U.S. at 162 (citation omitted) (first two alterations in original). The Challenged Provisions make it a crime to "spread rumors or give false alarms about non-existent abnormalities" during an emergency, 25 L.P.R.A. § 3654(a), Dkt. No. 10-1, or to transmit "false information" about "any proclamation or executive order decreeing a state of emergency or disaster or curfew," *id.* § 3654(f), Dkt. No. 10-2. Although Plaintiffs certainly do not intend to transmit *false* statements, they are reasonably concerned that they could be prosecuted for statements they believe to be true, either because the statements might contain inadvertent inaccuracies or because the government might dispute the truth of Plaintiffs' reporting. Rodríguez Cotto Decl. ¶ 27, Dkt. No. 1-3; González Cotto Decl. ¶ 14, Dkt. No. 1-4.

This is sufficient to establish standing. "[A] plaintiff who wishes to challenge the constitutionality of a law" prohibiting false statements need not "confess that he will in fact violate that law," so long as his intended speech could "arguably" be construed to violate the law. *Susan B. Anthony List*, 573 U.S. at 163. Both the Supreme Court and the First Circuit have recognized that a plaintiff who intends to publish the truth runs the risk of prosecution under laws prohibiting false statements. In *Susan B. Anthony List*, for example, the Supreme Court held that the plaintiff had standing to bring a pre-enforcement challenge to a law prohibiting false statements about a

5

candidate's voting record, even though the plaintiff believed in the truth of its allegations. *Id.* Similarly, in *Babbitt v. United Farm Workers National Union*, the Supreme Court held that the plaintiff had standing to challenge a statute criminalizing false statements in certain consumer publicity campaigns, even though the plaintiff did "not plan to propagate untruths." 442 U.S. at 301–02. And, in *Mangual*, the First Circuit held that an investigative reporter had pre-enforcement standing to challenge Puerto Rico's criminal libel law, even though he did not intend to libel the subjects of his reporting. 317 F.3d at 60.

Finally, Plaintiffs confront a credible threat of prosecution under the Challenged Provisions. *Susan B. Anthony List*, 573 U.S. at 164. "As to whether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low. '[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence.'" *Mangual*, 317 F.3d at 57 (alteration in original) (quoting *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1998)). "The Supreme Court has often found standing to challenge criminal statutes on First Amendment grounds even when those statutes have *never* been enforced." *Id.* (emphasis added) (citing *Babbitt*, 442 U.S. at 302; *Doe v. Bolton*, 410 U.S. 179, 188 (1973)). Instead, "[a] finding of no credible threat of prosecution under a criminal statute requires a long institutional history of disuse, bordering on desuetude." *Id.* (citing *Poe v. Ullman*, 367 U.S. 497, 507 (1961) (denying standing on the basis of an eighty-year-old "tacit agreement" by the state not to prosecute under the challenged statute)).

Here, the Government cannot demonstrate that the Challenged Provisions have fallen into desuetude. 25 L.P.R.A. § 3654(a) was enacted three years ago, and 25 L.P.R.A. § 3654(f) was enacted two months ago. *See Mangual*, 317 F.3d at 58 ("Puerto Rico's criminal libel statute is not an antiquated and moribund statute; it is less than thirty years old."); *R.I. Ass'n of Realtors, Inc. v.*

*Whitehouse*, 199 F.3d 26, 32 (1st Cir. 1999) (finding a credible threat of prosecution under a statute that had never been enforced, in part because it had been enacted "only twenty years ago"). Furthermore, Defendants "do not argue that the statute is not in current use; they cannot, for it has been recently used." *Mangual*, 317 F.3d at 58. Just last month, the Government was in court prosecuting Pastor José Luis Rivera Santiago for violating 25 L.P.R.A. § 3654(a). Taken together, these facts are more than sufficient to establish a credible threat of prosecution under the "extremely low" threshold for pre-enforcement First Amendment challenges.

Although the Government asserts that it has not yet threatened Plaintiffs or other journalists with prosecution under the Challenged Provisions, that is hardly material. *Mangual*, 317 F.3d at 58 ("[E]ven discounting Rivera's threat of prosecution, Mangual has shown a credible threat of prosecution for continuing his work as a journalist."). "[P]redicting the future from the past is perilous business," especially when the record is so thin. *R.I. Ass'n of Realtors*, 199 F.3d at 32. The Challenged Provisions do not "carve out any exception for journalists." *Mangual*, 317 F.3d at 58. And, if the Government is willing to prosecute a pastor under the Challenged Provisions, there is no reason to believe it would never prosecute a journalist. Indeed, even if the Government disavowed any intention to prosecute journalists under the Challenged Provisions, there would be nothing to prevent the Government from changing its mind at a later date. *See, e.g.*, *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000).

## II.    Plaintiffs Are Likely to Succeed on the Merits.

The Government misses the point when it argues that false statements of fact are entitled to little constitutional protection. Gov't Br. at 18–19, Dkt. No. 13. The principal danger posed by the Challenged Provisions is not that they will deter people from publishing deliberately false

statements of fact, but that they threaten to chill a great deal of truthful speech and give the Government far too much power to criminalize speech on matters of immense public concern.

Furthermore, the Court need not "go beyond the statute's facial requirements" to adjudicate Plaintiffs' claims. *Id*. at 27. The Challenged Provisions are defective on their face, for at least three reasons: (1) they do not include an actual malice requirement; (2) they impose a content-based restriction on speech about emergency conditions in Puerto Rico; and (3) their terms are unconstitutionally vague. Any one of these defects suffices to establish Plaintiffs' likelihood of success on the merits, and the Government does not even dispute the first two.

### A. The Challenged Provisions Are Facially Unconstitutional Because They Do Not Include an Actual Malice Requirement.

This case must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Laws criminalizing false speech inevitably deter true speech. Since "erroneous statement is inevitable in free debate," people naturally fear prosecution for inadvertent inaccuracies and steer wide of the unlawful zone. *Id.* at 271. Even those who are confident in their convictions may "doubt whether [the truth] can be proved in court or fear of the expense of having to do so." *Id.* at 279. "Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned. And since erroneous statement . . . must be protected if the freedoms of expression are to have the breathing space that they need to survive, only those false statements made with the high degree of awareness of their probable falsity . . . may be the subject of either civil or criminal sanctions." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) (citation omitted).

Applying this principle, the First Circuit has held that criminal defamation laws are facially unconstitutional if they do not require the government to demonstrate actual malice with

8

respect to defamation of public officials and public figures, given the tendency of such laws to chill speech on matters of public concern. *See Mangual*, 317 F.3d at 66 ("Section 4101, on its face, is constitutionally deficient, in that it does not require that the *New York Times* and *Garrison* standard of actual malice be proven in order for a statement disparaging a public official or figure to be successfully prosecuted." (citing *Garrison*, 379 U.S. at 74)). *Accord Fitts v. Kolb*, 779 F. Supp. 1502 (D.S.C. 1991); *I.M.L. v. State*, 61 P.3d 1038 (Utah 2002)*; Parmelee v. O'Neel*, 186 P.3d 1094 (Wash. Ct. App. 2008), *rev'd in part on other grounds*, 229 P.3d 723 (Wash. 2010) (en banc). The Challenged Provisions are unconstitutional for the same reason.

The Government does not dispute that the Challenged Provisions lack an actual malice requirement. *See* Gov't Br. at 19–22, Dkt. No. 13. Nor does it dispute that the Challenged Provisions are addressed to speech on matters of immense public concern—namely, emergency conditions in Puerto Rico. *See Snyder*, 562 U.S. at 453. Instead, the Government attempts to distinguish *Mangual* on the ground that it concerned a criminal defamation law, whereas the Challenged Provisions are not targeted at defamation. Gov't Br. at 14–15, Dkt. No. 13. Far from saving the Challenged Provisions, this distinction further condemns them. An actual malice requirement is necessary to ensure adequate breathing space for free expression *even when* the law at issue is addressed to defamation, which has traditionally been recognized as one of the few, narrowly-defined exceptions to the First Amendment's broad protection for speech of all kinds. *See United States v. Alvarez*, 567 U.S. 709, 717, 719 (2012). Non-defamatory speech on matters of public concern, including speech on emergency conditions, is entitled to more constitutional protection, not less. The Government impermissibly "seeks to convert a rule that limits liability

even in defamation cases where the law permits recovery for tortious wrongs into a rule that expands liability in a different, far greater realm of discourse and expression." *Id.* at 719.[1]

The Government alternatively tries to analogize the Challenged Provisions to the sedition law upheld in *Schenck v. United States*, citing Justice Holmes's famous dictum that "[t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." 249 U.S. 47, 52 (1919). As Plaintiffs pointed out in their opening brief, "the clear and present danger of [*Schenck*] [has] evolved into the modern incitement rule of *Brandenburg v. Ohio*, 395 U.S. 444 (1969)." *Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 778 (1996) (parallel citations omitted). The Government has not demonstrated that the Challenged Provisions satisfy *Brandenburg*'s incitement test. Nor could it, given that the provisions are plainly not limited to speech that is intended and likely to produce imminent lawless action. *Brandenburg*, 395 U.S. at 447–48. Even if the government could show that false speech about emergency conditions in Puerto Rico had a tendency to provoke unlawful actions—and it manifestly has not—that would not be a sufficient reason for banning it. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 236 (2002).

Nonetheless, the Government's reference to *Schenck* is illuminating. It may be dangerous to falsely shout "Fire!" in a crowded theater in order to cause a panic. But it is even more dangerous to deter people from raising the alarm if they have reason to believe that a fire is breaking out. The Challenged Provisions "present a grave hazard of discouraging the press from exercising the constitutional guarantees. Those guarantees are not for the benefit of the press so much as for the benefit of all of us." *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967). By threatening criminal

---

[1] As discussed below, Section II.B *infra*, the Challenged Provisions would be unconstitutional even if they included an actual malice requirement.

prosecution for spreading *false* information about emergency conditions in Puerto Rico, the Challenged Provisions chill *true* reporting and discussion about emergencies. They thus threaten to deprive the public of essential information in its moment of need.

### B. The Government Does Not Dispute that the Challenged Provisions Are Content-Based, and Has Not Shown That They Can Survive Strict Scrutiny.

Even if the Challenged Provisions included an actual malice requirement, they would still be facially unconstitutional because they impose content-based restrictions on speech about matters of public concern. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chi. v. Mosley*, 408 U.S. 92, 95 (1972). Facially content-based laws are presumptively unconstitutional and receive strict judicial scrutiny. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226–27 (2015). This "is the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997).

In *Alvarez*, a plurality of the Supreme Court held that content-based restrictions on false speech trigger strict scrutiny because the government does not have the "authority to compile a list of subjects about which false statements are punishable." *Alvarez*, 567 U.S. at 723 (plurality opinion). Furthermore, the Justices *unanimously* agreed that content-based restrictions on false speech about matters of public concern trigger strict scrutiny because allowing "the state to be the arbiter of truth" on such matters "would present a grave and unacceptable danger of suppressing truthful speech." *Id.* at 751–52 (Alito, J., dissenting); *accord id.* at 731–32 (Breyer, J., concurring in the judgment).[2]

---

[2] A majority of the Justices agreed that content-based restrictions on false speech about matters of private concern trigger at least intermediate scrutiny. *See id.* at 732 (opinion of Breyer, J.).

Here, the Government does not dispute that the Challenged Provisions impose a content-based restriction on speech about matters of significant public concern—namely, emergency conditions in Puerto Rico. *See Reed*, 135 S. Ct. at 2227 ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). Nor does it dispute that strict scrutiny is appropriate under *Alvarez*.  Indeed, although the Government notes Plaintiffs' content discrimination claim, Gov't Br. at 5, Dkt. No. 13, it does not address it. Presumably, that is because the Government recognizes the futility of contesting the issue.

Under strict scrutiny, it is the Government's burden to rebut the presumption of unconstitutionality by demonstrating that the Challenged Provisions are "necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end." *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987). To carry its burden under strict scrutiny, the government "must specifically identify an actual problem in need of solving, and the curtailment of free speech must be actually necessary to the solution." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011) (citations and internal quotation marks omitted). Moreover, the government must demonstrate that any "plausible, less restrictive alternative would be ineffective" in achieving its compelling goals. *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 824 (2000). Finally, the government's showing must be supported by record evidence, not "anecdote and supposition." *Id.* at 822.

Here, the Government has made no attempt to satisfy its burden under strict scrutiny. Although the Government insists the law is necessary for public security, Gov't Br. at 32, Dkt. No. 13, the "word 'security' is a broad, vague generality whose contours should not be invoked to abrogate the fundamental law embodied in the First Amendment." *N.Y. Times Co. v. United States*,

403 U.S. 713, 719 (1971) (Black, J., concurring) (refusing to grant the government's motion to enjoin the publication of the Pentagon Papers during the Vietnam War). And, as the Supreme Court recognized in *Alvarez*, "suppression of speech by the government can make exposure of falsity more difficult, not less so." 567 U.S. at 728. The Government's brief is almost entirely devoid of evidence demonstrating that false information about emergency conditions in Puerto Rico poses such a threat to public order and safety that the Government must be granted the extraordinary power of the censor.

The one example that the Government does cite—the prosecution of Pastor José Luis Rivera Santiago under 25 L.P.R.A. § 3654(a) for allegedly raising a false alarm about a rumored government curfew order—does not help its case. *See* Gov't Br. at 32, Dkt. No. 13. First, this is exactly the sort of anecdotal reasoning that strict scrutiny forbids. *See Playboy Entm't Grp.*, 529 U.S. at 824. Second, the prosecution against Pastor Rivera Santiago was dismissed for lack of probable cause, so it hardly demonstrates the utility of the Challenged Provisions. Finally, as Plaintiffs pointed out in their opening brief, Governor Vázquez did eventually announce an executive order closing almost all businesses in Puerto Rico over Easter weekend, which itself caused a run on the grocery stores. Pls.' Opening Br. at 12 & n.8, Dkt. No. 4-3. Thus, even if it is supposed that false information about emergency conditions might marginally increase the risk of public disorder, "those effects are both small and indistinguishable from effects produced by other media," including the government's own announcements. *Brown*, 564 U.S. at 801–02.

Furthermore, the Government has failed to demonstrate that less restrictive alternatives— in particular, counterspeech—would not effectively advance the Government's asserted interest in preventing false alarms from undermining public safety. "The remedy for speech that is false is speech that is true. This is the ordinary course in a free society." *Alvarez*, 567 U.S. at 727 (plurality

opinion); *see also id*. at 738 (opinion of Breyer, J.) ("I would also note, like the plurality, that in this area more accurate information will normally counteract the lie."); *281 Care Comm. v. Arneson*, 766 F.3d 774, 794 (8th Cir. 2014) ("[C]ounterspeech, alone, establishes a viable less restrictive means of addressing the preservation of fair and honest elections in Minnesota and preventing fraud on the electorate."). Rather than threatening prosecution for spreading information about emergency conditions in Puerto Rico that the government deems to be false, the Government should be holding regular press conferences, releasing pertinent public records, and issuing public service announcements to explain its actions to the public. *See Alvarez*, 567 U.S. at 729 (plurality opinion) (suggesting that, instead of making it a crime to falsely claim the Medal of Honor, the government could establish a database of Medal of Honor recipients).  The Government has done nothing in this case to rebut the First Amendment's strong presumption that transparency is more conducive to the long-term security of constitutional democracy than censorship.

Instead, the Government takes the position that the Challenged Provisions are not facially overbroad, because "a substantial number of the applications" of the Challenged Provisions applications "are **not** unconstitutional." Gov't Br. at 19, Dkt. No. 13. Aside from restating the statutory elements, the Government does not cite any precedent or provide any analysis to support its assertion that the Challenged Provisions have a substantial legitimate sweep. In any event, the Government's argument is nonresponsive to Plaintiffs' content-discrimination challenge. A facially content-based statute is an invalid rule—unconstitutional in all its applications and *a fortiori* substantially overbroad—unless the Government can demonstrate that the statute satisfies strict scrutiny. *See Reed*, 135 S. Ct. at 2231. Because Challenged Provisions cannot "survive the narrow tailoring inquiry" under strict (or even intermediate) scrutiny, they are facially

14

unconstitutional, regardless of whether the Government can hypothesize "a number of legitimate applications." *Cutting v. City of Portland*, 802 F.3d 79, 86 (1st Cir. 2015).

### C.  The Challenged Provisions Are Unconstitutionally Vague.

Finally, the Challenged Provisions cannot survive the stringent vagueness scrutiny applied to criminal restrictions on speech. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56–57 (1999)).

25 L.P.R.A. § 3654(a) suffers from a vague *actus reus* requirement. It is entirely unclear what the law means when it prohibits raising "false alarm[s]" about "non-existent abnormalities" during a state of emergency or disaster. The Government argues that the provision is not vague, because "a person of reasonable intelligence can understand that during an emergency or disaster, providing false alarms about non-existing irregularities is the conduct proscribed." Gov't Br. at 24, Dkt. No. 13. This tautology does nothing to alleviate the vagueness inherent in the statutory terms, and the Government's definition of false alarm—"something causing alarm or excitement that proves to be unfounded," *Id*. at 19 n.4—does not appreciably reduce the provision's scope. Thus, 25 L.P.R.A. § 3654(a) potentially applies to speech on just about any matter of public concern during an emergency, when even minor irregularities may tend to cause alarm or excitement. Reports that a disease is deadlier than expected, that the government is planning to impose or lift a curfew, that medical supplies are defective or depleted, that the financial system

15

is on the verge of collapse, or that law enforcement officials are mistreating members of the public all conceivably constitute "false alarms about non-existent abnormalities."[3]

25 L.P.R.A. § 3654(f), on the other hand, suffers from a vague *mens rea* requirement. The statute makes it a crime to transmit false information regarding an executive order declaring a state of emergency or a disaster or a curfew with the intent to cause "confusion, panic or collective public hysteria." Plaintiffs argued in their opening brief that the terms "confusion, panic, or collective public hysteria" are unconstitutionally vague and require journalists to speculate about how the public might react to their reporting. Pls.' Opening Br. at 27–28, Dkt. No. 4-3. The Government does not provide any clarification for these statutory terms. Instead, it insists that the provision is not vague, because "**there has to be an intent to create such reaction**." Gov't Br. at 26, Dkt. No. 13. However, the fact that the statute requires intent provides no protection at all, since the underlying standard is inherently vague. *See Smith v. Goguen*, 415 U.S. 566, 580 (1974) (rejecting the government's contention that a statute criminalizing contemptuous treatment of the flag would survive vagueness review if limited to intentionally contemptuous treatment, because this construction of the statute still would not sufficiently "clarify what conduct constitutes contempt, whether intentional or inadvertent").

The Challenged Provisions thus "range[] very broadly," and "that breadth means that it creates a significant risk of First Amendment harm." *Alvarez*, 567 U.S. at 736 (opinion of Breyer, J.). Plaintiffs and others who are unsure about what speech is prohibited must "steer far wider of

---

[3] In evaluating Plaintiffs' facial vagueness challenge, the Court may consider how the statute could apply to the various types of speech in which Plaintiffs and other members of the public might wish to engage. *See also Keyishian v. Bd. of Regents*, 385 U.S. 589, 598–99 (1967) (discussing all the possible applications of a vague prohibition against "seditious" utterances or actions). In evaluating Plaintiffs' prospective as-applied vagueness challenge, the Court may consider the specific areas of confusion they have identified. *See* Rodríguez Cotto Decl. ¶ 31, Dkt. No. 1-3; González Cotto Decl. ¶¶ 18–19, Dkt. No. 1-4.

the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (alteration in original) (citations and internal quotation marks omitted). Moreover, without a clearly defined standard of liability, law enforcement officials possess virtually unlimited discretion to engage in arbitrary or discriminatory enforcement. The "need to eliminate the impermissible risk of discriminatory enforcement" is especially important with respect to criminal regulations of speech, "for history shows that speech is suppressed when either the speaker or the message is critical of those who enforce the law." *Gentile v. State Bar*, 501 U.S. 1030, 1051 (1991). Although the Government dismisses Plaintiffs' concerns as hypothetical, the Court does not need to wait for latent dangers to be realized in order to provide facial relief. "The question is not whether discriminatory enforcement occurred . . . but whether the Rule is so imprecise that discriminatory enforcement is a real possibility." *Id.* It is.

## III. The Other Preliminary Injunction Factors Support Plaintiffs' Right to Immediate Relief.

### A. Plaintiffs Have Demonstrated Irreparable Harm.

The Government faults Plaintiffs' "incorrect presumption" that "since they have made a strong showing of likelihood of success on the merits of their First Amendment claim, it follows that the irreparable injury component of the preliminary injunction analysis is satisfied as well." Gov't Br. at 29, Dkt. No. 13. The Government's dispute lies with the First Circuit, which expressly established this presumption in *Sindicato Puertorriqueño de Trabajadores v. Fortuno*, 699 F.3d 1, 15 (1st Cir. 2012) ("Because we conclude that plaintiffs have made a strong showing of likelihood of success on the merits of their First Amendment claim, it follows that the irreparable injury component of the preliminary injunction analysis is satisfied as well. The district court therefore erred in its finding that plaintiffs failed to make a sufficient showing of irreparable injury." (citations omitted)). *See also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The Government makes no attempt to distinguish *Sindicato* or *Elrod*, both of which were cited in Plaintiffs' opening brief. Pls.' Opening Br. at 29, Dkt. No. 4-3.

Furthermore, Plaintiffs have averred that the Challenged Provisions are irreparably harming their First Amendment rights by chilling their own reporting and by making their sources less likely to share information with them. *See* Rodríguez Cotto Decl. ¶¶ 27–32, Dkt. No. 1-3; González Cotto Decl. ¶¶ 12–19, Dkt. No. 1-4. The Government argues that Plaintiffs' chill is purely "subjective," because they have not yet been threatened with prosecution under the Challenged Provisions. Gov't Br. at 29, Dkt. No. 13. As discussed in Section I, however, Plaintiffs face a credible threat of prosecution under the Challenged Provisions, given that 25 L.P.R.A. § 3654(f) was enacted two months ago and 25 L.P.R.A. § 3654(a) was invoked just last month to prosecute Pastor Rivera Santiago. Because Plaintiffs' chill "emanates from a credible threat of prosecution," they "need not either describe a plan to break the law or wait for a prosecution under it." *Mangual*, 317 F.3d at 60; *see also Sindicato*, 699 F.3d at 8–10, 15 (holding that the plaintiff unions had established irreparable harm based on the threat of liability under Puerto Rico's campaign finance law, even though there was no indication that they had been threatened with an enforcement action).

The Government alternatively argues that Plaintiffs cannot demonstrate irreparable harm because they have not ceased reporting altogether. Gov't Br. at 30, Dkt. No. 13. But the Challenged Provisions may unconstitutionally curtail Plaintiffs' reporting without completely silencing it. As the Government recognizes, "[a] burden on protected speech always causes some degree of irreparable harm." *Id.*  (citing *Elrod*, 427 U.S. at 373–74). And "a claimant need not show he ceased [speaking] altogether to demonstrate an injury in fact." *Kenny v. Wilson*, 885 F.3d 280, 289

n.3 (4th Cir. 2018). Thus, in *Mangual*, the First Circuit held that the plaintiff was injured both by the ongoing threat of prosecution for the investigative journalism he continued to perform *and* by the self-censorship he was compelled to undertake in order to limit his legal exposure. 317 F.3d at 58, 60. Here, too, Plaintiffs have been forced to self-censor in order to mitigate their risk of prosecution under the Challenged Provisions, even though they intend to continue reporting on emergency conditions in Puerto Rico. This showing is sufficient to establish irreparable harm.

### B.   The Balance of Hardships and the Public Interest Support Injunctive Relief.

As this Court recognized in *Firecross Ministries v. Municipality of Ponce*, the balance of hardships and the public interest "weigh[] heavily against Defendants" in any case where a plaintiff demonstrates a likelihood of success on the merits of free speech claims, because "First Amendment freedoms must always be protected" and "suppressing protected speech innately harms the public interest as a whole." 204 F. Supp. 2d 244, 250–51 (D.P.R. 2002). Thus, in any First Amendment case where a plaintiff demonstrates a likelihood of success on the merits, the "balance weighs heavily against Defendants." *Id.* at 251. *See also, e.g.*, *Magriz v. Union de Tronquistas de P.R., Local 901*, 765 F. Supp. 2d 143, 157 (D.P.R. 2011) ("When a constitutional violation is likely . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010))). These presumptions carry special force when press freedoms are at stake, because "[a] broadly defined freedom of the press assures the maintenance of our political system and an open society." *Time, Inc.*, 385 U.S. at 389.

Plaintiffs do not dispute that "seeking public safety and ensuring that people are safe during an emergency is also valuable." Gov't Br. at 32, Dkt. No. 13. But the First Amendment rights to free speech and a free press promote, rather than undermine, public safety. "The Framers of the

First Amendment, fully aware of both the need to defend a new nation and the abuses of the English and Colonial Governments, sought to give this new society strength and security by providing that freedom of speech, press, religion, and assembly should not be abridged." *New York Times Co.*, 403 U.S. at 719. Thus, "[o]ur constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *Alvarez*, 567 U.S. at 723 (plurality opinion) (citing George Orwell, *Nineteen Eighty–Four* (1949) (Centennial ed. 2003)). As discussed in Section II.B, the Government has failed to demonstrate that the Challenged Provisions are essential to maintaining public order. Nor has it shown that less restrictive alternatives (such as government transparency) would be ineffective at promoting public safety. The Government should not be allowed to invoke vague concerns about "security" as a free pass to run roughshod over the First Amendment.

## IV.   The Court Should Waive Any Bond Requirement Under Rule 65(c).

Finally, pursuant to Federal Rule of Civil Procedure 65(c), the Government moves the Court to impose a $10,000 bond requirement as a condition of any preliminary injunction against Challenged Provisions. Gov't Br. at 33–34, Dkt. No. 13. Plaintiffs respectfully request that this Court waive any bond requirement under Rule 65(c). Waiving the bond requirement is warranted because Plaintiffs seek to vindicate constitutional rights, and so their lawsuit is in the public interest. *See Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers*, 679 F.2d 978, 1000 (1st Cir. 1982) ("[N]o bond is required in suits to enforce important federal rights or public interests." (internal quotation marks omitted)), *rev'd on other grounds*, 467 U.S. 526 (1984); *see also, e.g.*, *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 803 n.8 (3d Cir. 1989) (collecting cases); *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) (noting that courts have recognized that public interest litigation is an exception to the Rule 65 bond requirement).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction prohibiting Defendant from enforcing 25 L.P.R.A. §§ 3654(a) and (f). Plaintiffs also respectfully request that the Court waive any bond requirement under Federal Rule of Civil Procedure 65(c).

I HEREBY CERTIFY:  That on this same date I have served this Motion to all defendants through the CM/ECF system which will serve copies to all parties in this case.

DATED: June 10, 2020.

<div style="margin-left: 40%;">

S/Fermin L. Arraiza-Navas
FERMÍN L. ARRAIZA NAVAS
USDC-PR #215705
William Ramirez-Hernández+
American Civil Liberties Union
of Puerto Rico
Union Plaza
416 Avenida Ponce de León, Suite 1105
San Juan, Puerto Rico 00918
(787) 753-9493
(646) 740-3865
farraiza@aclu.org
wramirez@aclu.org

Brian Hauss*
Emerson Sykes+
Arianna Demas+
ACLU Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
bhauss@aclu.org

*Pro hac vice
+ Of counsel

Attorneys for Plaintiffs

</div>