## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SANDRA RODRÍGUEZ-COTTO;**<br>**RAFELLI GONZÁLEZ-COTTO** | **CIVIL No.** 20-01235 (PAD) |
| *Plaintiffs,* | **RE:** Preliminary and Permanent Injunction |
| v. | |
| **WANDA VÁZQUEZ-GARCED**, Governor of Puerto Rico; **DENNISE N. LONGO-QUIÑONES**, Secretary of Justice of Puerto Rico; **PEDRO JANER**, Secretary of the Department of Public Safety of Puerto Rico; **HENRY ESCALERA**, Commissioner of the Puerto Rico Police Bureau, all in their official capacities | |
| *Defendants.* | |

## SURREPLY TO REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**TO THE HONORABLE COURT:**

**COME NOW**, co-defendants **Wanda Vázquez-Garced**, Governor of Puerto Rico; **Dennise N. Longo-Quiñones**, Secretary of Justice of Puerto Rico; **Pedro Janer**, Secretary of the Department of Public Safety of Puerto Rico; and, **Henry Escalera**, Commissioner of the Puerto Rico Police Department, all in their official capacities, without waiving any right or defense arising from Title III of *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"), 48 U.S.C. §§2101 *et seq.*, and the Commonwealth's Petition under said Title or under this case and without submitting to the Court's jurisdiction, and through the undersigned attorney, very respectfully **STATE** and **PRAY** as follows:

## I. INTRODUCTION

On June 5, 2020, the appearing defendants ("Defendants") filed a *Response in Opposition to Motion for Preliminary Injunction* (Docket No. 13) in which they established that Sandra Rodríguez-Cotto and Rafelli González-Cotto ("Plaintiffs") did not have Article III standing to challenge the constitutionality of Sections (a) and (f) of Article 6.14 of the *Puerto Rico Public Safety Act*, Act No. 20-2017 and could not satisfy any of the four (4) prongs required for the issuance of a preliminary injunction. Consequently, on June 10, 2020, Plaintiffs filed a *Reply Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction* (Docket No. 16) in which they rehashed most of their arguments to attempt to manufacture standing and set forth some new theories in an attempt to artificially revive an otherwise dilapidated case.

In the instant motion, and as argued in our Response at Docket No. 13, Defendants have placed the Court in position to deny the preliminary injunction as the present action could not surpass the standing threshold nor could it satisfy the four (4) prongs required for a preliminary injunction. **First**, this Court will be able to corroborate that Plaintiffs misconstrue the holding in *Steffel v. Thompson*, 415 U.S. 452 (1974), in an effort to conceal their irrational fear of prosecution and erroneously argue that in pre-enforcement challenges they do not have to demonstrate a threat to obtain standing. **Second**, Plaintiffs new "self-censorship" argument falls flat because they cannot meet the required standard to establish an injury in that ground. **Third**, Plaintiffs fail in their attempt to persuade this Court by erroneously applying the holding of *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), to the instant case. **Fourth**, Plaintiffs reliance on the prosecution of an individual not before this Court for unrelatable actions does not suffice to confer standing to Plaintiffs. **Fifth**, plaintiffs fail to meet the

necessary requirements that are needed for the issuance of a preliminary injunction. Therefore, Defendants reiterate that Plaintiffs' request for preliminary injunction should be **DENIED**.

## II. ARGUMENTS

**A. Plaintiffs were unable to establish that they have Article III standing and continued to rely on hypotheticals, subjective chill, and irrational fear of prosecution to manufacture the same.**

   1. **Plaintiffs misconstrue the holding in *Steffel v. Thompson*, 415 U.S. 452 (1974), in an attempt to conceal their subjective and irrational fear of prosecution and to support their faulty theory that in pre-enforcement challenges they do not have to demonstrate  a threat to obtain standing.**

In Plaintiff's *Reply Memorandum in Support of Motion for Preliminary Injunction* (Docket No. 16), in an attempt to conceal that their fear of prosecution is subjective and irrational, they cite *Steffel v. Thompson*, 415 U.S. 452, 459 (1974), so as to persuade this Court that neither them nor another journalist have to be directly threatened with prosecution in order to have standing. However, Plaintiffs conveniently disregarded that in *Steffel,* the Supreme Court heavily relied on the fact that the plaintiff was directly threatened with prosecution and that his partner was actually prosecuted for engaging in the **same** activity as him. Maybe for Plaintiffs a mere allegation of fear of prosecution, however subjective and irrational it may be, is enough to surpass the standing threshold but it is simply not. *See*, e.g., *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416 (2013) (holding that plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending). In that sense, it is essential to put *Steffel* in context in order for this Court to understand that Plaintiffs heavily misconstrued the Supreme Courts analysis in that case and that a mere allegation of fear cannot overcome the standing barrier.

In *Steffel*, the plaintiff filed a suit on First and Fourteenth Amendment grounds because **he had been <u>threatened</u> with prosecution by the police for violating a criminal trespass statute if he did not stop distributing anti-Vietnam War handbills on exterior sidewalk of Georgia shopping center**. *See Steffel*, 415 U.S. at 458. Moreover, in said case, the plaintiff's handbilling companion **was actually prosecuted pursuant the challenged statute** which the Court viewed as an ample demonstration of his fear of being arrested. *Id*. It is in that context that the Supreme Court stated that "[**<u>i]n these circumstances</u>**, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id*. Simply put, the *Steffel* Court granted standing to a plaintiff whose fear of prosecution was **<u>amply demonstrated</u>** because the specific circumstances of the case were: (1) the plaintiff had directly been threatened with prosecution by police officers; and (2) his handbilling companion was arrested for engaging **in the same activity** that he was executing. *Id*.

As this Court can confirm, while certainly Plaintiffs do not have to actually undergo arrest or prosecution in a pre-enforcement challenge of a statute, they **must amply demonstrate that their fear of prosecution is well-founded with specific facts and it cannot be a mere chimerical distress**. *See Steffel* 415 U.S. at 458 (recognizing standing to a plaintiff who had amply demonstrated a well-founded concern with arrest which was far from chimerical). Moreover, Plaintiffs argued that in *Mangual* the Court granted standing to a plaintiff even discounting the police officer's threat of prosecution in that case. Docket No. 16 at 7. However, Plaintiffs omitted the fact that if the police officer's threat to plaintiff was discounted in *Mangual*, other well-founded threats existed to support the same: (1) the Department of Justice's referral to the Police; and (2) the prosecution of another journalist

pursuant the challenged statute for engaging in the **same** conduct that the plaintiff stated he would continue to perform. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 58 (1st Cir. 2003). Evidently, Plaintiffs simply prefer to disregard their burden to satisfy the standing barrier and disdain it by stating that the inexistence of an actual threat of prosecution directed to them or other journalists is "hardly material" to sustain their allegations of fear. Docket No. 16 at 7. Yet, they blatantly ignore that the direct threat of prosecution voiced by governmental official **was very material** for the Supreme Court and the First Circuit to recognize standing to the plaintiffs in *Steffel* and in *Mangual*,[1] respectively.

In the instant case, Plaintiffs have continuously failed to demonstrate their alleged fear of prosecution with facts sufficient to even meet a "relaxed" standing standard. *See Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); *Steffel* 415 U.S. at 458 (recognizing standing because a plaintiff had amply demonstrated a well-founded concern with arrest); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("Abstract injury is not enough[,] [i]t must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct."). Plaintiffs are not only to aver any credible threat of prosecution but cannot assert collateral facts that even in a "relaxed" fashion can support a credible threat or fear of prosecution. Initially, in their *Memorandum in Support of Motion for Preliminary Injunction* (Docket No. 4-3), Plaintiffs were supporting their speculative fear of prosecution

---

[1] This Court must note that in Defendants' *Response in Opposition to Motion for Preliminary Injunction*, the distinctions between the instant case and the First Circuit's *Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003), were thoroughly discussed and established but Plaintiffs did not even attempt to rebut said argument. *See* Docket No. 16 at 12-14. The fact that Plaintiffs ignored the distinction between *Mangual* and the instant case and continued to cite the same without context reveals the dimness of their standing theory.

with: (1) a remote and unrelated event occurred 21 years ago in which co-plaintiff Rodríguez-Cotto claims to remember that a colleague was prosecuted pursuant a defunct libel statute (Docket No. 4-3 at 15); (2) a hypothetic fear co-plaintiff González-Cotto based on the possibility that could be prosecuted for "challenging the government narrative" (Docket No. 4-3 at 17); and (3) the failed prosecution of an individual **who was not a journalist** or a reporter, which case was completely different (this specific issue will be discussed later in the motion).

In their *Reply* brief (Docket No. 16), Plaintiffs opted to abandon two of their three flawed arguments to support their standing theory and simply relied on the **unrelated case** of an individual that is not before this Court and whose actions were not even remotely similar to the ones that they allege to be fearful of engaging in. *See, e.g., Steffel* 415 U.S. at 458 (recognizing standing to a plaintiff whose handbilling partner was prosecuted pursuant the challenged statute due to engaging in the same conduct that the plaintiff was performing); *Mangual*, 317 F.3d at 60 (recognizing standing to a plaintiff whose journalist peer was prosecuted pursuant to the challenged statute for engaging in the same conduct that the plaintiff was performing); *see also Clapper*, 568 U.S. at 415 (holding that plaintiffs bear the burden of pleading and proving concrete facts showing that the a defendant's actual action has caused the substantial risk of harm and cannot simply rely on speculations about the unfettered choices made by independent actors not before the court to establish Article III standing). That allegation based on the **unrelated** experience of an independent actor not before this Court is not enough to open the doors of a federal court for a pre-enforcement challenge to a statute. *See Clapper*, 568 U.S. at 415.

Plainly, Plaintiffs' hypothetical, subjective and irrational allegations of a fear of prosecution without a well-founded factual base fail to demonstrate a **realistic** danger of

sustaining a **direct injury** as a result of the statute's operation or enforcement. *See Babbitt*, 442 U.S. at 298; *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ( "[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."); *Mangual*, 317 F.3d at 58 ("A plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III"). Plaintiffs conclusion that a simple allegation of subjective fear is enough to confer them standing falls flat, since *Steffel*—the case in which they rely to support their theory—shows that the alleged fear of prosecution cannot be chimerical and has to be rationally relatable to the claim. *Steffel*, 415 U.S. at 459 ("[plaintiff's] challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him."). Thus, since Plaintiffs are unable to establish an imminent or even realistic threat of prosecution reasonably traceable to the challenged provisions, they will never be able to satisfy the Article III standing requirement.

2. **Plaintiffs drifted apart from their "chilling effect" theory and now adopt a "self-censorship" argument that falls flat because they cannot meet the required standard.**

Plaintiffs continue their illogical quest for standing by drifting apart from their subjective "chill" theory and now vaguely arguing, for the first time, that they have been "self-censoring" because of the challenged provisions. The fact that Plaintiffs decided to drift apart from their original "chill" arguments and adopt a new and self-serving "self-censorship" theory in an attempt to establish an injury-in-fact was not by chance. That is because Plaintiffs utterly rebutted their claims of a subjective "chill" with their own admissions and factual reality. Plaintiffs not only admitted having published stories challenging official information during the states of emergencies declared since the enactment of Section (a) in 2017 but also admitted having published numerous stories challenging official information during the current state of

emergency declared due to the COVID-19 pandemic. Moreover, Plaintiffs have continued to publish stories that "challenge the government narrative"(Docket No. 4-3 at 17) in the midst of the present case.

Evidently, Plaintiffs' own admissions and actions showed that the alleged "chill" was purely subjective and that they did not fear to be prosecuted. *See Laird*, 408 U.S. at 13 (holding that plaintiffs challenging governmental action are not themselves chilled in the exercise of their First Amendment rights, they lack personal stake in the outcome of the controversy, which is essential to standing). Also, Plaintiffs' fell short of **demonstrating a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement**.[2] *See Babbitt*, 442 U.S. at 298 (holding that the plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement). Thus, it was clearly established that Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," *Clapper*, 568 U.S. at 416, because "[a] plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III," *Mangual*, 317 F.3d at 57, and the mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," *Laird*, 408 U.S. at 13-14.

**In their *Reply* brief**, Plaintiffs asserted that they have decided to "self-censor, in the face of a credible threat of prosecution under the challenged provisions" (Docket No. 16 at 3 & 21); and that they have "been forced to self-censor in order to mitigate their risk of prosecution

---

[2] For the full discussion on Plaintiffs lack of Article III standing to challenge the statutory provisions at issue, *see* Docket No. 13 at pages 4-11.

under the Challenged Provisions, even though they intend to continue reporting on emergency conditions in Puerto Rico" (Docket No. 16 at 19). However, the self-censorship door to standing, to challenge the constitutionality of statute on First Amendment grounds, **does not open the door for every plaintiff**. *See California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (holding that it is insufficient for a plaintiff to gain standing by simply alleging self-censorship if there is not a well-founded fear that the challenged law will be enforced against them). In order for a self-censorship claim to satisfy Article III standing injury requirement, the potential plaintiff "must have **an actual and well-founded fear** that **the law will be enforced against him or her**", and, "**in the free speech context, such a fear of prosecutio**n **will only inure if plaintiff's intended speech arguably falls within the statute's reach**." *Id*. at 1095 (emphasis added). If a plaintiff claims to have self-censored due to a fear of punishment, the self-censorship **must** be objectively reasonable and arise from a fear of punishment that is not "imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302.

In the instant case, Plaintiffs did not even attempt to establish a well-founded fear that the law will be enforced against them or that their intended speech falls within the statute's reach because they cannot. *See California Pro-Life Council*, 328 F.3d at 1095. In fact, Plaintiffs blatantly admitted that they "certainly do not intend to transmit false statements" (Docket No. 16 at 5) but that they are "concerned" that hypothetically they could be prosecuted "because the statements **might** contain inadvertent inaccuracies or because the government might dispute the truth of Plaintiffs' reporting" (Docket No. 16 at 5) (emphasis added). That simple statement summarizes Plaintiffs' whole standing theory based on imaginary and speculative scenarios that "might" happen but that they cannot reasonably argue are likely to occur. Moreover, Plaintiffs plain admission that "certainly" their intended speech **does not fall**

**within the statutes reach** completely defeats their attempt to obtain standing based on self-censorship since that is a necessary element to sustain an injury on that ground. Docket No . 16 at 5. Unfortunately, Plaintiffs overlooked one of the most important holdings in *Clapper* and *Mangual*, a case that they heavily relied on: "[a plaintiff] **cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending**". *Clapper,* 568 U.S. at 402; *Mangual,* 317 F.3d at 416.

Plaintiffs are unable to conceal their subjective "chill" allegations with a new self-censorship claim. Plaintiffs failed to show that their supposed fear of punishment was not speculative. Inversely, they continued to base their arguments on the premise of events that hypothetically "might" happen without a single fact that, even if interpreted in their favor, can reasonably be inferred to support their claim. Plainly, Plaintiffs have  failed to aver specific facts that "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement", *O'Shea,* 414 U.S. at 494, or that the alleged "injury is certainly impending", *Babbit,* 442 U.S. at 298.

Therefore, Plaintiffs did not overcome the standing threshold since: (1) they cannot meet the elements required to demonstrate an injury of self-censorship as they admittedly state that their intended speech does not fall within the challenged provisions reach nor can they argue it does (Docket No. 16 at 5), *California Pro-Life Council,* 328 F.3d at 1095 ; (2) they continue to base their alleged injuries on a subjective chill in substitution for a claim of specific present objective harm or a threat of specific future harm, *Laird,* 408 U.S. at 13-14; (3) they rely on an speculative, irrational and subjective fear of prosecution, *Mangual* , 317 F.3d at 57; *see also ACLU v. National Security Agency,* 493 F.3d 644, 662 (9th Cir. 2007) (refusing to grant standing to plaintiffs on First Amendment grounds because their fears were speculative); (4) they cannot

manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is certainly not impending, *Clapper,* 568 U.S. at 416; and (5) any ongoing injuries that they are allegedly suffering are not fairly traceable to the challenged provisions, *id*.

### 3. Plaintiffs misinterpret the holding of Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014), when applied to the instant case.

In their *Reply* brief, Plaintiffs cite *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (hereinafter, "SBA List"), to support their claim that "[i]n the context of facial pre-enforcement challenges [...] a plaintiff satisfies the injury-in-fact requirement where he alleges '[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder.'" Docket No. 16 at 4. Consequently, Plaintiffs conclude that they "easily satisfy all three prongs of this relaxed standard." Docket No. 16 at 4. While the quote is correct, the First Circuit has interpreted that *SBA List's* disjunctive framing of the pre-enforcement challenge test is the following: (1) an injury that is imminent if it is certainly impending or (2) if there is a substantial risk that harm will occur. *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017). Plaintiffs failed to make neither showing in the case at bar and it was their burden to do so. *See id*. Thus, context is required so that this Court can arrive at the apparent conclusion that *SBA List* confirms that Plaintiffs lack standing.

In *SBA List*, the Supreme Court recognized standing to an organization challenging an Ohio statute that proscribed "false statements" about a political candidate during a campaign. *SBA List*, 573 U.S. at 151-55. That statute had been on the books for several decades and there was a robust history of its enforcement—including proceedings involving the very same organization "in a recent election cycle." *SBA List*, 573 U.S. at 163-64. Additionally, in *SBA*

*List*, the condition precedent to criminal prosecution was an administrative hearing before the Ohio Elections Commission, a proceeding that <u>in itself</u> was burdensome enough to cause some harm. *See id*. at 163-64. Undeniably, it was "the combination of those two threats"— Commission proceedings and criminal prosecution—that the Court found sufficient to establish an injury in fact. *Id*. at 165-66. By contrast, here Plaintiffs rely on an imaginary and speculative possibility of prosecution even after admitting that they do not intend to engage in the proscribed conduct (Docket No. 5 at 21). That distinction makes the "chain of possibilities" leading to a future cognizable injury, *Clapper*, 568 U.S. at 1148, significantly more attenuated here than it was in *SBA List*.

Plaintiffs asserted that their intended speech is arguably affected with a constitutional interest. Docket No. 16 at 4. However, they  failed to allege well-founded facts in which they state that the challenged provisions, as of yet, have forced them or any other journalist to actually refrain from any expressive activities other than conclusory assertions of a subjective chill or a non-existent self-censoring that were previously discussed and disproved. To the contrary, several of the Plaintiffs' declarations acknowledge that they have been constantly reporting during several declared states of emergencies in which the challenged provisions have been in full force. For example, co-plaintiff Rodríguez-Cotto admits that she: (1) reported on the inadequacy of the responses by the U.S. government and the Puerto Rico government to the widespread devastation left by Hurricane Maria (Docket No. 4-1 ¶15); and (2) that she challenged then-Chief-of-Staff during an on air interview about the implausibility of the official death toll of Hurricane María; she was never threatened or feared to prosecuted pursuant to Section (a) of Article 6.14 of Act No. 20-2017, which was in full effect. Moreover, Defendants cannot stress enough that co-plaintiff Rodríguez-Cotto has never stopped publishing articles

adverse to the government regarding the current state of emergency due to the COVID-19 pandemic and has dozens of them published on her website.[3]

Similarly, co-plaintiff González-Cotto admitted that he "has published numerous other articles about the COVID-19 public health emergency and the government's response." Docket No. 4-3 at 16. In fact, he admits that: (1) "he published an article revealing that certain companies with close ties to Governor Vázquez's New Progressive Party received multimillion-dollar government contracts for rapid test kits to identify COVID-19 antibodies, even though the companies had little experience managing medical supplies" (Docket No. 4-3 at 16, referencing Docket No. 4-2 ¶7); and (2) he published another article reporting "that seven powerful businessmen were actively lobbying Governor Vázquez and two agency heads to lift many of the emergency restrictions and reopen businesses, despite the absence of reliable data about how reopening would affect the public health crisis" which was based "on information

---

[3] (1) On March 29, co-plantiff Rodríguez-Cotto published a story regarding an alleged corruption scheme in the Department of Health in connection with contracts issued during the COVID-19 pandemic; (2) on May 5, 2020, she published a story regarding a public hearing held by the Puerto Rico House of Representatives in connection with the purchase of COVID-19 rapid tests by the Department of Health; (3) on May 13, 2020, she published another story regarding the alleged corruption scheme in the Puerto Rico Department of Health; (4) on May 16, 2020, she published a journalistic article in which she denounced the alleged squandering of funds in the Department of Health during the COVID-19 pandemic; (5) on May 23, 2020, she published a story asserting that the Puerto Rico Electric Power Authority was providing erroneous information as to the cause of a blackout; and, (6) on May 26, 2020, she published a story in which the statistics provided by the Department of Health regarding the COVID-19 pandemic were questioned; among other articles. *See* **(1)** S. Rodríguez-Cotto, *Cabeza en Salud: El esquema de contrataciones en medio de la pandemia de COVID-19*, https://enblancoynegromedia.blogspot.com/2020/05/sou-mabel-comentario.html (published on March 29, 2020) (retrieved on June 3, 2020); **(2)** S. Rodríguez-Cotto, *'Sou' Mabel*, https://enblancoynegromedia.blogspot.com/2020/05/sou-mabel-comentario.html (published on May 5, 2020) (retrieved on June 3, 2020); **(3)** S. Rodríguez-Cotto, *Se valida el poder de Mabel Cabeza*, https://enblancoynegromedia.blogspot.com/2020/05/se-valida-el-poder-de-mabel-cabeza.html (published on May 13, 2020) (retrieved on June 3, 2020); **(4)** S. Rodríguez-Cotto, *Los chupasangre de Salud*, http://enblancoynegromedia.blogspot.com/2020/05/los-chupasangres-en-salud.html (published May 16, 2020) (retrieved on June 3, 2020); **(5)** S. Rodríguez-Cotto, *Caso AEE: A oscuras por un engreído*, http://enblancoynegromedia.blogspot.com/2020/05/caso-aee-oscuras-por-un-engreido.html (published on May 23, 2020) (retrieved on June 3, 2020); and, **(6)** S. Rodríguez-Cotto, *Municipios con más peligro por COVID-19*, https://enblancoynegromedia.blogspot.com/2020/05/municipios-con-mas-peligro-por-covid-19.html (published on May 26, 2020) (retrieved on June 3, 2020).

and documentary evidence provided to Mr. González-Cotto by an anonymous source" (Docket No. 4-3 at 16 referencing Docket No. 4-2 ¶9).

Manifestly, Plaintiffs cannot allege that they have ever actually been forced to refrain from publishing articles that they would like, nor can they allege a realistic harm, or any other present harm. Also, Plaintiffs cannot allege that their intended speech has been remotely affected by the challenged provisions as they have not only published dozens of articles adverse to the government during declared states of emergencies without an actual or perceived repercussion but continue to do so in the midst of the instant case. However, the plaintiffs do allege that they fear prosecution under the challenged provisions if they inadvertently report inaccuracies or engage on critical reporting on the government. Docket No. 16 at 6. But a Plaintiff's conjectural fear that a government actor "might in the future take some other and additional action detrimental to" them does not suffice to create standing. *Clapper*, 568 U.S. at 416; *Laird* , 408 U.S. at 11. Speculation of that sort amounts to "a subjective chill"—which, in the Article III standing context, is "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id*. Thus, Plaintiffs do not meet the *SBA List* disjunctive framing of the pre-enforcement challenge test and unfortunately continue their attempt to manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending. *Clapper*, 568 U.S. at 416; *see also Reddy*, 845 F.3d at 500 (holding that an allegation of future injury may suffice to meet the imminent injury-in-fact requirement for Article III standing if the threatened injury is certainly impending, or if there is a substantial risk that the harm will occur; **but if a future injury is too speculative for Article III purposes and no prosecution is even close to impending, then there is no standing to sue**).

4. **The prosecution of an individual not before this Court for unrelatable actions does not suffice to confer standing to Plaintiffs.**

Plaintiffs attempted to support their fears of a hypothetical future harm with the prosecution of an individual—a pastor—pursuant to Section (a) of Article 6.14 of Act No. 20-2017, for causing a public chaos in the midst of a fatal pandemic. Specifically, Plaintiffs asserted that "if the Government is willing to prosecute a pastor under the [c]hallenged [p]rovisions, there is no reason to believe it would never prosecute a journalist." Docket No. 16 at 7. However, Plaintiffs once again attempt to persuade this Court with assumptions that are unsupported by Supreme Court precedent.

In *Younger v. Harris*, 401 U.S. 37 (1971), a plaintiff filed a pre-enforcement suit challenging constitutionality of California's Criminal Syndicalism Act on First and Fourteenth Amendment grounds for vagueness and overbreadth because he had had been indicted for distributing leaflets. When plaintiff challenged the constitutionality of the law in federal court, several other plaintiffs intervened, arguing that their own speech was inhibited by Harris' prosecution. However, the Supreme Court refused to recognize standing reasoning that the allegations by persons against whom no prosecution was threatened under the challenged statute but who joined as plaintiffs in injunction suit in federal district court that they felt "inhibited" by indictment of another person was insufficient, **as to such nonthreatened persons to bring equitable jurisdiction of federal courts into play and such allegation did not make such nonthreatened persons proper parties plaintiff**. *See Younger*, 401 U.S. at 41-42.

In the instant case, Plaintiffs attempt to obtain standing by essentially alleging that they are inhibited by the indictment of another individual that is not before this Court. The result of that allegation by Plaintiffs will be the same as in *Younger*: insufficient to obtain Article III

standing. First, like in *Younger*, Plaintiffs cannot claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible. That is, because the individual that Plaintiffs alluded was indicted because he disseminated a false alarm through WhatsApp stating that there would be a food shortage which prompted thousands of citizens to cram supermarket in the midst of a pandemic. That is far from similar to Plaintiffs' conduct which is to report and publish journalistic articles based on corroborated information. In fact, Plaintiffs have admitted that they "certainly do not intend to transmit *false* statements" (Docket No. 16 at 5), so there is simply no possibility that the prosecution of the referenced individual has produced any realistic fear on them. Thus, the mere allegation by Plaintiffs of an inhibition created by the indictment of a third-party pursuant the challenged provisions individual is insufficient for them to manufacture standing. *See Younger*, 401 U.S. at 41-42.

Second, the cases in which the Supreme Court has heavily weighted the prosecution of a third-party have been those that directly relate to the conduct in which Plaintiffs plan to engage. For example, in *Steffel* the Supreme Court recognized the plaintiff's realistic fear of prosecution as a result of the arrest of his handbilling companion , 415 U.S. at 458; in *SBA List*, the Supreme Court heavily weighted that a plaintiff "[had] ] been the subject of Commission proceedings in the past", 573 U.S. at 166-67 ; and, in *Mangual*, the First Circuit heavily weighted that a journalist was prosecuted under the challenged statute for engaging in the same conduct that the plaintiff stated he would continue to perform, 317 F.3d at 60. Here, Plaintiffs did not even try to reasonably relate the indicted individual's conduct to theirs and relied on the hypothetical that "if the Government is willing to prosecute a pastor under the Challenged Provisions, there is no reason to believe it would never prosecute a journalist". Docket No. 16

at 7. However, Plaintiff's conjectural fear that a government actor "might in the future take some other and additional action detrimental to" them does not suffice to create standing. *Clapper*, 568 U.S. at 416; *Laird* , 408 U.S. at 11. Thus, Plaintiffs attempt to pass the standing barrier resting on an unrelated third-party prosecution is not consistent with *Younger* and must be disregarded by this Court.

**B. Plaintiffs failed to effectively establish their likelihood of success on the merits.**

    **1.  Plaintiffs apply an inapposite standard to the challenged provisions in order to assert that actual malice is required.**

Plaintiffs allege that the challenged provisions lack an actual malice requirement that make them unconstitutional. Docket No. 16 at 8-11. Precisely, Plaintiffs assert that "[a]n actual malice requirement is necessary to ensure adequate breathing space for free expression even when the law at issue is addressed to defamation, which has traditionally been recognized as one of the few, narrowly-defined exceptions to the First Amendment's broad protection for speech of all kinds" (Docket No. 16 at 9) and cite *United States v. Alvarez*, 567 U.S. 709, 717, 719 (2012), to support their conclusion. However, this Court can confirm that **nowhere** in *Alvarez* the Supreme Court stated or remotely suggested that an element of actual malice was required for criminal statutes that proscribed conduct that is not related to defamation or libel.

Moreover, Plaintiffs conclusively assert that "[i]f an actual malice requirement is essential for criminal defamation laws, despite the limited First Amendment protection for defamation, the requirement must also be essential to criminal restrictions on fully protected speech about matters of public concern." Docket No. 16 at 3. Yet, that conclusion constitutes an assumption by Plaintiffs which finds no support on federal case-law from any District or Circuit, much less from the Supreme Court. The reality is that Plaintiffs failed to cite a single

precedent in which the element of actual malice was required to uphold the constitutionality of a law outside of a defamation or libel criminal statute. Plaintiffs skillfully attempted to belittle the fact that *Mangual* is a case about a criminal libel statute and continued to cite it in support of their own conclusions, even though the First Circuit never held such a thing. Plainly, Plaintiffs tried to persuade this Court by manufacturing a theory regarding an actual malice requirement in criminal statutes that have nothing to do with defamation or libel. Accordingly, Plaintiffs' creative but unsupported argument must be ignored by this Court for lacking any legal traction based in federal case law.

Additionally, Plaintiffs argue that "the Government has not demonstrated that the Challenged Provisions satisfy *Brandenburg's* incitement test" "[n]or could it, given that the provisions are plainly not limited to speech that is intended and likely to produce imminent lawless action." Docket No. 16 at 10. First, Plaintiffs err in their assertion because Defendants do not have to prove anything at this point and it is them who carry that burden. Second, assuming *arguendo* that the *Brandenburg v. Ohio*, 395 US 444 (1969), incitement test was applicable to the challenged provisions, they would pass muster. The challenged provisions essentially proscribe the dissemination of a false alarm that causes panic, hysteria or public unrest during an ongoing emergency. The extent of the provision can be exemplified with the failed prosecution of an individual under Section (a) of Article 6.14 of Act No. 20-2017, which was made **after** his false alarm **incited** and **produced** the lawless action of thousands of citizens violating a stay-at-home executive order wreaking havoc in supermarkets around the Island. Therefore, the provisions at issue would swiftly pass the *Brandenburg* test if it was applicable because they are directed to proscribe conduct that incite or produce an imminent lawless action and that is likely to incite or produce such action.

2.  **The challenged provisions are not an unconstitutional content-based restriction.**

Plaintiffs allege that "[e]ven if the Challenged Provisions included an actual malice requirement, they would still be facially unconstitutional because they impose content-based restrictions on speech about matters of public concern." Docket No. 16 at 11. Moreover, Plaintiffs contend that since the challenged provisions are content-based, they would not pass a strict scrutiny test. Docket No. 16 at 11. First, since the challenged provisions are not related to the criminal proscription of libel, slander or defamation any requirement of real malice is inapposite and lacks any legal support. Second, the challenged provisions are not an unconstitutional content-based criminal statute as Plaintiffs characterize them.

The Supreme Court's dictum in *United States v. Alvarez,* 567 U.S. 709 (2012) (plurality opinion), addressed the constitutionality of the Stolen Valor Act under the First Amendment and held that the statute was an invalid content-based regulation of speech. *Id.* at 715. However, in so concluding, the plurality opinion noted that statutes that prohibit false speech in order to "protect the integrity of Government processes" and "maintain the general good repute and dignity of government service itself," were permissible restrictions on free speech. *Id.* at 720 (internal quotation marks and ellipses omitted). Likewise, Justice Breyer's concurring opinion and Justice Alito's dissent also noted that those kinds of statutes were a constitutional restriction on free speech. *Id.* at 734 (Breyer, J. concurring); *id.* at 748 (Alito, J., dissenting). In that sense, this Court should accord "great weight" to the statements in *Alvarez*.

Because the challenged provisions criminalize conduct with an expressive element, as distinct from pure speech, the correct applicable standard is an intermediate scrutiny to determine the constitutionality of the statute. *See United States v. Perelman,* 695 F.3d 866, 871–72 (9th Cir.2012) (applying intermediate scrutiny to 18 U.S.C. § 704(a), which prohibited the

wearing of false military medals, an action this court also deemed to be expressive conduct). Under intermediate scrutiny, a government regulation "is sufficiently justified" if it "is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien,* 391 U.S. 367 (1968).

The government has the constitutional power to prohibit the dissemination of false representations, and that prohibition serves the substantial government interests of "protect[ing] the integrity of Government processes," and "maintaining the general good repute and dignity of … government … service itself." *Alvarez*, 567 U.S. at 721 (internal quotation marks and citations omitted). These interests are also unrelated to the suppression of free expression, because the challenged provisions do not prevent the expression of any particular message or viewpoint. Rather, the government's interests are concerned solely with the act of disseminating a false alarm itself, not the content of the false alarm.

As to the final prong of the *O'Brien* test, the Supreme Court has explained that "an incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien,* so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.,* 547 U.S. 47, 67 (2006)(internal quotation marks omitted). Here, the challenged provisions promote the goal of avoiding the worsening of a declared emergency state that could cost the destruction of property and the lives of citizens that lose control over a false alarm disseminated by unscrupulous  people. The Court cannot take lightly that the Government is responsible for protecting the lives, as well as the properties of its citizens and

when falseness travels fast, the truth will never be able to reach it on time. Accordingly, the challenged provisions survive the appropriate intermediate scrutiny.

Still, assuming, *arguendo*, that the challenged provisions were a content-based regulation of protected expression, it nevertheless would pass First Amendment review under settled law upon a showing that the regulation " 'is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.' " *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, (1991) (quoting *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987)). That is because the Government has a compelling interest to protect the health, lives and property of its citizens during declared states of emergencies from unscrupulous individuals that disseminate **false alarms** in order to create chaos. *See Burson v. Freeman*, 504 U.S. 191, 199 (holding that a State had a compelling interest in protecting the right of its citizens to vote freely by implementing a campaign-free zone). This compelling interest rests even more on the fact that false alarms are more likely to put vulnerable citizens like children, elderly or uneducated people that cannot discern falsehood from reality and the Government must protect their health and lives. It is important to clarify that Plaintiffs continuously repeat that the challenged provisions proscribe false speech to see if it sticks, but the reality is that it only proscribes false alarms in specific situations. In that sense, the challenged provisions are narrowly tailored because they only proscribe the dissemination of **false alarms in very specific circumstances and with very specific intents**, as was thoroughly explained in Defendants' *Response in Opposition to Motion for Preliminary Injunction* (Docket No. 13 at 16-23). Therefore, even under a strict scrutiny, the Court  would concede that these interests are compelling and are promoted by the challenged provisions.

**C. Plaintiffs were unable to demonstrate an irreparable harm.**

Plaintiffs have been unable to establish standing and even less that they are likely to succeed in the merits. Instead, Plaintiffs rehashed the arguments stated in their *Memorandum in Support of Preliminary Injunction* (Docket No. 4-3) regarding an alleged irreparable harm consisting of a chilling effect of their "own reporting and by making their sources less likely to share information with them." Docket No. 16 at 18. Also, Plaintiffs continue to rely on *Mangual*, a case that Defendants have distinguished *ad nauseum*, to support an alleged self-chill despite the dozens of articles that they have published during the pandemic. Yet, Plaintiffs must do more than merely allege a "subjective 'chill.' " *Laird*, 408 U.S. at 13–14. If all it took to summon the jurisdiction of the federal courts and establish an injury were a bare assertion that, as a result of government action, one is discouraged from speaking, there would be little left of the Article III threshold in First Amendment cases. In that sense, it is manifest that Plaintiffs are inflicting harm on themselves based on their fears of hypothetical future that is not certainly impending. *Clapper*, 568 U.S. at 416. That is, because it is not reasonable to believe that Plaintiffs are chilled from reporting information adverse to the government when they have published dozens of articles during the pandemic doing exactly that. Thus, a preliminary injunction is unwarranted since Plaintiffs clearly have not suffered an irreparable harm that requires the issuing of such an extraordinary remedy.

Also, Plaintiffs continue to rely on the unrelated prosecution of a third-party not before this Court to support their alleged injury and 'chill'. However, as we already explained, that theory falls flat in light of *Younger* which deemed insufficient the allegations of plaintiffs stating that they feel "inhibited" by the indictment of another person. *Younger*, 401 U.S. at 41-42.

Therefore, Plaintiffs cannot be injured by the by the indictment of another person absent a realistic threat of prosecution, which in this case is inexistent.

**D. The Bond requirement under Rule 65(c) of Civil Procedure cannot be waived.**

Federal Rule of Civil Procedure 65(c) states that "[n]o restraining order or preliminary injunction **shall** issue **except** upon the giving of security by the applicant, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Although "the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary." *See Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,*847 F.2d 100, 103 (3d Cir.1988) ("While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.") In other words, Rule 65(c) "mandates that a court when issuing an injunction must require the successful applicant to post adequate security." *Id.* Defendants contend that Rule 65(c) **requires** that a bond be posted before the issuing of a preliminary injunction and the only discretion left to the Court is the amount of the same. Therefore, Defendants reiterate that due to the adverse impact that an issuance of a preliminary injunction could have on public security a bond of no less than $10,000 is required to be posted by Plaintiffs.

### III. CONCLUSION

Plaintiffs continued to rely on hypothetical and speculative fears and subjective chill  in their attempt to manufacture standing. Plaintiffs once again failed to establish a **realistic danger of sustaining a direct injury because of the challenged statute's operation or enforcement**. *Clapper*, 568 U.S. at 416. That is, because "[a] plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III for either type of injury."

*See Mangual*, 317 F.3d at 57. Further, the mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13-14. It is apparent from the arguments raised in this motion that Plaintiffs have attempted to manufacture standing by inflicting harm on themselves based on hypothetical fears and by alleging a subjective chill. Thus, a ruling in favor of granting a preliminary injunction would be based exclusively on Plaintiffs' imagination, **resulting in an advisory opinion**. Moreover, Plaintiffs were not able to save their request for preliminary injunction as they failed to comply with all four prongs for a preliminary injunction. Defendants adopt by reference the arguments made in their Response (Docket No. 13), as if fully set forth herein. In short, it is forceful to conclude that Plaintiffs request for a preliminary injunction must be **deny** for lack of standing and for not meeting the necessary requirements for the issuance of said extraordinary remedy.

       **WHEREFORE**, the Defendants pray that this Honorable Court take notice of the present motion and consequently **DENY** Plaintiffs' request for preliminary injunction.

       **I HEREBY CERTIFY** that the undersigned attorney electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to the parties subscribing to the CM/ECF System.

       **RESPECTFULLY SUBMITTED.**

       In San Juan, Puerto Rico, this 15th day of June 2020.

*[Space intentionally left in blank]*

**DENNISE N. LONGO-QUIÑONES**
Designated Secretary of Justice

**WANDYMAR BURGOS-VARGAS**
Deputy Secretary in Charge of Litigation

**SUSANA I. PEÑAGARÍCANO-BROWN**
Director of Legal Affairs
Federal Litigation and Bankruptcy Division

*/s/ Juan C. Ramírez-Ortiz*
**JUAN C. RAMÍREZ-ORTIZ**
USDC-PR No. 306507
Department of Justice of Puerto Rico
Federal Litigation Division
PO Box 9020192
San Juan, PR 00902-0192
Tel. (787)721-2900, ext. 1421
juramirez@justicia.pr.gov

*/s/Joel Torres Ortiz*
**JOEL TORRES ORTIZ**
USDC-PR No. 302311
Department of Justice of Puerto Rico
Federal Litigation Division
PO Box 9020192
San Juan, PR 00902-0192
Tel. (787) 721-2900, ext. 1421 & 1412
joeltorres@justicia.pr.gov