# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SANDRA RODRÍGUEZ COTTO; RAFELLI GONZÁLEZ COTTO,<br><br>*Plaintiffs*,<br><br>v.<br><br>WANDA VÁZQUEZ GARCED, Governor of Puerto Rico; INÉS DEL C. CARRAU-MARTÍNEZ, Interim Secretary of Department of Justice of Puerto Rico; PEDRO JANER, Secretary of Puerto Rico Department of Public Safety; HENRY ESCALERA, Puerto Rico Police Commissioner, all in their official capacities,<br><br>*Defendants*. | Civil Action No.: 3:20-01235-PAD |

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. On May 20, 2020, Plaintiffs Sandra D. Rodríguez Cotto and Rafelli González Cotto brought this lawsuit challenging two provisions of the Puerto Rico Department of Public Safety Act, 25 L.P.R.A. § 3501 *et seq.*, both of which made it a crime to share false information about emergencies in Puerto Rico, including the current public health emergency caused by COVID-19. Plaintiffs alleged that the challenged provisions—Sections 6.14(a) and (f)—violated their First and Fourteenth Amendment rights. They also filed a motion for preliminary injunction against both challenged provisions.

2. After Plaintiffs' motion for preliminary injunction was fully briefed, the Government of Puerto Rico enacted Act No. 66-2020. Act No. 66-2020 substantially amended Section 6.14(a) and eliminated Section 6.14(f).

1

3.      As amended, Section 6.14(a) makes it a crime—and, in some cases, a felony punishable by a fixed term of three years' imprisonment—for anyone to (1) give "a warning or false alarm, knowing that the information is false, in relation to the imminent occurrence of a catastrophe in Puerto Rico," or (2) "disseminate . . . a notice or a false alarm, knowing that the information is false, when as a result of their conduct it puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers public or private property."

4.      Plaintiffs are investigative journalists. Their reporting currently focuses on the COVID-19 public health emergency.

5.      Although Plaintiffs would never knowingly transmit false information, there is a significant risk that the government could wrongly accuse them of transmitting false information about emergency conditions in Puerto Rico. Plaintiffs therefore face a credible threat of prosecution under Section 6.14(a). The threat of prosecution under Section 6.14(a) chills Plaintiffs' reporting on public emergencies in Puerto Rico, including the COVID-19 public health crisis, and interferes with their access to sources.

6.      Plaintiffs bring claims for declaratory and injunctive relief under 42 U.S.C. § 1983 against Defendants Governor Wanda Vázquez Garced, Interim Secretary of Justice Inés del C. Carrau-Martínez, Secretary of Public Security Pedro Janer, and Police Commissioner Henry Escalera, in their official capacities. Plaintiffs seek a ruling declaring that Section 6.14(a) violates the First and Fourteenth Amendments to the Constitution, both on its face and as applied to Plaintiffs, and enjoining Defendants from enforcing Section 6.14(a). Plaintiffs further allege as follows:

**PARTIES**

7. Plaintiff Sandra D. Rodríguez Cotto is an independent journalist with over 30 years of experience in print, television, magazine, radio and digital media in Puerto Rico, the United States and several Latin American countries. She hosts the syndicated radio program "En Blanco y Negro con Sandra," which airs daily, Monday to Friday, at 1 PM on at least 11 broadcast and online radio stations throughout Puerto Rico. Since 2010, she has published a blog by the same name, where she features her own news stories, in-depth reporting, and analysis of the media and politics. In 2019, she received the Bolívar Pagán National Literature and Journalism Award from the Institute of Puerto Rican Literature.

8. Ms. Rodríguez Cotto's coverage of the use of misogynistic language and descriptions of violence against women in a Telegram chat between Governor Ricardo Rosselló and his aides sparked island-wide protests that led to Governor Rosselló's resignation in August 2019. Her reporting has been picked up by media outlets across the world, including *The New York Times*, *The Guardian*, *Vice*, *MTV*, *Christian Science Monitor*, and many others.

9. Ms. Rodríguez Cotto is a resident of Guaynabo, Puerto Rico.

10. Plaintiff Rafelli González Cotto is an independent journalist with over 10 years of experience in print, magazines, radio, TV and digital media in Puerto Rico. He is also a lawyer and notary public. He has worked with several newspapers on the island, including *El Nuevo Día*, *Caribbean Business* and *CB en Español*, where he was the Digital Editor. Subsequently, he was appointed as the Digital Executive Editor at Latin Media House, a publishing house, where he directed the electronic platforms of six publications, two newspapers and four magazines, for approximately three years.

11. In 2017, while serving as the Digital Editor for *Caribbean Business* and *CB en Español*, Mr. González Cotto participated in the publication of several digital stories about the Whitefish Energy scandal. Those stories revealed that the Puerto Rico Electric Power Authority ("PREPA") awarded a $300 million contract to rebuild Puerto Rico's electric grid to a small private company with limited experience and only two registered employees, instead of requesting cooperation through the mutual assistance program of the American Public Power Association. Notably, the contract also prohibited the government from auditing the "cost and profit elements" of the contractor's labor rates. The story generated significant controversy in Puerto Rico and the United States. PREPA subsequently canceled the contract at the request of then-Governor Ricardo Rosselló.

12. Mr. González Cotto is a resident of Bayamón, Puerto Rico.

13. Defendant Wanda Vázquez Garced is the Governor of Puerto Rico. As Puerto Rico's chief executive officer, she is charged with executing the laws of Puerto Rico. P.R. Const., Art. IV, § 4. She is sued in her official capacity.

14. Defendant Inés del C. Carrau-Martínez is the Interim Secretary of Justice for Puerto Rico. As the head of the Department of Justice and the chief law enforcement officer for Puerto Rico, she is charged with enforcing Puerto Rico's civil and criminal laws. 3 L.P.R.A. § 292. Interim Secretary Carrau-Martínez is sued in her official capacity.

15. Defendant Pedro Janer is the Secretary of Public Security. He is charged with overseeing the Department of Public Security and its constituent bureaus. 25 L.P.R.A. § 3505. He is also charged with establishing and implementing public policy with regard to all matters of security, emergency, disasters, and criminal investigation. *Id.* He is sued in his official capacity.

16. Defendant Henry Escalera is the Commissioner of the Puerto Rico Police Bureau. He is charged with overseeing the Puerto Rico Police Bureau. 25 L.P.R.A. § 3534. He is sued in his official capacity.

## JURISDICTION AND VENUE

17. This action arises under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

18. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

19. Venue in the District of Puerto Rico is based on 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

**Plaintiffs' Lawsuit Against Section 6.14 of the Puerto Rico Department of Public Safety Act**

20. Plaintiffs initially brought this lawsuit against two provisions contained in Section 6.14 of the Puerto Rico Department of Public Safety Act, Act No. 20-2017, codified at 25 L.P.R.A. § 3501 *et seq*. Section 6.14 is codified at 25 L.P.R.A. § 3654.

21. Section 6.14(a), which was initially enacted as part of Act 20-2017, previously made it a crime to "[r]ais[e] a false alarm with respect to the imminent occurrence of a catastrophe in Puerto Rico, or [spread] rumors or rais[e] a false alarm regarding nonexisting abnormalities" during a declared emergency.

22. Section 6.14(f), which was added to the statute on April 6, 2020, as part of Act 35-2020, made it a crime to "[t]ransmit or allow [another person] to transmit, by any means, through any social network or mass media, false information with the intention of creating confusion, panic or collective public hysteria, regarding any proclamation or executive order decreeing a state of emergency or disaster or curfew."

23. Neither Section 6.14(a) nor Section 6.14(f) included a provision exempting journalists.

24. On or about March 23, 2020, the Government of Puerto Rico initiated a prosecution against Pastor José Luis Rivera Santiago under Section 6.14(a) for allegedly disseminating false information on the messaging platform WhatsApp about a rumored executive order to close all businesses in response to the COVID-19 pandemic. The government alleged that Pastor Rivera Santiago's speech resulted in a rush on the supermarkets. In fact, however, Governor Vázquez did eventually announce an executive order closing almost all businesses in Puerto Rico over Easter weekend, which itself caused a run on the grocery stores. On or about May 7, the Court of San Juan concluded that the government had failed to establish probable cause to prosecute Pastor Rivera Santiago under Section 6.14(a).

25. Pastor Rivera Santiago's prosecution under Section 6.14(a) and the enactment of Section 6.14(f) alerted many members of the press and public, including Plaintiffs, about the danger of being prosecuted for speech about emergency conditions in Puerto Rico.

26. On May 20, 2020, Plaintiffs filed this lawsuit challenging the constitutionality of Sections 6.14(a) and (f). Plaintiffs also filed a motion for preliminary injunction.

27. On June 23, 2020, after briefing was complete on Plaintiffs' preliminary injunction motion, the U.S. District Court for the District of Puerto Rico held a status conference on the case. Defendants' representations during and after the status conference demonstrate that Plaintiffs' fear of prosecution under the challenged provisions was far from illusory.

28. The minutes of the June 23 status conference, Dkt. No. 28, are fully incorporated herein by reference. The minutes reflect that Defendants asked the Court to stay consideration of Plaintiffs' preliminary injunction motion pending the imminent enactment of Senate Bill 1582.

The parties discussed "[t]he possibility of entering into a stipulation whereby defendants would agree that no adverse action will be taken against plaintiffs or any other journalist under the challenged law, until Bill 1582 is signed into law." Defendants demurred, claiming that such stipulations were unnecessary. Defendants further argued that, if the Court were to order them to consider proposed stipulations of non-prosecution against Plaintiffs or other journalists, Defendants would need at least 4 working days to consider the proposal. "The court stated it will not issue any order as to this matter. However, it noted that based on counsels' repeated representations, it is confident that defendants will not initiate any adverse action or prosecution against plaintiffs under the challenged law pending approval and signature of Bill 1582."

29. On June 24, Defendants filed a motion to amend and/or clarify the minutes of the status conference. Defendants' motion to amend and/or clarify the minutes of the status conference, Dkt. No. 31, is fully incorporated herein by reference. In their motion to amend the minutes, Defendants objected to the record of their representation that "[t]he government will not prosecute any journalist under the challenged law." Defendants argued that "this statement leads to confusion and should be clarified to reflect the argument made during the Status Hearing." Defendants stated that although "journalists would not and could not be prosecuted for publishing journalistic articles adverse to the Government of Puerto Rico because that conduct is not proscribed by the challenged provisions nor [is it] within its reach," they would need at least 4 working days to discuss whether "any compromise from the Department of Justice of not prosecuting a group of citizens (journalists) or Plaintiffs under the challenged provisions" could be accepted. Defendants asked the Court to amend the minutes to clarify that Defendants "did not intend to make any representation that the Department of Justice would not prosecute a citizen that commits the proscribed conduct in the challenged provisions."

7

30.     Later that day, the Court issued a text order denying Defendants' motion to amend the minutes. Dkt. No. 32. The text order stated "The Minutes of Proceedings accurately describe the arguments and representations the parties made during the Status Conference. Consequently, there is no need to amend or clarify the Minutes. Nevertheless, the court notes the narrowing construction of the defendants' original representations, and takes it as defendants' official position as of today on this matter."

### Act No. 66-2020 Amends Section 6.14

31.     On July 13, 2020, Governor Vázquez Garced signed Senate Bill 1582 into law as Act No. 66-2020.

32.     The Statement of Motives for Act No. 66-2020 summarizes and reaffirms the concerns that led the Government of Puerto Rico to enact Sections 6.14(a) and (f). It states that it is "important that the people are warned of both the powers of public security agencies and prohibited conduct, once an emergency or disaster is duly declared by Executive Order." And it reiterates "the need to prohibit people from using social media or **mass media** to disseminate false information with the intention of creating confusion, panic or collective public hysteria in our country while a state of emergency, disaster or curfew is in force," because "[s]uch conduct undermines the safety of the people and the social order, and endangers the health and lives of citizens." (Emphasis added.) With these principles in mind, Act No. 66-2020 seeks "to clarify [the] scope [of Section 6.14] and [its] implementation, as well as to harmonize its provisions."

33.     Act No. 66-2020 accordingly amends Section 6.14(a) to provide as follows:

> Any person, natural or legal, who shall perform any of the following acts on purpose, knowingly or recklessly after the Governor of Puerto Rico has decreed by Executive Order an emergency or disaster, shall be punished with a penalty of imprisonment not exceeding six (6) months or a fine not exceeding five thousand dollars ($5,000) or both sentences at the discretion of the court:

> (a) Gives a warning or false alarm, knowing that the information is false, in relation to the imminent occurrence of a catastrophe in Puerto Rico, or disseminates, publishes, transmits, transfers or circulates through any means of communication, including the media, social networks, or any other means of dissemination, publication or distribution of information, a notice or a false alarm, knowing that the information is false, when as a result of its conduct it puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers public or private property.
>
> In the event that the notice or false alarm results in damage to the public purse, to third parties, or public or private property exceeding ten thousand dollars ($10,000), or where the conduct results in injury or physical harm of another, that person shall have committed a felony with a penalty of imprisonment for a fixed term of three (3)years.

34. Act No. 66-2020 eliminates Section 6.14(f).

35. Act No. 66-2020 does not include any exemption for journalists.

**Plaintiffs' Continuing Fear of Prosecution Under Section 6.14(a)**

36. Plaintiffs continue to engage in investigative reporting on matters of public concern in Puerto Rico, including public emergencies. In particular, Plaintiffs are actively reporting on the COVID-19 public health emergency in Puerto Rico.

37. Plaintiffs make every effort to confirm the accuracy of their reporting, in accordance with standard journalistic practices. But news stories about public emergencies, such as the COVID-19 pandemic, are often complex, contentious, and murky. Plaintiffs recognize that inadvertent inaccuracies are inevitable even in the most thoroughly vetted reporting. Plaintiffs are afraid that the government could prosecute them under Section 6.14(a) by alleging that an inadvertent inaccuracy in their reporting was intentional.

38. Plaintiffs are also concerned that they could be prosecuted under Section 6.14(a) for speech that the government deems to be false, especially speech that casts the government in a bad light, even if the speech is not demonstrably false. In other words, Plaintiffs are afraid that they could be prosecuted under Section 6.14(a) for true speech.

39. Because violations of Section 6.14(a) can be charged as misdemeanors, police departments are authorized to initiate prosecutions under the law on their own initiative, without the participation of the Department of Justice.

40. In many cases, the only way for a journalist to successfully defend a prosecution under Section 6.14(a) would be to reveal the sources on which their reporting was based. Sources who do not want their identities to be revealed, either because they fear prosecution themselves or because they fear negative professional repercussions, will be chilled from speaking with journalists. Section 6.14(a) will therefore significantly obstruct Plaintiffs' access to sources.

41. Plaintiffs' fear of prosecution under Section 6.14(a) is further informed by their extensive experience reporting on the government, as well the government's refusal to disavow prosecutions against them under the previous version of Section 6.14.

42. In 1999, while Ms. Rodríguez Cotto was president of the Overseas Press Club, the Club went to court to defend Obed Betancourt and the newspaper *El Vocero* against a criminal defamation prosecution for articles Mr. Betancourt published describing police corruption. At the probable cause hearing, the government did not attempt to demonstrate that the defendants knew the articles to be false, or even that the articles contained any false information. The court dismissed the prosecution for lack of probable cause.

43. The Overseas Press Club then sought to intervene in a separate lawsuit challenging Puerto Rico's criminal defamation law. Although the Club's motion to intervene was denied, the U.S. Court of Appeals for the First Circuit ultimately struck down the law on the ground that it violated the First Amendment. *Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003).

44. Ms. Rodríguez Cotto's experience with the prosecutions under the now-defunct criminal defamation law demonstrated to her the danger of allowing the government to prosecute speech on matters of public concern that the government deems to be false.

45. In 2017, Ms. Rodríguez Cotto reported on the inadequacy of the responses by the U.S. and Puerto Rico governments to the widespread devastation left by Hurricane Maria. Local officials, including then-Governor Ricardo Rosselló, repeatedly failed to provide credible information about the scale of the impact of the hurricane, claiming for months that the death toll was a few dozen, when in reality it was more than a thousand.

46. During an on-air interview, Ms. Rodríguez Cotto challenged then-Chief of Staff Ramón Rosario about the implausibility of the official death toll, and he responded by accusing her of exaggerating. Immediately following that interview, Ms. Rodríguez Cotto received thousands of messages via social media, many of them racist and misogynistic. Shortly thereafter, Ms. Rodríguez Cotto's house was broken into under suspicious circumstances, though nothing of value was taken. The online bullying of Ms. Rodríguez Cotto continued for months afterward. Ultimately, however, the Puerto Rican government acknowledged that the official death toll of 64 was inaccurate, and that the revised death toll was 1,427.

47. Mr. González Cotto recently identified a similar problem with the government's case fatality measurement for the COVID-19 public health emergency. In a news article published in *NotiCel*, Mr. González Cotto revealed that the case fatality rate published by the Health Department was not calculated in accordance with generally accepted practices, resulting in a significant underestimation of the fatality rate. Half an hour after the article was published, the Health Department removed the information from its website.

48. Mr. González Cotto has published numerous other articles about the COVID-19 public health emergency and the government's response. For instance, he published an article revealing that certain companies with close ties to Governor Vázquez's New Progressive Party received multimillion-dollar government contracts for rapid test kits to identify COVID-19 antibodies, even though the companies had little experience managing medical supplies.

49. Another one of Mr. González Cotto's articles reported that seven powerful businessmen were actively lobbying Governor Vázquez and two agency heads to lift many of the emergency restrictions and reopen businesses, despite the absence of reliable data about how reopening would affect the public health crisis. That article was based on information and documentary evidence provided to Mr. González Cotto by an anonymous source.

50. Plaintiffs reasonably fear that their investigative reporting about the COVID-19 public health emergency, as well as future reporting on other emergencies, could expose them to criminal prosecution under Section 6.14(a). Although they continue to report on the COVID-19 public health emergency, the threat of prosecution under Section 6.14(a) will chill their reporting in numerous ways, including but not limited to self-censorship, delays in publication, and loss of access to sources.

51. Section 6.14(a)'s vagueness exacerbates its chilling effect. Plaintiffs are unable to determine what constitutes a "warning" or "false alarm" under Section 6.14(a). Plaintiffs are also unable to determine in advance whether the public response to their reporting might somehow "endanger[] public or private property" or cause "imminent risk" to one or more persons. Indeed, Plaintiffs cannot ascertain how the government proposes to determine whether such risk actually exists. As a result, Plaintiffs must assume that they can be prosecuted under Section 6.14(a) for

any speech related to public health emergencies in Puerto Rico that the government deems to be knowingly false.

## CAUSES OF ACTION

### Count I – 42 U.S.C. § 1983 (First Amendment)

52. All prior paragraphs are incorporated as if fully set forth herein.

53. The First Amendment prohibits abridgement of the freedoms of speech and of the press.

54. The First Amendment is applied to the States and to the territory of Puerto Rico through the Fourteenth Amendment.

55. Section 6.14(a) violates the First Amendment, both on its face and as applied to Plaintiffs.

56. Section 6.14(a) criminalizes protected expression, including expression on matters of significant public concern.

57. Section 6.14(a) criminalizes speech on the basis of its content and viewpoint.

58. Section 6.14(a) cannot satisfy strict or even intermediate scrutiny, because it is not appropriately tailored to any overriding government interest.

59. Section 6.14(a) is substantially overbroad. The statute's overbreadth is exacerbated by its vagueness.

### Count II – 42 U.S.C. § 1983 (Fourteenth Amendment Due Process Clause)

60. All prior paragraphs are incorporated as if fully set forth herein.

61. The Due Process Clause of the Fourteenth Amendment prohibits laws that are unconstitutionally vague.

62. Section 6.14(a) is unconstitutionally vague, both on its face and as applied to Plaintiffs.

63. Section 6.14(a) fails to provide adequate notice about what speech is criminalized.

64. Without a well-defined standard of criminal responsibility, law enforcement officials and factfinders are given nearly unfettered discretion to apply their own standards. Section 6.14(a) is thus susceptible to arbitrary, uneven, and selective enforcement.

65. Plaintiffs are concerned that they would be targeted for discriminatory enforcement under Section 6.14(a) due to their critical reporting on the government.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Section 6.14(a) violates the First and Fourteenth Amendments to the United States Constitution, both on its face and as applied to Plaintiffs;

B. Permanently restrain and enjoin Defendants, including all of Defendants' subordinates and other persons in active concert or participation with Defendants, from enforcing Section 6.14(a), both on its face and as applied to Plaintiffs;

C. Preliminarily restrain and enjoin Defendants, including all of Defendants' subordinates and other persons in active concert or participation with Defendants, from enforcing Section 6.14(a), both on its face and as applied to Plaintiffs while this litigation remains pending;

D. Award Plaintiffs attorneys' fees in this action pursuant to 42 U.S.C. § 1988(b);

E. Award Plaintiffs their costs of suit;

F. Grant such other and further relief as this Court deems just and proper in the circumstances.

I HEREBY CERTIFY that the undersigned attorney electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to the parties subscribing to the CM/ECF System.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 29th day of July 2020.

*S/ Fermín L. Arraiza-Navas*
FERMÍN L. ARRAIZA NAVAS
USDC-PR No. 215705
William Ramírez-Hernández+
Executive Director
American Civil Liberties Union
of Puerto Rico
Union Plaza
416 Avenida Ponce de León, Suite 1105
San Juan, Puerto Rico 00918
(787) 753-9493
(646) 740-3865
farraiza@aclu.org
wramirez@aclu.org

Brian Hauss*
Emerson Sykes+
Arianna Demas+
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
bhauss@aclu.org

*Pro hac vice*
+ *Of counsel*

*Attorneys for Plaintiffs*