## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SANDRA RODRÍGUEZ-COTTO; RAFELLI GONZÁLEZ-COTTO** | **CIVIL No.** 20-01235 (PAD) |
| *Plaintiffs,* | **RE:** Preliminary and Permanent Injunction |
| v. | |
| **WANDA VÁZQUEZ-GARCED**, Governor of Puerto Rico; **INÉS DEL CARMEN CARRAU-MARTÍNEZ**, Interim Secretary of Justice of Puerto Rico; **PEDRO JANER**, Secretary of the Department of Public Safety of Puerto Rico; **HENRY ESCALERA**, Commissioner of the Puerto Rico Police Bureau, all in their official capacities | |
| *Defendants.* | |

### RESPONSE IN OPPOSITION TO RENEWED MOTION FOR PRELIMINARY INJUNCTION

**TO THE HONORABLE COURT:**

**COME NOW**, co-defendants **Wanda Vázquez-Garced**, Governor of Puerto Rico; **Inés del Carmen Carrau-Martínez**, Interim Secretary of Justice of Puerto Rico; **Pedro Janer**, Secretary of the Department of Public Safety of Puerto Rico; and, **Henry Escalera**, Commissioner of the Puerto Rico Police Department, all in their official capacities, without waiving any right or defense arising from Title III of *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"), 48 U.S.C. §§2101 *et seq*., and the Commonwealth's Petition under said Title or under this case and without submitting to the Court's jurisdiction, and through the undersigned attorney, very respectfully **STATE** and **PRAY** as follows:

**I. INTRODUCTION**

On July 29, 2020, Sandra Rodríguez-Cotto and Rafelli González-Cotto ("Plaintiffs") filed an Amended Complaint (Docket No. 47); a *Renewed Motion for Preliminary Injunction* (Docket No. 48); and a *Memorandum of Law in Support of the Renewed Motion for Preliminary Injunction* (Docket No. 50) against Wanda Vázquez-Garced, Governor of Puerto Rico; Inés del Carmen Carrau-Martínez, Interim Secretary of Justice of Puerto Rico; Pedro Janer, Secretary of the Department of Public Safety; and Henry Escalera, Commissioner of the Puerto Rico Police Bureau. Essentially, Plaintiffs rehashed the arguments that they set forth in their *Memorandum of Law in Support of the Motion for Preliminary Injunction* (Docket No. 4-3) challenging the constitutionality of then-valid Sections (a) and (f) of Article 6.14 of the *Puerto Rico Department of Public Safety Act*, Act No. 20-2017, for alleged infringements to the First and Fourteenth Amendments of the Constitution of the United States. However, on July 13, 2020, the Commonwealth of Puerto Rico ("Commonwealth") enacted Act No. 66-2020, which substantially amended Section (a) of Article 6.14 to include new language and elements to the criminal statute and repealed Section (f).

Regardless of the substantial amendments that Act No. 66-2020 introduced to Section (a) of Article 6.14 of Act No. 20-2017, Plaintiffs insist that the same is unconstitutional as it allegedly continues to have a "chilling effect" on them and on their supposed mysterious sources. (Docket No. 18 at 30). Plaintiffs continue to base their claims on the "fear prosecution under Section 6.14 for their reporting on emergency conditions in Puerto Rico," (Docket No. 50 at 9), and contend that—even after the statute was substantially amended—they "still face a credible threat of prosecution under Section 6.14(a)," that "continues to chill their reporting on emergency conditions in Puerto Rico." (Docket No. 50 at 9). However, Defendants will establish

that, just as Plaintiffs did not have Article III standing under the prior challenged statute, they fail to have it under the newly amended Section (a). That is, Plaintiffs' subjective, speculative and irrational fear of prosecution is not enough to confer them standing to challenge Article 6.14 (a), as amended by Act No. 66-2020. *See Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) ("[a] plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III for either type of injury"). Further, Plaintiffs have not brought new case law to support their standing argument and continue to solely rely on cases that this Court has already stated that are either distinguishable or inapposite. (*See* Docket No. 33 at 2) ("the court read all cases that plaintiffs cited in support of the question of standing, and this review confirmed that 'mere subjective fears are not enough'. [...] But the stipulations in this case do not reflect similar factual settings"). Thus, since Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), this Court will be in position to swiftly deny the request for preliminary injunction and dismiss the case.

Similarly, Defendants will also address the Court's doubts regarding the alleged chill of Plaintiffs' mysterious sources. (*See* Docket No. 33 at 2) ("[i]f the sources (willing speakers, plaintiffs being willing listeners), have been frozen, that would be more than merely subjective fear"). This Court will be able to confirm that if Plaintiffs rely on the chill of mysterious sources to obtain third-party Article III standing to challenge a statutory provision on First Amendment grounds, they must reveal their identities. In fact, it is extremely revealing that Plaintiffs failed to discuss *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980), which is the controlling case in the First Circuit regarding the disclosure of journalistic sources. If this Court were to entertain Plaintiffs' theory regarding the alleged chill of their sources, after

discussing all the factors established by the First Circuit in *Bruno & Stillman, Inc.*, it will be in position to order Plaintiffs to disclose their mysterious sources. Moreover, if Plaintiffs insist on the secrecy of the alleged mysterious sources and refuse to discover their identities, those alleged-third party-sources must be disregarded as they cannot reasonably be conferred standing solely based on the supposed subjective fear of prosecution of individuals who are unknown to Defendants and the Court. *See June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2167 (2020) ("As a general rule, a plaintiff 'must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.') (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

In the event that the Court recognizes that Plaintiffs have standing—which is vehemently denied—they fail to satisfy each prong of the preliminary injunction standard since (i) they are unlikely to succeed on the merits of a facial challenge to Section (a) on First Amendment grounds; (ii) they will not suffer any irreparable harm if the preliminary injunction is denied since they admit that they have continued to publish news articles during the emergency despite of their alleged fear of prosecution and the supposed chilling effect the challenged provision have on them, as well as recognize that they do not intent to transmit false information which is one of the essential elements of the challenged provision; and (iii) the balance of equities, as well as the (iv) adverse effect that the issuing of a preliminary injunction would have on the public interest tip the scale in favor of denying a preliminary injunction requesting to enjoin government officers from enforcing a valid statute.

Therefore, based on the ensuing grounds discussed in the instant motion, as well as the arguments briefed in Defendants' *Response in Opposition to Motion for Preliminary Injunction* (Docket No. 13) and *Surreply to Reply Memorandum in Support of Plaintiffs' Motion for*

*Preliminary Injunction* (Docket No. 19), which are adopted by reference, it is requested that the Court **DENY** Plaintiffs' *Renewed Motion for Preliminary Injunction* (Docket No. 48) for **lack of standing**, as well as for failing to meet the necessary requirements for a preliminary injunction.

## II. THE INSTANT CONTROVERSY IS STILL NOT JUSTICIABLE BECAUSE PLAINTIFFS CONTINUE TO LACK STANDING TO CHALLENGE THE STATUTORY PROVISION OF ACT NO. 20-2017

**A. Plaintiffs' self-inflicted injury based on the unfounded fear of a hypothetical prosecution continues to be insufficient to satisfy the necessary elements of Article III standing.**

At threshold, in order to gain access to federal courts, a plaintiff has the burden of establishing that he or she has standing. *Clapper*, 568 U.S at 411–12; *Lujan*, 504 U.S. at 561. A federal court must satisfy itself as to its jurisdiction, which requires it to primarily evaluate if a plaintiff has Article III standing to sue, before addressing particular claims. *See Orr v. Orr,* 440 U.S. 268, 271 (1979); *Juidice v. Vail,* 430 U.S. 327, 331 (1977); *see also Warth v. Seldin,* 422 U.S. 490, 498 (1975) (explaining that standing is a threshold issue in every federal case). The standing inquiry is both plaintiff-specific and claim-specific and its requirement "is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Summers v. Earth Island Inst*., 555 U.S. 488, 492–93 (2009); *Warth v. Seldin*, 422 U.S. 490 (1975); *Pagán v. Calderón,* 448 F.3d 16, 26 (1st Cir. 2006). Only if a particular plaintiff has standing to pursue a particular claim will the court proceed to assess them. *See Pagán,* 448 F.3d at 26. Thus, a court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he or she asserts as the standing issue is tied to its jurisdiction. *Allen v. Wright,* 468 U.S. 737, 752 (1984); *Donahue v. City of Boston,* 304 F.3d 110, 116 (1st Cir. 2002).

In the present case, Plaintiffs request a preliminary injunction to enjoin Defendants from enforcing Section (a) of Article 6.14 of Act No. 20-2017, for allegedly violating the First and Fourteenth Amendments of the U.S. Constitution. Essentially, Plaintiffs claim that the challenged statutory provision is unconstitutional because it: (1) "criminalizes far more protected speech on matters of public concern than necessary to protect public safety" (Docket No. 50 at 29); and, (2) "impose a content-based restriction on speech about matters of public concern" (Docket No. 50 at 19). Plaintiffs assert that they "fear prosecution under Section 6.14 for their reporting on emergency conditions in Puerto Rico." (Docket No. 50 at 8-9). Also, Plaintiffs assert that they intent to "continue reporting on emergency conditions in Puerto Rico, including the COVID-19 public health crisis" and that they "face a credible threat of prosecution under Section 6.14(a), even though they have not yet been threatened with prosecution under the new law." (Docket No. 50 at 12 & 13). Finally, Plaintiffs allege that "Section 6.14(a), as amended by Act No. 66-2020, [...] continues to chill their reporting on emergency conditions in Puerto Rico". (Docket No. 50 at 9). Plaintiffs arguments are still simply not enough to establish Article III standing and invoke the jurisdiction of this Court.

To have Article III standing, Plaintiffs' alleged injury has to be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Lujan*, 504 U.S. at 560–61. Moreover, Plaintiffs' supposed injury cannot be "too speculative for Article III purposes", rather it must be "certainly impending to constitute injury in fact." *Lujan*, 504 U.S. at 565, n. 2. In that sense, "[a]llegations of possible future injury" are not sufficient. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). While the Supreme Court case-law sustains that plaintiffs do not have to actually undergo criminal prosecution in order to have standing under the First

Amendment to challenge to the statutory provisions of Act No. 20-2017, **they have to demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement**. *See Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).

Here, Plaintiffs failed to establish a realistic danger of sustaining a direct injury because of the statute's operation or enforcement. *Id.* Instead, they continue to rely on a hypothetical, speculative, remote, and baseless fear of prosecution that has not occurred and that cannot be reasonably inferred form the well-pleaded facts that has a real probability of occurring. In fact, Plaintiffs admit that they "have not been personally prosecuted or threatened with prosecution under Section 6.14(a)," (Docket No. 50 at 10), but state that "the threat of prosecution under the statute will chill both Plaintiffs and their sources." (Docket No. 50 at 27). However, "[a] subjective and irrational fear of prosecution is not enough to confer standing under Article III," *Mangual*, 317 F.3d at 57, and "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," *Laird v. Tatum*, 408 U.S. at 13-14 (1972). Simply put, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Further, Plaintiffs' cannot obtain standing through the alleged chill of their mysterious sources if they themselves do not have an injury-in-fact. *See Osediacz v. City of Cranston*, 414 F.3d 136, 141-42 (1st Cir. 2005) (holding that a plaintiff cannot suffer an injury in fact due to the risk of a policy's chilling effect on speech of others). Thus, Plaintiffs continue to fail in demonstrating that they have individual standing in the instant case.

On the other hand, Plaintiffs assert that the "self-censorship of their own reporting and the chilling effect on [their] sources" are sufficient injury to demonstrate that they have

standing. (Docket No. 50 at 18). However, that argument falls flat in light of the First Circuit's holding in *Osediacz v. City of Cranston*, 414 F.3d 136 (1st Cir. 2005). There, the First Circuit held that "self-censorship cannot exist if a party has no intention either of speaking or otherwise exposing [to the conduct proscribed by the statute]." In the case at bar, Plaintiffs fall within both of the categories that the First Circuit has recognized that self-censorship does not exist: (1) they have made it clear that they do not intend to transmit false statements in their journalistic or op-ed articles (Docket No. 23 at 5, ¶23); consequently do not intend to engage in the alleged proscribed speech; and, (2) since they will not knowingly transmit false information, are not exposing to the conduct that is proscribed by the statute. *See Osediacz*, 414 F.3d at 141. Therefore, Plaintiffs also fail to meet the requirement to establish standing on self-censorship grounds.

It is extremely revealing that Plaintiffs continue to base their subjective and irrational fear of prosecution on being "informed by the history of prosecutions against journalists under Puerto Rico's criminal defamation law." (Docket No. 50 at 8). Needless to say, Plaintiffs are not challenging a defamation law in the present case, so any history of those statute in Puerto Rico is irrelevant. Nevertheless, Defendants must reiterate that the "informed history" that Plaintiffs allude to is a supposed event that happened in 1999, when a journalist was prosecuted under a different statute for supposedly publishing information regarding police corruption. (Docket No. 47 at 10-11, ¶¶42-44). It is shocking that, since the filing of the original Complaint on May 20, 2020, Plaintiffs have not been able to develop their standing argument and continue to rely on an event that allegedly happened 21 years ago in order to support their unfounded and subjective fear of being prosecuted. In that sense, it is apparent that Plaintiffs' alleged injuries cannot be fairly traceable to Sections (a) of Article 6.14 of Act No. 20-2017—which was enacted

just over a month ago—and does not even resemble the defamation statute that was allegedly enforced 21 years ago. *See Clapper*, ju568 U.S. at 413 (holding that to satisfy Article III standing it is required that the injury be fairly traceable to the legal provision at issue and not be based on speculations). Thus, Plaintiffs continue to be unable to meet the Article III standing standard since they cannot establish a realistic and imminent danger of being prosecuted for publishing journalistic articles or blog entries regarding questionable government actions or that ate related to public emergencies in Puerto Rico.

Furthermore, it is extremely shocking that Plaintiffs allege that "the threat of prosecution under Section 6.14(a) chills [their] reporting on public emergencies in Puerto Rico, including the COVID-19 public health crisis, and interferes with their access to sources." (Docket No. 47 at 2, ¶5). That is, because as recent as July 29, 2020, co-plaintiff Rodríguez-Cotto published a blog article on her website, **based on information that was provided by sources**, regarding an alleged squandering of public funds by the Department of Health to acquire luxury vehicles to transport the Secretary of Health during the COVID-19 pandemic and the supposed use of government vehicles by an employee of said agency for political campaigning.[1] *See* **Exhibit 1**. Similarly, on July 26, 2020, co-plaintiff González-Cotto published an article on his website, in which he reports on whether molecular testing on tourists in Puerto Rico is a priority for the Government.[2] *See* **Exhibit 2**. This Court must ask: if Plaintiffs are chilled, how is it possible that they continue to publish articles regarding the COVID-19

---

[1] S. Rodríguez-Cotto, *El gasto es en Salud es I-L-I-M-I-T-A-D-O...* (July 29, 2020). Retrieved on August 14, 2020 from http://enblancoynegromedia.blogspot.com/2020/07/el-gasto-es-en-salud-es-i-l-i-m-i-t-d-o.html.

[2] R. González-Cotto, *Is COVID-19 molecular testing a priority in Puerto Rico?* (July 26, 2020), Retrieved on August 14, 2020 from https://periodiconuestro.com/2020/07/26/is-covid-19-molecular-testing-on-tourists-a-priority-in-puerto-rico/.

pandemic and alleged government mismanagement? If those mysterious sources are chilled, how come Plaintiffs are still obtaining information to publish articles? The answer to these questions is simple: there is no real chill or fear of prosecution by either Plaintiffs or the alleged sources. Indisputably, if Plaintiffs claims were true, the alleged chill derived from the enactment of Act No. 66-2020 would have prevented sources from providing information and the publishing of the mentioned articles. In that sense, the allegations set forth by Plaintiffs purely consist of a subjective chill and hypothetical situations in a blatant attempt to manufacture standing. *See Clapper*, 568 U.S. at 416. Even if the standing bar is lower for facial challenges on First Amendment grounds, Plaintiffs still must demonstrate that they satisfy constitutional minima essential to establish standing. *Osediacz*, 414 F.3d at 141. Plaintiffs plainly have not established even a minimum of the Article III standing requirements, which makes the instant case not justiciable and issuance of a preliminary injunction unattainable.

It is important to restate that Plaintiffs still have not plead a single fact in which any of the Defendants or any other public officer threatened to prosecute them or any journalist or that a prosecutorial process against them or a journalist has started pursuant to the challenged statutory provision. As this Court can confirm, Plaintiffs still rely on an unconnected event in which an individual (a pastor) was prosecuted under a now inexistent version of Section (a) of Article 6.14 of Act No. 20-2017, for "disseminating false information on the messaging platform WhatsApp about a rumored executive emergency order to close all businesses" that resulted "in a rush on the supermarkets." (*See* Docket No. 47 at 6, ¶24). However, **this event is dissimilar to Plaintiffs' claims since it did not involve the prosecution of a journalist for publishing articles adverse to the government and was made pursuant to a now defunct language of Section (a)**. Plaintiffs bear the burden of pleading and proving concrete

facts showing that the Defendants' actual action has caused the substantial risk of harm and cannot simply rely on speculations about the unfettered choices made by independent actors not before the court to establish Article III standing. *See Clapper*, 568 U.S. at 415; *see also Lujan*, 504 U.S. at 562 (holding that when the plaintiff is not himself the object of the government action or inaction he challenges, standing is "substantially more difficult" to establish.). None of the events alluded by Plaintiffs can be reasonably construed to create the credible threat of prosecution required to obtain standing. Thus, the preliminary injunction request by Plaintiffs must be denied because they failed to establish that they have Article III standing to continue the instant litigation. *See Osediacz*, 414 F.3d at 139 ("The party seeking to invoke the federal court's jurisdiction—normally, the plaintiff—bears the burden of pleading and proof on each step of the standing pavane").

**B. Plaintiffs failed to demonstrate that they have third-party standing in this case.**

It can be reasonably inferred from Plaintiffs' statements and from their reliance on the experience of other individuals—journalist prosecuted 21 years ago and an individual prosecuted pursuant a defunct version of Section (a)—that they are attempting to obtain third-party standing to assert the alleged rights of journalists, the public and unknown sources. Yet, it is firmly established that, generally, "a litigant 'must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Simply put, "one may not claim standing ... to vindicate the constitutional rights of [a] third party." *Barrows v. Jackson*, 346 U.S. 249, 255 (1953). The Supreme Court has embellished the constitutional requirements attendant to standing with an array of prudential monitions. *Osediacz*, 414 F.3d at 139. The prudential aspects of standing include "the general prohibition

on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U.S. 737, 751 (1984).

Exceptionally, the Supreme Court "has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Kowalski v. Tesmer*, 543 U.S. 125, 130, (2004); *see also* Richard H. Fallon, Jr., *As–Applied and Facial Challenges and Third Party Standing*, 113 Harv. L.Rev. 1321, 1359–64 (2000) (arguing that the Supreme Court's permissive approach to facial challenges in the First Amendment context has little to do with third-party standing but, rather, reflects a substantive concern that facially invalid statutes harm the plaintiff herself, regardless of whether a more narrowly drawn statute could regulate her conduct). However, third-party standing concerns will not pretermit a facial challenge to a statute on First Amendment grounds. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129 (1992). Moreover, a plaintiff cannot suffer an injury-in-fact due to risk of a statute's chilling effect on speech of others. *See Osediacz*, 414 F.3d at 139.

In *Younger v. Harris*, 401 U.S. 37 (1971), a plaintiff filed a pre-enforcement suit challenging constitutionality of California's Criminal Syndicalism Act on First and Fourteenth Amendment grounds for vagueness and overbreadth because he had had been indicted for distributing leaflets. When plaintiff challenged the constitutionality of the law in federal court, several other plaintiffs intervened, arguing that their own speech was inhibited by Harris' prosecution. However, the Supreme Court refused to recognize standing reasoning that the allegations by persons against whom no prosecution was threatened under the challenged

statute but who joined as plaintiffs in injunction suit in federal district court that they felt "inhibited" by indictment of another person was insufficient, as to such nonthreatened persons to bring equitable jurisdiction of federal courts into play and such allegation did not make such nonthreatened persons proper parties plaintiff. *See Younger*, 401 U.S. at 41-42.

In the case at bar, Plaintiffs attempt to obtain standing by essentially alleging that they are inhibited by the indictment of another individual (a pastor) base on a different, non-existent law that is not before this Court. However, they do not have third-party standing because they have not suffered a specific injury and cannot rely on the legal rights or interests of others to invoke the jurisdiction of this Court.

First, like in *Younger*, Plaintiffs cannot claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible. *See* Docket No. 50 at 11 ("Plaintiffs have not been personally prosecuted or threatened with prosecution under Section 6.14(a)"). That is, because the individual that Plaintiffs alluded was indicted **under a now defunct version of the challenged provision** for disseminating a false alarm through WhatsApp stating that there would be a food shortage, which prompted thousands of citizens to cram supermarket in the midst of a pandemic. That is far from similar to Plaintiffs' conduct which is to report and publish journalistic articles based on corroborated information. In fact, Plaintiffs have admitted that they "do not intend to transmit false statements" (Docket No. 23 at 5)—which is an element of the crime after Section (a)'s amendment—so there is simply no possibility that the prosecution of the referenced individual has produced any realistic fear on them. Thus, the mere allegation by Plaintiffs of an inhibition created by the indictment of a third-party pursuant a defunct version of the challenged provision is insufficient for them to obtain standing. *See Younger*, 401 U.S. at 41-42.

Second, the cases in which the Supreme Court has heavily weighted the prosecution of a third-party have been those that directly relate to the conduct in which Plaintiffs plan to engage. For example, in *Steffel v. Thompson*, 415 U.S. 452, 458 (1974), the Supreme Court recognized the plaintiff's realistic fear of prosecution as a result of the arrest of his handbilling companion; in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 166-67 (2014), the Supreme Court heavily weighted that a plaintiff "[had] ] been the subject of Commission proceedings in the past"; and, in *Mangual*, the First Circuit heavily weighted that a journalist was prosecuted under the challenged statute for engaging in the same conduct that the plaintiff stated he would continue to perform, 317 F.3d at 60.

Here, Plaintiffs did not even try to reasonably relate the indicted individual's conduct to theirs and relied on the hypothetical that if a pastor was prosecuted—under a different law— they too could suffer the same fate. However, Plaintiffs' conjectural fear that a government actor "might in the future take some other and additional action detrimental to" them does not suffice to create standing. *Clapper*, 568 U.S. at 416; *Laird*, 408 U.S. at 11. Thus, Plaintiffs attempt to pass the standing barrier resting on an unrelated third-party prosecution is not consistent with *Younger* and must be disregarded by this Court. Therefore, since Plaintiffs do not have individual or third-party standing, this Court cannot issue the requested preliminary injunction.

## C. Plaintiffs continue to rely on cases that the Court has ruled are distinguishable from the instant case.

At the Status Conference held on July 1, 2020, the Court stated the following:

[T]he court read all cases that plaintiffs cited in support of the question of standing, and this review confirmed that "mere subjective fears are not enough." There must be a credible threat of prosecution, which existed in *Anthony List v. Driehaus*, 573 U.S. 149 (2014), where a complaint was filed against plaintiff; in *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979), where the

challenged statute created an unfair labor practice mixed with regulation of expression that covered unions (plaintiff was a union); and in *Mangual v. Rotger-Sabat*, 317 F.3d 45, (1st Cir. 2003), where one of the officers who were being investigated by the journalist sent a letter to the Secretary of Justice complaining about the journalist. But the stipulations in this case do not reflect similar factual settings.

*Minute of Proceedings: Second Status Conference*, Docket No. 33 at 2.

Even after the Court informed Plaintiffs that those cases where clearly distinguishable and did not support their standing argument, they continue to rely on them. For example, Plaintiffs rehashed their argument that *Mangual* supports their theory regarding a credible threat of prosecution (Docket No. 50 at 17), even after Defendants fully briefed that it was distinct from the instant case and this Court agreed with said analysis. (*See* Docket No. 13 at 12-15 (adopted by reference) & Docket No. 33 at 2). Similarly, Plaintiffs repeat the same arguments regarding *SBA List* and *Babbitt* to support their failed standing arguments (e.g. Docket No. 50 at 17), in complete disregard of the Court's warning that those cases were completely distinguishable. (*See* Docket No. 33 at 2; *see also* Docket No. 19 at 3-7 & 11-14) (adopted by reference). Therefore, Plaintiffs failure to provide new relatable and applicable case law to support their standing quest is clearly a sign that there is no support for their standing argument.

**D. Plaintiffs must disclose their sources if they attempt to obtain standing based on their alleged chill.**

On July 6, 2020, the Court ordered Plaintiffs to include in the legal memorandum supporting their renewed motion for preliminary injunction a "discussion of whether a journalist claiming chilling of sources as basis for standing in a pre-enforcement facial challenge under the First Amendment" is sufficient to establish standing without disclosing the identities of their sources. (Docket No. 34 at 2). Plaintiffs addressed that matter by asserting

that "they may establish standing without disclosing the identities of their sources, and that any order requiring them to disclose the identities of their confidential sources would impermissibly undermine the First Amendment interests they seek to vindicate through this lawsuit." (Docket No. 50 at 16). However, Plaintiffs failed to cite case law that supports their argument and, as already mentioned, continue to rest on the same cases that Defendants have distinguished and the Court concluded were factually different, i.e. *Babbitt*, *Mangual* and *SBA List*. Docket No. 50 at 17. Additionally, Plaintiffs curiously failed to discuss *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980), which is the First Circuit leading case regarding the disclosure of journalistic sources. That is, because the balance of interests in the instant case favors the disclosure of sources if Plaintiffs insist on relying on the chill of those unknown individuals to obtain standing.

In *Bruno & Stillman, Inc.*, the First Circuit—in a libel suit against a newspaper publisher—addressed the issue of whether the identities of journalistic sources can be subject to discovery. The First Circuit found that "the 'special procedures' suitable for [a case where the disclosure of journalistic sources was requested] is the application of Fed.R.Civ.P. 26 ("General Provisions Governing Discovery") with a heightened sensitivity to any First Amendment implication that might result from the compelled disclosure of sources." *Bruno & Stillman, Inc*, 633 F.2d at 596. Further, the First Circuit provided some guidance as to the criteria that a Court must use in a case wherein discovery of journalistic sources is sought.

First, the party that requests the disclosure of journalistic sources must establish relevance of desired information and the party that argues against said disclosure has burden of establishing need for preserving confidentiality. *Id*. at 597. Second, assuming that the case is not frivolous and brought by a party for the sole purpose of obtaining the identity of a

journalistic source; and that desired information appears more than remotely relevant, the court, in making the determination of whether to order discovery of sources, must assess extent to which there is a need for confidentiality and if the claimed confidentiality seems unsupported, unlikely, or speculative, court may order discovery and if in doubt, it may defer resolution of confidentiality issue and turn to relevance issue. *Id.*at 597-98. Finally, the Court must determine if the information that a party seeks in discovery can be obtained by alternate methods without disclosing the identity of the sources. *Id*. (First Circuit ruled that district court's order granting company's motion to compel disclosure of three of newspaper's confidential sources and information conveyed to them by the newspaper would be remanded as there were alternate methods that were not exhausted to obtain information, i.e. reporter's notes). Similarly, the First Circuit held in *Cusumano v. Microsoft Corp*., 162 F.3d 708, 715 (1st Cir. 1998), that determinations of where particular disclosures fall along the continuum of confidentiality, and related determinations anent the degree of protection that attaches to them, **must take into account the totality of the circumstances**.

In the case at bar, the test established by the First Circuit in *Bruno & Stillman, Inc*. favors that the identity of Plaintiffs' sources be disclosed if they rely on their alleged chill to obtain Article III standing. **First**, the identity of the sources is extremely relevant for Defendants since Plaintiffs assert that the challenged provision is causing a chilling effect on those individuals, which prevents the information to flow. Since Plaintiffs' standing is predicated on the chill of those sources, Defendants have the right to depose those individuals and cross-examine them at a preliminary injunction hearing. Any other way would constitute a due process violation in detriment of defendants' rights. Also, the identity of those sources is extremely relevant to the Court to complete the standing inquiry as it must evaluate their testimony and demeanor;

specially when Plaintiffs' own standing has not been established. **Second**, Plaintiffs' assertions of a need for confidentiality regarding the identity of the journalistic sources seems unsupported, unlikely, and speculative **because Plaintiffs are the ones that have theorized that their standing to sue rests on the alleged chill of those unknown individuals.** One cannot simply allege a fact, rely on the assertion and expect that no discovery is conducted regarding that matter. **Third**, Defendants do not have any alternative methods to challenge the veracity of Plaintiffs' allegations regarding the supposed chill of their journalistic sources without deposing and cross-examining them. That is, because a 'chill' is a state of mind that only the one who suffers it can corroborate its existence. **Finally**, it is apparent that when analyzing the totality of the circumstances, the scale tips in favor of the disclosure of the journalistic sources. Therefore, since all the prongs carved by the First Circuit in *Bruno & Stillman, Inc.* weigh in favor of Defendants and the analysis of the totality of the circumstances established in *Cusumano*, 162 F.3d at 715, favor the disclosure of the sources identities, the Court must order the discovery of the same.

### III. A PRELIMINARY INJUNCTION IS UNWARRANTED IN THE PRESENT CASE

### A. Standard of a preliminary injunction

The First Circuit evaluates four factors in determining whether to issue a preliminary injunction, to wit: (1) the movant's probability of success on the merits; (2)the likelihood of irreparable harm absent preliminary injunctive relief; (3) a comparison between the harm to the movant if no injunction issues and the harm to the objectors if one does issue; and (4) how the granting or denial of an injunction will interact with the public interest. *See New Comm Wireless Services v. SprintCom, Inc.,* 287 F.3d 1 (1st Cir.2002); *see also Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996). Whether to issue

a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others. *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 611–13 (1st Cir.1988). Although a hearing is often held prior to entry of a preliminary injunction, a hearing is not an indispensable requirement. *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir.1988). As it will be discussed below, Defendants contend that Plaintiffs failed to meet all the four prongs that are required to be satisfied for the issuing of a preliminary injunction.

**B. Plaintiffs fail to meet the necessary requirements for the issuance of a preliminary injunction.**

    **1. Plaintiffs are unlikely to succeed on the merits.**

At threshold, as it was discussed earlier in this motion, Plaintiffs failed to establish the necessary elements to have Article III standing. That itself is more than sufficient to not only deny the request of preliminary injunction but to dismiss the entire case. *See Osediacz v. City of Cranston*, 414 F.3d 136, 142 (1st Cir. 2005) (stating that even though prudential standing concerns are relaxed in certain facial challenges implicating the First Amendment, a litigant still must demonstrate that she satisfies the constitutional minimal essential to establish standing). However, if this Court were to determine that the case at bar is justiciable because Plaintiffs comply with all the necessary requirements of Article III standing—which we vehemently deny—they are highly unlikely to succeed on the merits.

    **a. Plaintiffs will not prevail in a facial challenge of the statutory provision at issue.**

"[A] party who mounts a facial challenge to a statute must carry a significantly heavier burden than one who seeks merely to sidetrack a particular application of the law." *McGuire v. Reilly*, 260 F.3d 36, 46-47 (1st Cir. 2001). A plaintiff will not prevail in a facial challenge if a law

"has a plainly legitimate sweep." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). "A facial challenge to a legislative Act is […] the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *McGuire v. Reilly*, 386 F.3d 45, 57 (1st Cir. 2004) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In determining whether a law is facially invalid, the Court must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases. *Washington State Grange*, 552 U.S. at 449–50.

The Supreme Court has concluded that facial challenges to constitutionality of laws are disfavored for several reasons. Among the reasons, the Supreme Court has held that such facial challenges often rest on speculation, and that they also run contrary to fundamental principle of judicial restraint, under which courts should neither anticipate question of constitutional law in advance of necessity of deciding it nor formulate a rule of constitutional law broader than it is required by precise facts to which it is to be applied. *Washington State Grange*, 552 U.S. 442 at 450-51. On facial challenge to the constitutionality of law, a court must keep in mind that ruling of unconstitutionality frustrates intent of elected representatives of the people. *Id.* at 451.

In terms of a specific speech, the Supreme Court has recognized that "false statements of fact … belong to th[e] category of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' " *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). While in *United States v. Alvarez*, 567 U.S. 709 (2012), the Court suggested that false

statements generally are not a new category of unprotected speech exempt from the normal prohibition on content-based restriction, the history of Supreme Court case-law has consistently confirmed that false speech enjoys little First Amendment protection. *See BE & K Constr. Co. v. N.L.R.B.,* 536 U.S. 516, 531 (2002) ("[F]alse statements [are] unprotected for their own sake."); *Hustler Magazine v. Falwell,* 485 U.S. 46, (1988) ("False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas ...."); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776 (1984) (false statements of fact have "no constitutional value" because they "harm both the subject of the falsehood *and* the readers of the statement" (quotation marks omitted)); *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731, 743 (1983) ("[F]alse statements are not immunized by the First Amendment right to freedom of speech."); *Herbert v. Lando,*441 U.S. 153, 171 (1979) ("Spreading false information in and of itself carries no First Amendment credentials.").

In that sense, false statements will have very little protection from the First Amendment, except in a limited set of contexts where such protection is necessary "to protect speech that matters," *Gertz,* 418 U.S. at 341, such as "expression critical of the official conduct of public officials," *New York Times Co. v. Sullivan,* 376 U.S. 254, 268 (1964). And even in these special contexts, "the *knowingly* false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." *Garrison v. Louisiana,* 379 U.S. 64, 75 (1964) (emphasis added). In fact, in *Schenck v. United States* 249 U.S. 47, 52 (1919), Justice Holmes famously noted that "[t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic." Although *Schenck* was concerned with seditious speech, it is particularly instructive here since it is quintessentially

about a false statement of fact. As explained in *Schenck,* the power of the government to punish such speech involves careful consideration of "proximity and degree" of the harm.

In the instant case, Plaintiffs are facially challenging Section (a) of Article 6.14 of Act No. 20 for allegedly being content based. Specifically, Plaintiffs assert that they "are afraid that the government could prosecute them under Section 6.14(a) by alleging that an inadvertent inaccuracy in their reporting was intentional." *See* Docket No. 50 at 8. Plaintiffs interpretation of the law is incorrect. First, Section (a) of Article 6.14 requires various elements in order to apply: (1) that the information is a false alarm; (2) that the person knows that it is false; (3) that it is disseminated, published or transmitted through any means of communication; (4) that it relates to the imminent occurrence of catastrophe; **or** (1) or circulates a notice or a false alarm; (2) through any means of communication and (3) as a result of the conduct, the person puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers public or private property. *See* Docket No. 45-1.

Evidently, the instances in which Section (a) of Article 6.14 may apply are **not** unconstitutional, judged in relation to the challenged provision's plainly legitimate sweep. Section (a) does **not** punish false speech against the government nor it can be construed, as Plaintiffs allege, that it covers news articles criticizing a governmental emergency response, even if false. The plain language in Section (a) proscribes the dissemination of false information in very specific instances and requires that the person **knows** that it is false, as well as a precise consequence that consists of endangering the life, health, bodily integrity or safety of one or more persons at imminent risk, or public or private property. Moreover, Section (a) specifically proscribes false alarms which by definition are deceptive or erroneous report of an emergency, causing unnecessary panic and/or bringing resources (such as emergency services) to a place

where they are not needed.[3] In that sense, a news or journalistic articles challenging the government's actions during a state of emergency cannot reasonably be thought to be proscribed when the challenged provision is analyzed from its face.

Plain and simple, from a facial analysis of Section (a), a journalist cannot be prosecuted, even if based on false information, for criticizing or challenging government officials or official information because said provision does not proscribe all false speech and requires other elements to be applicable. Therefore, Plaintiffs failed to meet their burden as it can be reasonably concluded that the alleged impermissible application of Section (a) is not substantial in relation to its plainly legitimate sweep. *See United States v. Williams*, 553 U.S. 285, 292 (2008) (holding that to prevail in a facial challenge of a statute for being overbroad the movant is required to establish that it *substantially* proscribes protected speech, not only in an absolute sense, but also in relation to the statute's plainly legitimate sweep).

Further, after Act No. 66-2020 amended Section (a), there is an element of intent that requires that dissemination of the false alarm is made with knowledge of its falsehood. As clarified before, Section (a), from its face, cannot be construed as to prohibit protected speech as it requires a specific intent to cause a precise result in order to configure the criminal conduct. A person who causes a particular result is said to act with a specific intent if " 'he consciously desires that result, whatever the likelihood of that result happening from his conduct,' " while he is said to act with general intent if he is aware " 'that that result is practically certain to follow from his conduct, whatever his desire may be as to that result.' " *United States v. Bailey*, 444 U.S. 394, 404 (1980). Certainly, protected speech, even if false,

---

[3] *See* <u>Merriam-Webster Dictionary</u>, defining a *false alarm* as "an alarm (such as a fire or burglar alarm) that is set off needlessly" and as "something causing alarm or excitement that proves to be unfounded", https://www.merriam-webster.com/dictionary/false%20alarm (retrieved on June 4, 2020).

cannot be chilled or punished under Section (a) since it not only requires the publication of a false alarm that is related to a particular issue (the imminent occurrence of a catastrophe in Puerto Rico) but the individual must have the *mens rea* (mental state) with the specific intent to cause a precise result among the population (putting the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangering public or private property).

Plaintiffs allege that Section (a) chills their speech because they could be prosecuted pursuant that provision if they inadvertently publish a false journalistic article criticizing or challenging official governmental actions or information. Moreover, they allege that government is the one to determine if they have knowledge of the falsity. That simply cannot be inferred from the face of Section (a). Undoubtedly, from a plain facial analysis of Section (a), Plaintiffs cannot be prosecuted for inadvertently publishing false information due to a faulty source because the offense would lack an essential element to be configured: the *mens rea*. Here, Plaintiffs have not asserted that they are chilled because they often publish false information with the intent to cause public unrest which would have to be the specific allegation for the challenged provision to be applicable. Therefore, it cannot be reasonably inferred that Plaintiffs, or journalists, are chilled because even if they published journalistic articles with false information, they would lack the element of specific intent to cause confusion, panic, or collective public hysteria.

In fact, as stated before, Plaintiffs' alleged fear is based on the notion that they be prosecuted after **unintentionally** publishing false information regarding a governmental action. (*See* Docket No. 23 at 5, ¶23) (factual stipulation in which Plaintiffs admit that they "do not intend to transmit false information"). Nevertheless, in order to arrive at Plaintiffs' conclusion that Section (a) is unconstitutional from its face, this Court would not only have to

rely on hypothetical situations, but assume that Plaintiffs often publish false information, knowingly, with the intent to create confusion, panic or collective public hysteria during states of emergency disasters or curfews. That inference has been rejected by Plaintiffs since they admit that they knowingly would not transmit false information (Docket No. 23 at 5), and it simply does not pass the facial challenge muster. *See Laird*, 408 U.S. at 13-14 (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Thus, it is apparent that Plaintiffs are unlikely to succeed on the merits because they failed to establish the necessary elements to prevail in a facial challenge to Section (a) of Article 6.14 of Act No. 20-2017.

### b. Plaintiffs are unlikely to succeed on the merits of a content-based challenge.

The challenged provision is not an unconstitutional content-based restriction. Plaintiffs allege that Section (a) "is facially content based because it applies only to speech about a particular topic." Docket No. 50 at 3. Moreover, Plaintiffs contend that since the challenged provision is content based, it would not pass a strict scrutiny test. Docket No. 50 at 19. The challenged provision is not an unconstitutional content-based criminal statute as Plaintiffs characterize it. The Supreme Court's dictum in *Álvarez*, 567 U.S. 709, addressed the constitutionality of the Stolen Valor Act under the First Amendment and held that the statute was an invalid content-based regulation of speech. *Id.* at 715. However, in so concluding, the plurality opinion noted that statutes that prohibit false speech in order to "protect the integrity of Government processes" and "maintain the general good repute and dignity of government service itself," were permissible restrictions on free speech. *Id.* at 720 (internal quotation marks and ellipses omitted). Likewise, Justice Breyer's concurring opinion and Justice Alito's dissent also noted that those kinds of statutes were a constitutional restriction on free speech. *Id.* at

734 (Breyer, J. concurring); *id.* at 748 (Alito, J., dissenting). In that sense, this Court should accord "great weight" to those statements in *Álvarez*.

Further, The Stolen Valor Act's flaw in *Álvarez* was that "its plain terms applie[d] to a false statement made at any time, in any place, to any person. ... And it does so entirely without regard to whether the lie was made for the purpose of material gain." *Id.* at 722–23 (plurality opinion). Section (a) is more narrowly tailored because it requires that the person "[g]ives a warning or false alarm, knowing that the information is false, in relation to the imminent occurrence of a catastrophe in Puerto Rico," which clearly means that there is an intent element. *See United States v. Lepowitch*, 318 U.S. 702, 704 (1943) (holding that a statute that proscribes false impersonation of government officers was valid since "the words 'intent to defraud' in the context of [the] statute, [did] not require more than the defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct."). Applying the reasoning of *Lepowitch* here the same would be constitutional, since the plain language of the challenged provision seeks to proscribe the deceit of unscrupulous persons that **knowingly** disseminate false alarms of the imminent occurrence of a catastrophe in Puerto Rico during states of emergencies with the intention to wreak chaos among the population. *See United States v. Bonin*, 932 F.3d 523, 536 (7th Cir. 2019).

In the instant case, because the challenged provision proscribes conduct with an expressive element, as distinct from pure speech, the correct applicable standard is an intermediate scrutiny to determine the constitutionality of the statute. *See United States v. Tomsha-Miguel*, 766 F.3d 1041, 1048–49 (9th Cir. 2014) (applying intermediate scrutiny and holding that a false pretenses criminal statute was a constitutionally permissible restriction on

free speech); *see also United States v. Perelman*, 695 F.3d 866, 871– 72 (9th Cir.2012) (applying intermediate scrutiny to 18 U.S.C. § 704(a), which prohibited the wearing of false military medals, an action this court also deemed to be expressive conduct). Under intermediate scrutiny, a government regulation "is sufficiently justified" if it "is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367 (1968). The government has the constitutional power to prohibit the dissemination of false representations, and that prohibition serves the substantial government interests of "protect[ing] the integrity of Government processes," and "maintaining the general good repute and dignity of ... government ... service itself." *Álvarez*, 567 U.S. at 721 (internal quotation marks and citations omitted). These interests are also unrelated to the suppression of free expression, because the challenged provision does not prevent the expression of any particular message or viewpoint. Rather, the government's interests are concerned solely with the act of disseminating a false alarm itself knowing that it was untrue, regardless of its content.

As to the final prong of the *O'Brien* test, the Supreme Court has explained that "an incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien*, so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 67 (2006) (internal quotation marks omitted). Here, the challenged provision promotes the goal of avoiding the worsening of a declared emergency state that could cost the destruction of property and the lives of citizens that lose control over

a false alarm disseminated by unscrupulous people. The Court cannot take lightly that the Government is responsible for protecting the lives, as well as the properties of its citizens and when falseness travels fast, the truth will never be able to reach it on time. Accordingly, the challenged provision survives the appropriate intermediate scrutiny.

Still, assuming, *arguendo*, that the challenged provision is a content based regulation of protected expression, it would pass First Amendment review under settled law upon a showing that the regulation " 'is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.' " *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, (1991) (quoting *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987)). That is because the Government has a compelling interest to protect the health, lives and property of its citizens during declared states of emergencies from unscrupulous individuals that **intentionally** disseminate false alarms in order to create chaos. *See Burson v. Freeman*, 504 U.S. 191, 199 (holding that a State had a compelling interest in protecting the right of its citizens to vote freely by implementing a campaign-free zone). This compelling interest rests even more on the fact that false alarms are more likely to put vulnerable citizens like children, elderly or uneducated people that cannot discern falsehood from reality.

Additionally, the statute is narrowly tailored as the proscribed conduct is limited to (1) dissemination of warnings or false alarms; (2) knowing that the information is false; (3) in relation to the imminent occurrence of a catastrophe in Puerto Rico; or (1) dissemination of warnings or false alarms; (2) knowing that the information is false; (3) when as a result of its conduct it puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers public or private property. In that sense, Section (s) is clearly narrowly tailored to serve a significant governmental interest and leave an open ample alternative

channel for communication of the information to report. *See Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293 (1984). That is because a good faith false alarm, even if it puts life, health, safety, body integrity or public or private property at risk cannot be prosecuted. Moreover, a journalist cannot be prosecuted for engaging in the proscribed conduct if it in good faith relied on the information provided by a faulty source. Thus, Section (a) is narrowly tailored to serve a compelling government interest.

**2. The Plaintiffs have no potential of irreparable harm if the injunction is denied.**

A preliminary injunction is an extraordinary remedy never awarded as of right. *Munaf,* 553 U.S. at 689-690. Irreparable harm is a necessary threshold for awarding preliminary injunctive relief. Preliminary injunctions are strong medicine, and they should not issue merely to calm the imaginings of the movant. *Matos ex rel. Matos v. Clinton Sch. Dist.,* 367 F.3d 68, 73 (1st Cir. 2004). A preliminary injunction should not issue except to prevent a real threat of harm. *Ross–Simons,* 102 F.3d at 19; 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2948.1, at 153–54 (2d ed.1995). A threat that is either unlikely to materialize or purely theoretical will not do. *Ross–Simons,* 102 F.3d at 19; *Pub. Serv. Co. v. Town of W. Newbury,* 835 F.2d 380, 382 (1st Cir.1987). If a case can be adjudicated on the merits before the harm complained of will occur, there is no sufficient justification for preliminary injunctive relief. 11A Wright, Miller, & Kane, *supra* § 2948.1, at 149. The irreparable harm must be "neither remote nor speculative, but actual and imminent. *In re Bora Bora, Inc.,* 424 B.R. 17, 26 (Bankr. D.P.R. 2010)

The Supreme Court has frequently reiterated that the standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction. *Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983) "Issuing a preliminary injunction based

only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Mazurek v. Armstrong,* 520 U.S. 968 (1997) (*per curiam*). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.,* 480 U.S., at 542.

In most cases, irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief. Irreparable harm is "an essential prerequisite" for receiving such redress. The burden of demonstrating that a denial of interim relief is likely to cause irreparable harm rests squarely upon the movant. *Charlesbank Equity Fund II v. Blinds to Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004) (Internal citation omitted). A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's **unsubstantiated fears of what the future may have in store**. *Regan v. Vinick & Young* (*In re Rare Coin Galleries of Am., Inc.*), 862 F.2d 896, 902 (1st Cir.1988) (emphasis ours). Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; "the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Laird v. Tatum,* 408 U.S. 1, 13–14 (1972) An injunction should issue only where the intervention of a court of equity "is essential in order effectually to protect property rights against injuries otherwise irremediable." *Cavanaugh v. Looney,* 248 U.S. 453, 456 (1919).

In the case at hand, Plaintiffs utterly failed to specify the necessary factual allegations of irreparable harm needed to clear the threshold for an award of preliminary injunctive relief. Instead, Plaintiffs aver in a slapdash fashion that since they have made a strong showing of

likelihood of success on the merits of their First Amendment claim, it follows that the irreparable injury component of the preliminary injunction analysis is satisfied as well. (Docket No. 50 at 26). This is an incorrect presumption on the part of Plaintiffs. Defendants have already demonstrated Plaintiffs' unlikelihood of success because they do not have standing and even if they did their facial challenges to the alluded provisions would fail. Moreover, the irreparable harm requirement stands on its own as a prerequisite to a preliminary injunction.

This Court should not issue Plaintiffs' request for preliminary injunction unless they can demonstrate that granting it will prevent a real threat of harm. Mere allegations of mysterious sources are not enough to establish an irreparable harm if those individuals are not identified because they cannot suffer injury in fact due to risk of policy's chilling effect on speech of others. *See Osediacz*, 414 F.3d at 142. Also, Plaintiffs must show that Section (a) has caused them a chilling effect of a very serious nature which they have failed to even plead in this case. *See Mangual*, 317 F.3d at 57-58 (recognizing standing to a plaintiff that asserted the existence of a "chilling effect of a very serious nature" and that "[a] subjective and irrational fear of prosecution is not enough to confer standing under Article III,"); *see also Clapper*, 568 U.S. at 416 (holding that plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending). To this end, Plaintiffs have failed to demonstrate that an irreparable injury is *likely* in the absence of an injunction because the challenged provision has not been enforced against Plaintiffs. In fact, Plaintiffs did not show that a journalist has been prosecuted for a violation of the challenge provisions. In its place, Plaintiffs contend that the mere threat of prosecution already operates to chill Plaintiffs speech as well as the speech of their sources.  (Docket No. 50 at 27). This is pure speculation on behalf of Plaintiffs. The First Circuit has pronounced that a

threat that is either unlikely to materialize or purely theoretical will not do. *Ross–Simons,* 102 F.3d at 19. Moreover, allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. *Laird,* 408 U.S. 1.

Plaintiffs have continued to publish news stories related to the current state of emergency due to the COVID-19 pandemic. By visiting co-plaintiffs' news websites one can appreciate that their journalistic endeavors appeared to be unaffected by the challenge provisions.[4] In fact, co-plaintiff Rodríguez-Cotto has published a recent article regarding an alleged squandering of public funds in the Department of Health during the COVID-19 pandemic **based on information provided by sources** and co-plaintiff González-Cotto has reported on the government's management of COVID-19 testing in the airport. *See* **Exhibits 1 & 2**. It is difficult to understand the supposedly chilling effect that Plaintiffs are enduring when their journalistic work has continued uninterrupted. Plaintiffs rely in *Mangual,* 317 F.3d at 58, to support an alleged ongoing chilling effect in high hopes of satisfying the irreparable harm requirement. However, as we have explained *ad nauseum, Mangual* can be readily distinguished from the present case, since in that case a criminal investigation had been initiated against a journalist and the chill of his sources was a complementary element used by the First Circuit to recognize that he had a "chilling effect of a very serious nature". This is not the situation here. No investigations have been initiated against Plaintiffs or any other person regarding the challenged provision. If all it took to summon the jurisdiction of the federal courts and establish an injury were a bare assertion that, as a result of government action, one

---

[4] *See* S. Rodríguez-Cotto, *En Blanco y Negro,* http://enblancoynegromedia.blogspot.com; and, R. González-Cotto, *Periódico Nuestro,* https://periodiconuestro.com/.

is discouraged from speaking, there would be little left of the Article III threshold in First Amendment cases.

Also, Plaintiffs continue to rely on the unrelated prosecution of a third-party not before this Court to support their alleged injury and 'chill'. However, as we already explained, that theory falls flat in light of *Younger* which deemed insufficient the allegations of plaintiffs stating that they feel "inhibited" by the indictment of another person. *Younger*, 401 U.S. at 41-42. Therefore, Plaintiffs cannot be injured by the by the indictment of another person absent a realistic threat of prosecution, which in this case is inexistent. As a result, this Court must deny Plaintiffs' request for preliminary injunctive relief because they that have not shown the potential for irreparable harm if the injunction is denied.

**3. The balance of equities and the effect of the Court's ruling on the public interest tip the balance in favor of denying the request for preliminary injunction.**

A preliminary injunction is a potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests. *Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 163 (1st Cir. 2004). Constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy **is directed to inciting or producing imminent lawless action and is likely to incite or produce such action**. *Brandenburg*, 395 U.S. at 447 (emphasis ours). Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as well as the substance of the legal issues it presents. *See Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, at 20 & 24 (2008). The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but

to balance the equities as the litigation moves forward. *University of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981).

In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.,* 480 U.S. at 542. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger,* 456 U.S. 305, 312 (1982). Thus, "[a]n injunction should issue only where the intervention of a court of equity is essential to effectually protect property rights against injuries otherwise irremediable. *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011). This involves weighing "the balance of relevant hardships as between the parties." *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 482 (1st Cir. 2009). The Court must balance "the hardship that will befall the nonmovant if the injunction issues … with the hardship that will befall the movant if the injunction does not issue." *Mercado-Salinas v. Bart Enterprises Int'l, Ltd.*, 671 F.3d 12, 19 (1st Cir. 2011).

A preliminary injunction is not appropriate unless there is "a fit (or lack of friction) between the injunction and the public interest." *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 120 (1st Cir.2003). In assessing a First Amendment challenge, a court looks not only at the private claims asserted in the complaint, but also inquiries into the governmental interests that are protected by the injunction, which may include an interest in public safety and order. *Madsen,* 512 U.S. at 767–68. A burden on protected speech always causes some degree of irreparable harm. *See Elrod v. Burns,* 427 U.S. 347, 373–74 (1976).

In the instant case, it would serve the public interest to maintain the status quo until this Court can rule on the merits of the Complaint. In the past, the First Circuit Court has

acknowledged the importance of the public interest weighing in favor of denying a preliminary injunction. *See Water Keeper All. v. U.S. Dep't of Def.,* 271 F.3d 21, 35 (1st Cir. 2001) (determining that any injury is outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors). Here, safety and security of the public during an emergency are factors that need to be considered if the challenged provision is stroke down.

Plaintiffs request for preliminary injunction does not take those concerns into consideration and rather have no legal consequences for those who cause harm and havoc during a state of emergency. The challenged provision as it stands now protects the public from false information, disseminated with knowledge of its falsehood, that could cause panic during a state of emergency. The challenged provision serves as a deterrent for people that have the intention to cause harm. As Plaintiffs pointed out, during this emergency due to the COVID-19 pandemic, a person caused disruption in the food supply chain by falsely announcing that the government would close the food markets. *See* Docket No. 50 at 14. Although, the government clarified that this was false, the damage was done, and the food supply chain was disrupted by the many people who went to the food market in fear that said markets would be closed. It bears noting that the public interest cuts both ways. On the one hand, freedom of expression is necessary to the health of our democracy. On the other hand, seeking public safety and ensuring that people are safe during an emergency is also valuable and of vital importance.

A determination of the public interest necessarily encompasses the practical effects of granting or denying preliminary injunctive relief. *Bl(a)ck Tea Soc'y v. City of Bos.,* 378 F.3d 8, 15 (1st Cir. 2004). "When resolving preliminary injunction motions, '[a]ny potential harm caused to [a plaintiff] by the denial of [his] motion must be balanced against any reciprocal harm

caused to [the defendant] by the imposition of an injunction." *Allman v. Padilla*, 979 F. Supp. 2d 205, 221 (D.P.R. 2013). Plaintiffs have not demonstrated that the balancing of the equities favors an injunction. In this instance, justice deferred for trial is not justice denied when taking into consideration the consequences of striking down the challenge provisions with a preliminary injunction. Consequently, the balance of hardships and the public interest tip sharply in favor of denying Plaintiffs' request for preliminary injunction.

4. **Plaintiffs have not posted the required security deposit for the issuance of a preliminary injunction.**

Plaintiffs insist that this Court waives any bond requirement pursuant to Rule 65(c) of Federal Civil Procedure (Docket No. 50 at 29) but that is not possible. Rule 65(c) states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Although "the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary." *See Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,*847 F.2d 100, 103 (3d Cir.1988) ("While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.") In other words, Rule 65(c) "mandates that a court when issuing an injunction must require the successful applicant to post adequate security." *Id*. Defendants contend that Rule 65(c) requires that a bond be posted before the issuing of a preliminary injunction, which cannot be waived, and the only discretion left to the Court is as to the amount of the same. Therefore, Defendants reiterate that due to the adverse impact that an issuance of a preliminary injunction could have on public security a bond of no less than $10,000 is required to be posted by Plaintiffs.

36

## IV. CONCLUSION

It has been clearly established that Plaintiffs lack Article III standing to invoke this Court's jurisdiction. Plaintiffs failed to establish a **realistic danger of sustaining a direct injury because of the challenged statute's operation or enforcement, neither through themselves, through third parties nor through journalistic sources**. Instead, they rely on a hypothetical, speculative, remote, and baseless fear of prosecution that has not occurred and that cannot be reasonably inferred from the well-pleaded facts that has a real probability of occurring. However, Plaintiffs "**cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending**." *Clapper*, 568 U.S. at 416. That is, because "[a] plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III for either type of injury." *See Mangual*, 317 F.3d at 57. Further, the mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13-14. It is apparent from the arguments raised in this motion that Plaintiffs have attempted to manufacture standing by inflicting harm on themselves based on hypothetical fears and by alleging a subjective chill. A ruling in favor of granting a preliminary injunction would be based exclusively in Plaintiffs' imagination, **resulting in an advisory opinion**. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("(T)he federal courts established pursuant to Article III of the Constitution do not render advisory opinions"). Thus, this Court must swiftly **deny** Plaintiffs request for preliminary injunction because they clearly lack standing.

In the alternative, it has also been clearly established that Plaintiffs failed to comply with each prong of the preliminary injunction standard. First, they are highly unlikely to

37

succeed on the merits since their facial challenge cannot pass muster. Second, Plaintiffs will not suffer any irreparable harm if the preliminary injunction is denied since they have continued to publish news articles during the emergency despite of their alleged fear of prosecution and the supposed chilling effect that the challenged provision has on them. Third, Plaintiffs cannot rely on mere allegation of a chill of their sources without establishing plausible facts that put Defendants and the Court in position to examine such assertion. Finally, the balance of equities, as well as the adverse effect that the issuing of a preliminary injunction would have on the public interest tip the scale in favor of denying the preliminary injunction. Therefore, it is forceful to conclude that Plaintiffs request for a preliminary injunction must be deny for lack of standing and for not meeting the necessary requirements for the issuance of said extraordinary remedy.

**WHEREFORE**, the Defendants pray that this Honorable Court take notice of the present motion and consequently **DENY** Plaintiffs' request for preliminary injunction.

**I HEREBY CERTIFY** that the undersigned attorney electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to the parties subscribing to the CM/ECF System.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of August 2020.

*[Space intentionally left in blank]*

**INÉS DEL CARMEN CARRAU-MARTÍNEZ**
Interim Secretary of Justice

**WANDYMAR BURGOS-VARGAS**
Deputy Secretary in Charge of Litigation

**SUSANA I. PEÑAGARÍCANO-BROWN**
Director of Legal Affairs
Federal Litigation and Bankruptcy Division

*/s/ Juan C. Ramírez-Ortiz*
**JUAN C. RAMÍREZ-ORTIZ**
USDC-PR No. 306507
Department of Justice of Puerto Rico
Federal Litigation Division
PO Box 9020192
San Juan, PR 00902-0192
Tel. (787) 721-2900, ext. 1421
juramirez@justicia.pr.gov

*/s/Joel Torres Ortiz*
**JOEL TORRES ORTIZ**
USDC-PR No. 302311
Department of Justice of Puerto Rico
Federal Litigation Division
PO Box 9020192
San Juan, PR 00902-0192
Tel. (787) 721-2900, ext. 1421 & 1412
joeltorres@justicia.pr.gov