UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SANDRA RODRÍGUEZ-COTTO; RAFELLI GONZÁLEZ-COTTO, *Plaintiffs*, v. WANDA VÁZQUEZ GARCED, Governor of Puerto Rico; INÉS DEL C. CARRAU-MARTÍNEZ, Interim Secretary of Department of Justice of Puerto Rico; PEDRO JANER, Secretary of Puerto Rico Department of Public Safety; HENRY ESCALERA, Puerto Rico Police Commissioner, all in their official capacities, *Defendants*. | CIVIL NO.: 20-01235-PAD |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION
FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

As the numerous rounds of briefing in this case have demonstrated, the parties disagree about almost everything. But they agree on one critical point: Plaintiffs' standing to challenge Section 6.14(a) of the Puerto Rico Department of Public Safety Act depends on the existence of a credible threat of prosecution. If Plaintiffs establish a credible threat of prosecution, they have standing; if they cannot establish a credible threat of prosecution, they do not have standing. Everything else is extraneous to the standing inquiry.

In their opening brief, Plaintiffs identified a number of factors supporting the existence of a credible threat of prosecution under Section 6.14(a) for their reporting on emergency conditions in Puerto Rico, including: the government's recent attempt to prosecute a pastor, under the prior version of Section 6.14(a), for sharing information about a rumored executive order on WhatsApp; the fact that Act No. 66-2020's Statement of Motives expressly targets information shared by the "mass media"; the authority of police departments to bring prosecutions under Section 6.14(a) on their own initiative, without the prior approval of the Department of Justice; and, notably, the Government's ongoing refusal to disavow prosecution against Plaintiffs or other journalists.

The Government is silent on almost all of these points. Instead, it attempts to kick up dust over whether Plaintiffs and their sources are currently being chilled, and insists that it must be allowed to discover the identities of Plaintiffs' confidential sources in order to resolve these questions. However, because Plaintiffs and the Government agree that a credible threat of prosecution is the sole test for standing under these circumstances, discovery into Plaintiffs' confidential sources is irrelevant and unwarranted.

The Government's arguments on the merits fare no better. It contends that Section 6.14(a) is a content-neutral restriction on expressive conduct similar to laws prohibiting impersonation of government officials. But the anti-impersonation laws are more than mere restrictions on false

1

speech—they prohibit acts of impersonation undertaken with the specific intent to defraud, and they are narrowly tailored to the compelling interest in protecting the integrity of government processes. Section 6.14(a), on the other hand, does not require the government to demonstrate a specific intent to defraud, and it is not narrowly tailored to any compelling government interest. For example, the Government fails to explain why it is essential to criminalize all false warnings of impending catastrophe, including predictions of an impending alien invasion or divine retribution, regardless of whether they are even plausibly likely to cause a public panic.

In their opening brief, Plaintiffs identified the Federal Communications Commission's broadcast hoaxes rule, 47 C.F.R. § 73.1217, as a less restrictive alternative to Section 6.14(a). Unlike the two provisions of Section 6.14(a), which offer broad alternative grounds to liability, the broadcast hoaxes rule requires the government to demonstrate simultaneously: that the offending speech concerned an impending crime or catastrophe; that it was certainly foreseeable to the defendant that the speech would cause immediate and significant public harm; **and** that public harm actually resulted. The Government has offered no explanation as to why the broadcast hoaxes rule would not suffice to protect its asserted interest in public safety.

The Government also disputes the existence of irreparable harm, but its arguments boil down to a restatement of its unavailing challenge to Plaintiffs' standing. Although the Government asserts that Plaintiffs have recently published news stories critical of the government, that is not inconsistent with Plaintiffs' testimony that Section 6.14(a) has chilled their reporting in numerous ways; Plaintiffs do not need to cease speaking altogether in order to establish that they have been chilled. In any event, the credible threat that Plaintiffs might be prosecuted or chilled during the pendency of litigation is sufficient to establish irreparable injury. Furthermore, the balance of hardship and the public interest both tip heavily in favor of the vindication of First Amendment

rights, and the Government cannot overcome this presumption by invoking unsupported concerns that an injunction would threaten public safety.

Finally, although the Government asserts that the Rule 65 bond requirement cannot be waived in this case, it does not address the First Circuit's decision in *Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers*, 679 F.2d 978 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984). *Crowley* expressly establishes this Court's authority to waive the cases concerning constitutional rights or public interests. *Id.* at 1000.

## ARGUMENT

When assessing a motion for preliminary injunction, this Court must consider four factors: (1) the movant's likelihood of success on the merits, (2) whether the movant will suffer irreparable harm, (3) the balance of the equities, and (4) the public interest. *CVS Pharmacy, Inc. v. Lavin*, 951 F.3d 50, 55 (1st Cir. 2020). Although the Government argues that "[w]hether to issue a preliminary injunction depends on balancing equities," Dkt. No. 62 at 18–19, the First Circuit has rejected this balancing approach for First Amendment claims. *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10–11 (1st Cir. 2012) (holding that the district court abused its discretion when it denied a preliminary injunction on the ground that the second, third, and fourth factors weighed against injunctive relief). "In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Id.* at 10. A finding that the plaintiff is likely to succeed on the merits of a First Amendment claim establishes a strong presumption that the remaining preliminary injunction factors are also satisfied. *Id.* at 10–11 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 250–51 (D.P.R. 2002). In any event, all four factors support a preliminary injunction in this case.

3

**I.     Plaintiffs are likely to succeed on the merits.**

    **A. Plaintiffs satisfy all three standing requirements identified in *SBA List v. Driehaus*.**

The Government continues to rest its case almost entirely on the contention that Plaintiffs lack standing, but it still fails to grapple with the controlling standard for facial pre-enforcement challenges. In this context, the Supreme Court has "held that a plaintiff satisfies the injury-in-fact requirement where he alleges '[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) [*SBA List I*] (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). As set forth in Plaintiffs' opening brief, they satisfy all three prongs of this relaxed test. Dkt. No. 50 at 11–14.

First, Plaintiffs' intended speech—including, in particular, journalism about emergency conditions in Puerto Rico—is undoubtedly affected with a constitutional interest. *Id.* at 11.

Second, Plaintiffs' speech is "'arguably . . . proscribed by [the] statute' they wish to challenge." *SBA List I*, 573 U.S. at 162 (citation omitted) (alterations in original). The Government does not dispute that Section 6.14(a) prohibits knowingly false statements about the same topics on which Plaintiffs routinely report—namely, emergency conditions in Puerto Rico. Plaintiffs' speech is therefore "within the compass of the challenged statute." *Osediacz v. City of Cranston*, 414 F.3d 136, 141 (1st Cir. 2005). Although Plaintiffs do not intend to transmit false statements, the Supreme Court has expressly held that such intent is not necessary to satisfy this prong of the standing analysis, even when the challenged statute prohibits only knowingly false statements. *SBA List I*, 573 U.S. at 163; *see also e.g.*, *Frese v. MacDonald*, 425 F. Supp. 3d 64, 76 (D.N.H. 2019) ("Even if Frese does not plan in the future 'to lie or recklessly disregard the veracity of his

4

speech,' his complaint sufficiently alleges that the State's prosecutorial arms, which include non-attorney police officers, retain overly broad discretion to determine whether an individual knew his speech to be true or false." (citation omitted)).

Third, because Section 6.14(a) is a recently enacted statute that regulates speech about topics on which Plaintiffs routinely report, the Court must presume that Plaintiffs confront "a credible threat of prosecution in the absence of compelling contrary evidence," even if Plaintiffs have not yet been threatened with prosecution. *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996); *Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999). The Government has not submitted "compelling contrary evidence," nor has it rebutted Plaintiffs' evidence supporting the presence of a credible threat of prosecution. For instance:

- Plaintiffs pointed out that Pastor José Luis Rivera Santiago was recently prosecuted under the prior version of Section 6.14(a) for sharing information on WhatsApp about a rumored executive curfew order. Dkt. No. 50 at 13. The Government contends that this prosecution is irrelevant because Pastor Rivera was not employed as a journalist. Dkt. No. 62 at 10. But neither the prior version of Section 6.14(a) nor the current version, which was enacted while this lawsuit was pending, makes any exception for journalists. Nor is it clear that Pastor Rivera was reporting "uncorroborated information." In fact, as Plaintiffs have noted previously, the Government issued a curfew order a few weeks after Pastor Rivera's alleged communications. Dkt. No. 4-3 at 12 & n.8.  And the prosecution was eventually dismissed for lack of probable cause. Dkt. No. 55-1 ¶ 9. The Government therefore fails to explain why this prosecution does not support a credible threat of prosecution for journalists who report on similar topics.[1]

- Plaintiffs noted that the Government expressly refused to disavow, even for a few days, the authority to prosecute Plaintiffs under the prior version of Section 6.14(a).

---

[1] The Government continues to rely on *Younger v. Harris*, 401 U.S. 37 (1971). However, as Plaintiffs pointed out in previous briefing, Dkt. No. 29 at 6, *Younger* is inapposite. There, the Supreme Court held that putative intervenors lacked standing to enjoin an ongoing prosecution under a state statute, because they did not allege that it was even "remotely possible" that they could be prosecuted under the statute. 401 U.S. at 42. Here, Plaintiffs do not seek to enjoin an existing prosecution, and they have established a credible threat of prosecution under the standards set forth in *SBA List I*, *N.H. Right to Life*, and *Rhode Island Ass'n of Realtors*.

- Dkt. No. 50 at 13. In fact, the Government still has not disavowed the authority to prosecute Plaintiffs or other journalists. Its ongoing refusal to disavow prosecution strongly supports the conclusion that Plaintiffs and other journalists face a credible threat of prosecution. *See Babbitt*, 442 U.S. at 302; *see also SBA List I*, 573 U.S. at 165; *N.H. Right to Life*, 99 F.3d at 17. The Government does not address this issue.

- Plaintiffs argued that Act No. 66-2020's Statement of Motives expressly targets statements made on social media and in the "mass media," and that Section 6.14(a) applies to speech distributed through the "media" and "social networks," where Plaintiffs routinely broadcast their reporting about the COVID-19 public health emergency. Dkt. No. 50 at 13–14. The Government does not address this issue.

- Plaintiffs observed that police departments have authority to initiate prosecutions under Section 6.14(a), without the prior approval of the Department of Justice. Dkt. No. 50 at 14. The statute's decentralized enforcement mechanism further supports the presence of a credible threat of prosecution. *See SBA List I*, 573 U.S. at 164; *Mangual v. Rotger-Sabat*, 317 F.3d 45, 59 (1st Cir. 2003). The Government does not address this issue.

Instead of responding to the issues Plaintiffs actually raised, the Government has been fencing with a straw man. It maintains that, absent a credible threat of prosecution, Plaintiffs cannot base standing on self-censorship or chill. Dkt. No. 62 at 7. Plaintiffs have not contested this point. Indeed, Plaintiffs affirmatively asserted in their opening brief that a credible threat of prosecution is "the sole touchstone for standing," which is "both necessary and sufficient" to satisfy Article III. Dkt. No. 50 at 16–17. *See also N.H. Right to Life*, 99 F.3d at 13–14. The parties simply disagree about whether a credible threat of prosecution exists in this case. On that point, however, the Government is incorrect for all the reasons identified above and discussed in Plaintiffs' opening brief. For the same reason, the Government's attempt to dispute whether Plaintiffs have been chilled is irrelevant. Even if Plaintiffs were not chilled at all, the presence of a credible threat of prosecution would itself suffice to establish standing. *N.H. Right to Life*, 99 F.3d at 13–14. Regardless, the Government has not rebutted Plaintiffs' testimony that they have been chilled in numerous ways, even though they continue to work as journalists. *See* Section II, *infra*.

The Government also argues that Plaintiffs cannot base their standing on injury to third parties. Again, however, the Government attempts to refute propositions that Plaintiffs do not assert. Plaintiffs maintain that they themselves confront a credible threat of prosecution. Although the existence of this threat is demonstrated by previous prosecutions of journalists under the criminal defamation law, as well as the recent prosecution of Pastor Rivera under Section 6.14(a), the threat itself is an injury to Plaintiffs. Plaintiffs therefore do not rely on injuries to third parties.

However, because Plaintiffs satisfy Article III and allege that Section 6.14(a) is facially invalid, the Court must consider Section 6.14(a)'s effects on the free speech, free association, and free press rights of third parties—including other journalists, their sources, other speakers, and the public—in determining whether Section 6.14(a) violates the First Amendment. *See, e.g.*, *City of Chi. v. Morales*, 527 U.S. 41, 55 n.22 (1999) ("When asserting a facial challenge, a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question."); *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (holding that First Amendment overbreadth claims may be sustained based on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression"). As discussed by *amici* PEN America and the University of Georgia School of Law First Amendment Clinic, Dkt. No. 61, Section 6.14(a) will presumptively chill all sorts of protected expression. This presumption carries significant weight in the merits analysis, and further tips the balance of equities and the public interest in favor of injunctive relief.

### B. Plaintiffs' sources are irrelevant to the standing inquiry.

As discussed in Plaintiffs' opening brief, the First Circuit has established a burden-shifting framework to govern requests for the disclosure of a journalist's confidential sources. Dkt. No. 50 at 15. The party seeking disclosure of the confidential information bears the initial burden of

"showing that his claim of need and relevance is not frivolous." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998); *see also In re Special Proceedings*, 373 F.3d 37, 45 (1st Cir. 2004) ("[T]he disclosure of a reporter's confidential sources may not be compelled unless directly relevant to a nonfrivolous claim or inquiry undertaken in good faith."). The burden then "shifts to the objector to demonstrate the basis for withholding the information." *Cusumano*, 162 F.3d at 716. Ultimately, the Court must balance "those factors that relate to the movant's need for the information on one pan of the scales and those that reflect the objector's interest in confidentiality and the potential injury to the free flow of information that disclosure portends on the opposite pan." *Id.* (citing *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 597–98 (1st Cir. 1980)).[2]

In this case, the Government's entire argument for disclosure rests on the false proposition that Plaintiffs seek to predicate standing on chill to their own sources. Once again, Plaintiffs argued explicitly in their opening brief that source chill is irrelevant to the standing inquiry, which depends entirely on the credible threat of prosecution. If there is a credible threat of prosecution, chill is unnecessary to establish standing and is, in any event, presumed. *See Mangual*, 317 F.3d at 58 (describe the "ensuing chill" from the credible threat of prosecution under the criminal defamation law). If there is no credible threat of prosecution, chill alone is insufficient to establish standing. Defendants themselves do not dispute this point. *See* Dkt. No. 62 at 6–7. Because the parties agree that a credible threat of prosecution is the sole test for standing in this case, there are no grounds for discovery into Plaintiffs' confidential sources.

---

[2]Although the Government faults Plaintiffs for not citing *Bruno & Stillman*, Dkt. No. 62 at 16, it fails to identify any material difference between this 40-year-old precedent and the more recent First Circuit authority on the same issue cited in Plaintiffs' opening brief. There appears to be no dispute between the parties regarding the framework for adjudicating source confidentiality issues.

### C. Plaintiffs are likely to succeed in demonstrating that Section 6.14(a)'s first provision is facially unconstitutional.

Section 6.14(a)'s first provision is subject to strict scrutiny because it is a facially content- and viewpoint-based restriction on speech about matters of public concern. Dkt. No. 50 at 18–22. The provision makes it a crime to "[g]ive[] a warning or false alarm, knowing that the information is false, in relation to the imminent occurrence of a catastrophe in Puerto Rico." Certified Transl. of Act No. 66-2020, Dkt. No. 45-1. This is a facially content-based restriction on speech because "it require[s] enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (citation and internal quotation marks omitted); *accord Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). It is also viewpoint based because it criminalizes "false alarms" about catastrophes, while allowing false assurances that everything is all right. *See Matal v. Tam*, 137 S. Ct. 1744, 1765 (2017) (plurality opinion). All of the Supreme Court Justices in *Alvarez* agreed that, at the very least, content-based restrictions on knowingly false statements about matters of public concern must be subjected to strict scrutiny. *See United States v. Alvarez*, 567 U.S. 709, 751–52 (2012) (Alito, J., dissenting); *accord id.* at 731–32 (Breyer, J., concurring in the judgment); *id.* at 723 (plurality opinion). *See also Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016) [*SBA List II*].

Relying on *United States v. Lepowitch*, 318 U.S. 702 (1943), the Government argues that Section 6.14(a) should not be treated as a content-based restriction on speech, but rather as a restriction on expressive conduct, similar to statutes prohibiting impersonation of government officials. Dkt. No. 62 at 25–27. *See also Alvarez*, 567 U.S. at 721 (plurality opinion) ("Statutes that prohibit falsely representing that one is speaking on behalf of the Government, or that prohibit impersonating a Government officer, also protect the integrity of Government processes, quite

9

apart from merely restricting false speech."). The Government does not explain how Section 6.14(a) is directed to preserving the integrity of government processes. The statute is in no way limited to speech falsely impersonating a government officer, or even speech about the government generally. The Stolen Valor Act arguably presented a closer case, since it involved false claims to have been awarded a government medal, but that distinction did not suffice to bring the law under the ambit of *Lepowitch* and its progeny.

Furthermore, "[s]tatutes forbidding impersonation of a public official typically focus on *acts* of impersonation, not mere speech, and may require a showing that, for example, someone was deceived into following a 'course [of action] he would not have pursued but for the deceitful conduct.'" *Alvarez*, 567 U.S. at 735 (Breyer, J., concurring in the judgment) (second alteration in original) (quoting *Lepowitch*, 318 U.S. at 704); *United States v. Bonin*, 932 F.3d 523, 536 (7th Cir. 2019) (observing that the federal impersonation statute requires intent to deceive). Section 6.14(a) does not require any such showing. The Government attempts to graft a specific intent requirement onto the statute, arguing that it seeks to proscribe knowingly false statements made with the "intention to wreak chaos among the population." Dkt. No. 62 at 26. But the words "with intent to cause" appear nowhere in the statutory elements of Section 6.14(a), as demonstrated by the Government's own recitations of those elements. *See* Dkt. No. 62 at 22, 28. Indeed, Section 6.14(a) does not mention public panic at all. "[W]here, as here, there is no ambiguity in the statute, there is no reason for courts to intervene and rewrite the statute to add a specific intent requirement to a statute that does not contain one." *United States v. Ducore*, 312 F. Supp. 3d 535, 539 n.6 (E.D. Va. 2018); *see also Boos v. Barry*, 485 U.S. 312, 330 (1988) ("[F]ederal courts are without power to

adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent.").[3]

The Government alternatively argues that the statute satisfies strict scrutiny because it "has a compelling interest to protect the health, lives and property of its citizens during declared states of emergencies from unscrupulous individuals that **intentionally** disseminate false alarms in order to create chaos." Dkt. No. 62 at 28. The Government relies on the Supreme Court's decision in *Burson v. Freeman*, which held that a restriction on electioneering outside polling places satisfied scrutiny. 504 U.S. 191, 199 (1992). But whereas *Burson* "point[ed] to a 'widespread and time-tested consensus' that demonstrated that restricted zones were necessary to serve the states' compelling interests in preventing voter intimidation and election fraud, the defendants have not offered any such evidence of necessity" regarding false alarms about emergency conditions. *Picard v. Clark*, — F. Supp. 3d —, 19-cv-3059 (DLC), 2020 WL 4345754, at *6 (S.D.N.Y. July 29, 2020) (quoting *Burson*, 504 U.S. at 206). The only evidence the Government identifies to support the need for Section 6.14(a) is Pastor Rivera's prosecution for sharing information about a rumored executive order on WhatsApp, which the Government claims disrupted the food supply chain. Dkt. No. 62 at 35. Even supposing the Government had submitted evidence demonstrating that Pastor Rivera's speech actually violated Section 6.14(a) and actually caused a significant

---

[3] The Government also relies on the Ninth Circuit's decision in *United States v. Perelman*, 695 F.3d 866 (9th Cir. 2012) (applying intermediate scrutiny to a federal statute prohibiting the false wearing of military medals). However, the Government neglects to mention that *Perelman* was expressly overruled in *United States v. Swisher*, 811 F.3d 299, 318 (9th Cir. 2016) (en banc) (holding that the same statute is a content-based restriction on expressive conduct and cannot survive strict scrutiny). Moreover, while wearing a military medal is expressive conduct, statements about emergency conditions are pure speech. The *O'Brien* test is not applicable to restrictions on pure speech. *See, e.g., Goguen v. Smith*, 471 F.2d 88, 100 n.18 (1st Cir. 1972), *aff'd*, 415 U.S. 566 (1974).

11

disruption to the food supply, this is a textbook example of "anecdote and supposition." One anecdotal example is not sufficient to justify a statute under strict scrutiny.

The Government also has not demonstrated that Section 6.14(a)'s first provision is the least restrictive means for protecting public health and safety. The Government has not shown that counterspeech—in the form of increased government transparency—would be ineffective at addressing its interest. *See Alvarez*, 567 U.S. at 726 (plurality opinion); *id.* at 738 (opinion of Breyer, J.). Nor has it shown that a blanket restriction on all warnings and false alarms, regardless of whether they are likely to cause harm, is necessary to protect the public. Indeed, as Plaintiffs pointed out in their opening brief, Section 6.14(a)'s first provision is so broad that it prohibits obviously harmless speech, such as false warnings about an alien invasion. Dkt. No. 50 at 22. The Government has not explained why this speech must be criminalized in order to protect the public. *See SBA List II*, 814 F.3d at 475 (holding that Ohio's false statement law was "not narrowly tailored" to the government's interest in preserving fair elections, because it penalized knowingly false statements about political candidates even if there was no plausible risk that they would influence the election).[4]

### D. Plaintiff's are likely to succeed in demonstrating Section 6.14(a)'s second provision is facially unconstitutional.

The Government also fails to justify Section 6.14(a)'s second provision. This provision makes it a crime to "disseminate, publish, transmit, transfer and/or circulate through any means of communication, including the means of television media, social network, and/or any other means of dissemination, publication or distribution of information, a notice or a false alarm, knowing that the information is false," if a "result" of the speech "puts the life, health, bodily integrity or safety

---

[4] For the same reasons, Section 6.14(a)'s first provision also fails intermediate scrutiny. *See* Dkt. No. 50 at 21–22.

of one or more persons at imminent risk, or endangers public or private property." As Plaintiffs argued in their opening brief, this provision establishes an unconstitutional heckler's veto, Dkt. No. 50 at 23–24, because it predicates liability on the government's subjective determination about how people might react to protected expression. *March v. Frey*, — F. Supp. 3d —, No. 2:15-CV-515-NT, 2020 WL 2044625, at *12 (D. Me. Apr. 28, 2020); *see also, e.g.*, *Matal*, 137 S. Ct. at 1767 (opinion of Kennedy, J.). It is also unconstitutionally vague, because it fails to provide notice about what speech is prohibited and invites arbitrary, selective, or discriminatory enforcement. *See Ashton v. Kentucky*, 384 U.S. 195, 200 (1966). The Government offers no response to these arguments.

Putting those issues aside, the Government has failed even to carry its burden under the intermediate scrutiny reserved for content-neutral laws. To satisfy intermediate scrutiny, the Government must demonstrate that the statute's restriction on speech is reasonably proportionate to the government's asserted justifications, taking into account "the seriousness of the speech-related harm the provision will likely cause, the nature and importance of the provision's countervailing objectives, the extent to which the provision will tend to achieve those objectives, and whether there are other, less restrictive ways of doing so." *Alvarez*, 567 U.S. at 730 (opinion of Breyer, J.). As noted above, the Government has not submitted any evidence demonstrating that Section 6.14(a) is necessary to protect public health and safety, nor has it shown that counterspeech would be ineffective.

Furthermore, Section 6.14(a)'s second provision is not remotely tailored to the Government's asserted interest. As Plaintiffs have already pointed out, the Federal Communications Commission's broadcast hoaxes rule, 47 C.F.R. § 73.1217, provides a ready example of a much narrower regulation that addresses the exact same interests as Section 6.14(a).

Dkt. No. 50 at 25–26. The broadcast hoaxes rule imposes civil (not criminal) penalties on any federally licensed broadcaster that transmits false information "concerning a crime or catastrophe" if the broadcaster: "knows the information is false"; "could expect with a significant degree of certainty" that "direct and actual damage to property or to the health or safety of the general public" would "immediately" occur; and the speech does in fact directly cause such harm. 47 C.F.R. § 73.1217. Unlike the broadcast hoaxes rule, Section 6.14(a)'s second provision is not narrowly defined in terms of subject matter; it does not require the government to demonstrate that the harm was certainly foreseeable; it does not describe how great the risk of harm needs to be in terms of either likelihood or severity; and it does not require the government to show that harm actually resulted. The Government does not explain why a narrower statute modeled on the broadcast hoaxes rule would be insufficient to protect its interests.

Instead, the Government relies heavily on the fact that Section 6.14(a) prohibits only *knowingly* false speech. Dkt. No. 62 at 22–25. A similar scienter requirement was, however, insufficient to sustain the Stolen Valor Act. The Act made it a crime "falsely" to "represen[t]" oneself "to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States." 18 U.S.C. § 704(b). The Supreme Court construed it "as criminalizing only false factual statements made with knowledge of their falsity and with the intent that they be taken as true." *Alvarez*, 567 U.S. at 732; *see id.* at 740 (opinion of Alito, J.) (noting that all three opinions agreed the Act required the government to demonstrate beyond a reasonable doubt that the defendant knew the speech was false). Nonetheless, the Act "still range[d] very broadly," and that breadth "create[d] a significant risk of First Amendment harm," especially in "political contexts" where the "risk of censorious selectivity by prosecutors" was especially high. *Id.* at 736 (opinion of Breyer, J.). This risk was "not completely eliminated by *mens rea* requirements; a

14

speaker might still be worried about being prosecuted for a careless false statement, even if he does not have the intent required to render him liable." *Id.* Because "a more narrowly tailored statute combined with . . . information-disseminating devices [would have] effectively serve[d] Congress' end," the Stolen Valor Act failed to survive intermediate scrutiny. *Id.* at 738. This analysis controls here as well, especially since Plaintiffs have already identified a more narrowly tailored regulation that serves the exact same government interest.

## II. The violation of Plaintiffs' First Amendment rights constitutes irreparable harm.

Since Plaintiffs "have made a strong showing of likelihood of success on the merits of their First Amendment claim, it follows that the irreparable injury component of the preliminary injunction analysis is satisfied as well." *Sindicato Puertorriqueño de Trabajadores*, 699 F.3d at 15. That is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that the threat of unconstitutional adverse employment constituted irreparable injury). The Government does not dispute these points. Rather, it argues that Plaintiffs have not demonstrated irreparable harm, because they do not confront a credible threat of prosecution. As the Government readily admits, this is just a rehash of its argument on standing. Dkt. No. 62 at 30–31. The Government is wrong for all the reasons discussed in Section I.A, *supra*.

The Government also points to two stories that Plaintiffs published after Act No. 66-2020 was enacted as evidence that Plaintiffs' "journalistic endeavors appeared to be unaffected by the challenge[d] provisions." Dkt. No. 62 at 32. The fact that Plaintiffs continue to work as journalists, however, is not inconsistent with their testimony that the threat of prosecution under Section 6.14(a) has made them more reluctant to report news stories that are controversial or that have not been verified by the Government. *See Kenny v. Wilson*, 885 F.3d 280, 289 n.3 (4th Cir. 2018) ("[A]

15

claimant need not show he ceased [speaking] altogether to demonstrate an injury in fact."). Nor is it inconsistent with Plaintiffs' testimony that, even when they do report such stories, the threat of prosecution affects their reporting "in all sorts of ways, such as how many confirmations [they] need to report a story, what information [they] include, and even what words [they] use," as well as by interfering with their access to sources. Second Decl. of Sandra Rodríguez-Cotto ¶¶ 8–9, Dkt. No. 48-1; Second Declaration of Rafelli González-Cotto ¶¶ 8–9, Dkt. No. 48-2. Indeed, the Government itself acknowledges that "[a] burden on protected speech always causes some degree of irreparable harm." Dkt. No. 62 at 34 (citing *Elrod*, 427 U.S. at 373–74).

In any event, Plaintiffs do not even need to show that they are currently being chilled to establish irreparable harm; the credible threat that Plaintiffs might face prosecution or that Plaintiffs' reporting might be chilled during the pendency of the litigation is sufficient. *See Elrod*, 427 U.S. at 373 (holding that the plaintiffs had demonstrated irreparable harm because "First Amendment interests were *either threatened or in fact being impaired* at the time relief was sought." (emphasis added)). As discussed in Section I.A, *supra*, Plaintiffs already confront a credible threat of prosecution. Furthermore, as the First Circuit's decision in *Mangual* makes clear, a credible threat of prosecution under a law criminalizing false speech is sufficient to presume the existence of a chilling effect, even though Plaintiffs continue to work as journalists. *See* 317 F.3d at 58. Plaintiffs' unrebutted allegations of chill further support this presumption.

### III. The balance of equities and the public interest support the vindication of First Amendment rights.

The balance of hardships and the public interest "weigh[] heavily against Defendants" in any case where a plaintiff demonstrates a likelihood of success on the merits of a free speech claim, because "First Amendment freedoms must always be protected" and "suppressing protected speech innately harms the public interest as a whole." *Firecross Ministries*, 204 F. Supp. 2d at

16

250–51; *accord, e.g.*, *Magriz v. Union de Tronquistas de P.R., Local 901*, 765 F. Supp. 2d 143, 157 (D.P.R. 2011). The public interest supporting vindication of First Amendment rights is especially strong, because "the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other people' subjected to the same restrictions." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (alterations in original) (quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002)).

Against the certain and irreparable harm to First Amendment freedoms inflicted by Section 6.14(a), the Government counterposes *ipse dixit* that the statute is necessary to protect public security. But the "word 'security' is a broad, vague generality whose contours should not be invoked to abrogate the fundamental law embodied in the First Amendment." *N.Y. Times Co. v. United States*, 403 U.S. 713, 719 (1971) (Black, J., concurring) (refusing to grant the government's motion to enjoin the publication of the Pentagon Papers during the Vietnam War). To the contrary, the Framers of the First Amendment "sought to give this new society strength and security by providing that freedom of speech, press, religion, and assembly should not be abridged." *Id*.

**IV.    This Court should exercise its discretion to waive the Rule 65 bond requirement.**

Finally, Defendants argue that this Court must impose a bond requirement under Federal Rule of Civil Procedure 65. Dkt. No. 62 at 36. Defendants fail to address the First Circuit's decision in *Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers*, which held that district courts have discretion to waive the Rule 65 bond requirement "in suits to enforce important federal rights or public interests." *See*, 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984) (citations and internal quotation marks omitted). Because *Crowley* squarely applies here, and because Plaintiffs brought

this lawsuit to vindicate fundamental First Amendment rights in the public interest, no bond should be required.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction prohibiting the government from enforcing Section 6.14(a). Plaintiffs also respectfully request that the Court waive any bond requirement under Federal Rule of Civil Procedure 65(.

I HEREBY CERTIFY that the undersigned attorney electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to the parties subscribing to the CM/ECF System.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 28th day of August 2020.

> S/*Fermín L. Arraiza-Navas*
> FERMÍN L. ARRAIZA NAVAS
> USDC-PR #215705
> William Ramirez-Hernández+
> American Civil Liberties Union
> of Puerto Rico
> Union Plaza
> 416 Ponce de León Avenue, Suite 1105
> San Juan, PR 00918
> (787) 753-9493; (646) 740-3865
> farraiza@aclu.org
>
> Brian Hauss*
> Emerson Sykes+
> Arianna Demas+
> American Civil Liberties Union Foundation
> 125 Broad Street, 18th Floor
> New York, NY 10004
> (212) 549-2500
> bhauss@aclu.org
>
> *Pro hac vice
> + Of counsel
>
> *Attorneys for Plaintiffs*