## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SANDRA RODRÍGUEZ-COTTO;**<br>**RAFELLI GONZÁLEZ-COTTO** | CIVIL NO. 20-01235 (PAD) |
| *Plaintiffs,* | RE: Preliminary and Permanent<br>Injunction |
| v. | |
| **HON. PEDRO R. PIERLUISI URRUTIA**,<br>Governor of Puerto Rico; **DOMINGO**<br>**EMANUELLI-HERNÁNDEZ**, Secretary of<br>Justice of Puerto Rico; **ALEXIS TORRES RÍOS**,<br>Secretary of the Department of Public Safety of<br>Puerto Rico; **ANTONIO LÓPEZ FIGUEROA**,<br>Commissioner of the Puerto Rico Police Bureau, all<br>in their official capacities | |
| *Defendants.* | |

## MOTION FOR RECONSIDERATION

**TO THE HONORABLE COURT:**

**COME NOW**, Defendants and, through the undersigned counsel, very respectfully **STATE** and **PRAY** as follows:

### I.    INTRODUCTION

On March 31, 2023, this Honorable Court issued an Opinion and Order declaring that Article 5.14(a) of the Law of the Puerto Rico Department of Public Safety, Law No. 20 of 2017, P.R. Laws Ann. tit. 25, §§ 3501, et seq. ("Law 20") is unconstitutional and enjoined its enforcement. (Docket No. 92).[1] The Court reasoned that as drafted, the challenged provision did not pass muster under the First Amendment. Id.

---

[1] On March 31, 2023, the Court entered Judgment permanently enjoining Pedro R. Pierluisi-Urrutia, in his capacity as governor of the Commonwealth of Puerto Rico; Domingo Emanuelli-Hernández, in his capacity as Secretary of the Department of Justice of Puerto Rico; Alexis Torres, in his capacity as Secretary of the Department of Public Safety of Puerto Rico; and Antonio López-Figueroa, in his capacity as Commissioner of the Puerto Rico Police Department,

Defendants respectfully move this Honorable Court to reconsider its ruling.  In first instance, Plaintiffs lack Article III standing to challenge Article 5.14(a) of Law 20, as their fear of prosecution is based on hypotheticals and not in a concrete, actual, or imminent injury.  Second, this Court failed to take into account binding precedent from the Court of Appeals for the First Circuit, relying on Supreme Court precedent as decided in *Garrison v. State of La.*, 379 U.S. 64 (1964).  In *Frese v. Formella*, 53 F.4th 1 (1st Cir. 2022)[2], the appellate court found that a state can impose criminal sanctions for criticism of the official conduct of public officials as long as those statements were made with knowledge that they were false or with reckless disregard of whether they were false or not.  Third, Defendants assert that due process was not served, as they were not given the opportunity to conduct discovery regarding Plaintiff's allegations, which would have influenced this court's decision. It is worth noting that Defendants were not able to answer the complaint or file a dispositive motion, which they believe hindered their ability to present a robust defense. In light of these factors, Defendants respectfully request that the court reconsider its decision to prevent a manifest error of law, find that Article 5.14(a) is valid, and consequently, dismiss with prejudice the present case.

## II.    STANDARD OF REVIEW FOR A MOTION FOR RECONSIDERATION

The Federal Rules of Civil Procedure "do not specifically provide for the filing of motions for reconsideration." *Sánchez–Pérez v. Sánchez–González*, 717 F.Supp.2d 187, 193-94 (D.P.R. 2010). "Motions for reconsideration are generally considered either under Fed.R.Civ.P. 59 or Rule 60, depending on the time such a motion is served."  *Villanueva-Méndez v. Nieves Vázquez*, 360 F. Supp. 2d 320, 322 (D.P.R. 2005), *aff'd*, 440 F.3d 11 (1st Cir. 2006)(citing *Pérez–Pérez v.*

---

from enforcing Article 5.14(a) of the Law of the Puerto Rico Department of Public Safety, Law No. 20 of 2017, P.R. Laws Ann. Tit. 25 §§ 3501, et seq. (Docket No. 93).

[2] A petition for Certification to the Supreme Court of the United States has been filed in this case.

*Popular Leasing Rental, Inc.,* 993 F.2d 281, 284 (1st Cir. 1993)).  However, "a motion which ask[s] the court to modify its earlier disposition of [a] case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e)."  *Johnson & Johnson Int'l v. Puerto Rico Hosp. Supply, Inc*., 322 F.R.D. 439, 441 (D.P.R. 2017) (quoting *Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 7 (1st Cir. 2005)).

"A party may seek to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). Rule 59(e) relief is granted sparingly, and only when 'the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations.'" *Biltcliffe v. CitiMortgage, Inc.,* 772 F.3d 925, 930 (1st Cir. 2014) (citing *Global Naps, Inc. v. Verizon New England, Inc.,* 489 F.3d 13, 25 (1st Cir. 2007)). Hence, a motion for reconsideration "may not be used by the losing party to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." *Villanueva-Méndez,* 360 F. Supp. 2d at 323 (D.P.R. 2005), *aff'd*, 440 F.3d 11 (1st Cir. 2006). *see also Waye v. First Citizen's National Bank,* 846 F.Supp. 310, 314 n. 3 (M.D. Pa. 1994) (a motion for reconsideration is unavailable if it simply brings a point of disagreement between the court and the litigant, or to reargue matters already properly prior thereto disposed).

It should be noted that "[i]n deciding a motion for reconsideration, the reviewing court has considerable discretion." *Betancourt-Rivera v. Vázquez-Garced,* 314 F. Supp. 3d 367, 370 (D.P.R. 2018) (citing *Venegas–Hernández v. Sonolux Records*, 370 F.3d 183, 190 (1st Cir. 2004)). Defendants contend that this Court erred in determining that Plaintiffs have standing to challenge Article 5.14(a) of Law 20, not considering biding precedent, and failing to provide Defendants with the opportunity to conduct discovery and file dispositive motions.   In this way, reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure is warranted to prevent a manifest error of law.

### III.   ANALYSIS

**A.  The Court erred in finding Plaintiffs have standing to challenge Article 5.14(a).**

The doctrine of standing is drawn from Article III of the Constitution, which confines the federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2; *Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017). To establish standing, a plaintiff must show: (1) an "injury in fact," (2) fairly traceable to the challenged conduct, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). In this regard, Plaintiffs failed from the outset in the first element of the part equation, that is, whether they have suffered an injury in fact.  Defendants argue that Plaintiffs have not shown they have suffered an injury in fact, and so lack standing to challenge the proscribed conduct, as will be detailed further below.

Defendants respectfully disagree with the notion that Plaintiffs' intended speech falls under the proscription of Article 5.14(a). An injury "occurs when a plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the statute, and there exists a credible threat of prosecution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The second type of injury that may suffice "occurs when a plaintiff 'is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).  Here, Plaintiffs have expressly stated that it is not their intention to engage in the proscribed speech, but that the possibility of publishing said information – give a warning or false alarm purposely, recklessly or knowing that the information is false – may result in prosecution (Docket No. 4-1).  But the challenged statute is strictly limited to disseminating, not any type of information, but information they know is false.  In this sense, Plaintiffs' basis for alleging standing is not founded on an injury in fact but on imaginary or speculative fears. *Younger*

*v. Harris*, 401 U.S. 37, 42 (971)(imaginary or speculative fears of state prosecution are not to be accepted as appropriate plaintiffs).

The Court noted in its Opinion and Order that the challenged provision does not have any exceptions and, therefore, that Plaintiffs' reports through the media and social networks could be proscribed. But there is one essential aspect of Article 5.14(a) that the Court did not consider while assessing whether Plaintiffs' intended speech is proscribed. Specifically, the provision that criminalizes the dissemination of knowingly false information in connection with an emergency or imminent catastrophe. In *Garrison v. State of La.*, 379 U.S. 64, 73 (1964) the Supreme Court of the United States stated that "even where the utterance is false, the great principles of the Constitution which secure freedom of expression in this area preclude attaching adverse consequences to any except the knowing or reckless falsehood." In this sense, the Supreme Court has validated the restriction of speech when actual malice is involved. Defendants contend that Plaintiffs' intended speech does not fall under the challenged statute and as a result, no credible threat of prosecution exists.

Plaintiffs must show a realistic and direct possibility of suffering an injury as a result of the statute's operation or enforcement to prove standing. This requirement is consistent with the legal principles of standing and ensures that Plaintiffs have a legitimate stake in the outcome of the case. *Babbit*, 442 U.S. 289, 298. Here, Plaintiffs have never been able to demonstrate a realistic risk of suffering a direct injury due to the operation or enforcement of the statute. Plaintiffs relied solely on a hypothetical and speculative fear of prosecution that had no basis in fact and cannot be reasonably inferred. Therefore, it is respectfully submitted that Plaintiffs failed to establish a genuine danger of harm resulting from the statute's implementation as required in *Babbit*. Defendants are not asking Plaintiffs to violate the law to prove their point. They simply maintain that there can be no credible threat of prosecution, as long as they maintain that their intended

speech is not knowingly false. The defendants respectfully move this court to reconsider its decision as to Plaintiffs' standing.

Based on the factual stipulations at Docket No. 23, Defendants contend that Plaintiffs failed to meet the three-prong test recognized in *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 159 (2014) as to standing.[3] Firstly, the language of the statute does not prohibit reporting on emergency conditions. Secondly, Plaintiffs have no intention of engaging in any conduct that is prohibited by the challenged provision, as they so have stated. Therefore, the third prong is absent too, as there is no credible threat of prosecution. As pointed out in *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003), mere subjective and irrational fear of prosecution is insufficient to establish standing under Article III. Assuming that Plaintiffs' assertion that they have no intention of disseminating false information and intend to operate in accordance with the best journalistic practices is true, it is difficult to imagine a scenario where they could be exposed, much less threatened with prosecution. Plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). If Plaintiffs' intended speech is not knowingly false, and they have no intention of engaging in any conduct that is prohibited by the challenged provision, there can be no credible threat of prosecution.

---

[3] In *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 159 (2014), the court considered whether a state law that criminalized false statements made during an election campaign could be challenged on First Amendment grounds. Specifically, the case revolved around the issue of whether a pro-life advocacy group had the right to challenge an Ohio law that made it a crime to knowingly or recklessly make false statements about a candidate's voting record or position on abortion. The Supreme Court identified three standing requirements: (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but (2) proscribed by a statute, and (3) there exists a credible threat of prosecution thereunder.

**B.  Article 5.14(a) is constitutionally valid under *Frese v. Formella*, which found that a state can impose criminal sanctions so long as the statements were made with actual malice.**

In its Opinion and Order, this court found that Article 5.14(a) cannot be enforced consistent with the First Amendment (Docket No. 92).  But this provision did not impede the reporting of emergency conditions or false statements, which would be protected under the First Amendment. Rather, it prohibited the dissemination of knowingly false information that might trigger a false alarm or warning during a state of emergency. And under *Frese v. Formella*, 53 F.4th 1 (1st Cir. 2022), the "actual malice" requirement renders the challenged provision constitutional.

In *Frese*, the First Circuit held that a state can impose criminal sanctions for criticism of the official conduct of public officials so long as the statements were made with actual malice, that is, with knowledge that they were false or with reckless disregard of whether they were false or not. Id. As a result, the provision in this case met the actual malice requirement which Defendants believe the Court did not consider in its Opinion and Order. It follows that the plain language of the provision does not trigger its applicability in the case of Plaintiffs' publication of journalistic articles on emergency conditions, even if such articles contain false information. As such, it cannot be argued that the Plaintiffs' publication of journalistic articles on emergency conditions, even if they contain false information, falls within the ambit of the challenged provision. Therefore, we respectfully contend that the Plaintiffs' intended speech is not proscribed by the provision being challenged.

In the Opinion and Order, the Court, in discussing Justice Kennedy's opinion in *U.S. v. Álvarez*, 567 U.S. 709 (2012), enumerated and compared the falsehood statutes that the Supreme Court considered acceptable. (Docket No. 92 at p. 34).[4]  As a result, the Court ultimately found

---

[4] The court considered the criminal prohibition of a false statement made to a government official in communications concerning official matters; 18 U.S.C. § 1623 (the criminal prohibition against perjury); and 18 U.S.C. § 912 (the criminal prohibition against falsely representing that one is speaking on behalf of the government or impersonating a

that the Government did not show why a narrower statute would be insufficient to protect its interests. Id. at 38.  The Court relied heavily on Justice's Breyer concurrent opinion in which he concluded that the prohibition listed in *Álvarez* limited the scope of their application, by requiring proof of specific harm to identifiable victims; specifying that the lies must be made in contexts in which a tangible harm to others is especially likely to occur; or limiting the prohibited lies to those that are particularly likely to produce harm. Id. at 734. (Docket No. 92 at p. 35). Although Article 514(a) does not identify victims in the same way criminal defamation acts against public officials, the challenged statute does identify that if the knowingly false information results in danger of life, health, bodily integrity or safety of one or more persons at imminent risk or endangers public or private property. Defendants contend that the limiting language included in Article 5.14(a) aligns more with the majority opinion in *Álvarez* and unlike the Stolen Valor Act of 2005, the challenged provision does target more than falsity, that is, falsity with prior knowledge of its falsehood, during an emergency or imminent catastrophe.

Defendants noted in their briefs that the Supreme Court's decision in *Álvarez* invalidated the Stolen Valor Act because it applied to false statements made at any time, in any place, and to any person, without regard to whether the lie was made for the purpose of material gain. (Docket 62 at p.26). Section (a) of the challenged provision is more narrowly tailored because it specifically targets individuals who give a warning or false alarm, knowing that the information is false, in relation to the imminent occurrence of a catastrophe in Puerto Rico during a state of emergency. This is the same proof that Justice Breyer concluded that these prohibitions limited the scope of their application, by requiring proof of specific harm to identifiable victims; specifying that the

---

government officer), explaining these provisions' prohibitions. *See Álvarez*, 567 U.S. at 720, 723 (plurality)(listing statutes).

lies must be made in contexts in which a tangible harm to others is especially likely to occur; or limiting the prohibited lies to those that are particularly likely to produce harm. *Álvarez*, at 734.

This requirement of intent is consistent with established legal principles, as seen in *United States v. Lepowitch*, 318 U.S. 702, 704 (1943), where the Court held that a statute proscribing false impersonation of government officers was valid as long as the defendants intended to cause the deceived person to follow a deceitful course of action. Applying this reasoning, it is clear that the challenged provision is constitutional, as it seeks to prohibit the deceitful conduct of those who knowingly spread false alarms about emergencies in Puerto Rico with the intention of causing chaos among the population. The Seventh Circuit decision in United *States v. Bonin*, 932 F.3d 523, 536 (7th Cir. 2019)[5], which upheld a similar provision that criminalized false alarms during a state of emergency, recognize that such laws serve a legitimate government interest in maintaining public safety and order. In light of the above, Defendants believe that this Court should reconsider.

## C.  *U.S. v. Álvarez,* 567 U.S. 709 (2012), was a "fractured decision resulting in a legal framework that remains uncertain."

In the "False Statements" section of its Opinion and Order (Docket No. 92), this Honorable Court focused on the plurality opinion of *U.S. v. Álvarez*, 567 U.S. 709 (2012) ("*Álvarez*"), in which the Supreme Court analyzed whether the Stolen Valor Act of 2005 violated the First Amendment by making it a crime for a person to "falsely represent[ ] himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces." *Id*. at 715. Xavier Álvarez was a habitual liar, but when he lied in announcing he held the Congressional Medal of Honor, Álvarez ventured onto new ground; for that lie violated a federal criminal statute, the Stolen Valor Act of 2005. *Álvarez*, 567 U.S. at 713.

---

[5] The 7th Circuit *Bonin* case is cited for its persuasive value.

The *Álvarez* "decision was a fractured one, resulting in a legal framework that remains uncertain." Alan K. Chen & Justin Marceau, *High Value Lies, Ugly Truths, and the First Amendment*, 68 Vand. L. Rev. 1435, 1452 (2015).[6] Justice Anthony M. Kennedy, writing for a 6-3 majority, declared the Act unconstitutional.[7]  The majority opinion held that the Stolen Valor Act constituted a content-based restriction on free speech, in violation of the First Amendment. But there is no opinion of the Supreme Court "that sets forth a guiding rationale." *Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 784 (8th Cir. 2021).  "Without a single rationale from *Álvarez* that can be identified as a holding in the case, the only binding aspect of the decision is its specific result." *Id.* at 785 (citing *See Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161, 170 (3d Cir. 1999)).

Importantly, the Opinion and Order states that "Justice Breyer (joined by Justice Kagan) concurred in the judgment that the Stolen Valor Act violates the First Amendment" and that Breyer "expressed that the case involved a false statement of an **easily verifiable fact**" (Docket No. 92 at 25)(Emphasis added). But the false statements that Article 5.14(a) of Law 20 criminalizes and the false statements that the Stolen Valor Act criminalized are not on the same level of verifiability. Article 5.14(a) criminalizes some types of speech only after the Governor has decreed a state of emergency or disaster in the Commonwealth, while the Stolen Valor Act criminalized the false representation of having been awarded any decoration or medal authorized by Congress for the Armed Forces.

---

[6] Professors Alan K. Chen & Justin Marceau, *High Value Lies, Ugly Truths, and the First Amendment* is cited throughout this Court's *Opinion and Order*.

[7] Justice Breyer filed an opinion concurring in the judgment, in which Justice Kagan joined. Justice Alito filed a dissenting opinion, in which Justice Scalia and Justice Thomas joined.

Note that the *Álvarez* majority opinion expressed that "one less speech-restrictive means by which the Government could likely protect the integrity of the military awards system was '[a] Government-created database could list Congressional Medal of Honor recipients. Were a database accessible through the Internet, it would be easy to verify and expose false claims.'" *Álvarez*, 567 U.S. at 729. The Court then clarified that some private individuals had already created databases similar to that, including at least one database of past recipients that was "online and fully searchable." *Id*.  But verifying speech after a governor has decreed a state of emergency or disaster is not as simple to verify as confirming whether someone has received a Congressional Medal of Honor. If the appearing Defendants would have been given an opportunity to file dispositive motions, they could have addressed this matter.[8]  Notwithstanding, the negative consequences of a false speech during an emergency or disaster are much higher than the ones that may arise from a person's lie about receiving a Medal of Honor. After all, *Álvarez* ruled that intentional falsehoods are protected by the First Amendment but only "when they do not cause serious harm." Cass R. Sunstein, *Falsehoods and the First Amendment*, 33 Harv. J.L. & Tech. 387, 388 (2020).

It should also be highlighted that the false statements section of the Opinion and Order did not include in its discussion the recent holding of *Frese v. Formella*, 53 F.4th 1 (1st Cir. 2022), Robert Frese had twice been charged with violating a New Hampshire criminal defamation statute and he argued that the statute itself contravened the First and Fourteenth Amendments. The statute provided that "[a] person is guilty of a class B misdemeanor if he purposely communicates to any person, orally or in writing, any information which he knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule." N.H. Rev. Stat. § 644:11(I).

---

[8] In another section of this Motion for Reconsideration, Defendants discuss how not allowing them to file dispositive motions was a violation of their due process rights.

Maintaining that he feared future arrest, Frese filed a complaint in federal district court. The first count charged that the statute was unconstitutionally vague, both on its face and as applied, in violation of the Fourteenth Amendment. The second count asserted that the statute violated the First Amendment because it criminalized defamatory speech. The State moved to dismiss the complaint, and the district court obliged. After first finding that Frese had established standing to bring the case, the court dismissed for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). The First Circuit, mindful of the Supreme Court's guidance that the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection, concluded that Frese's allegations fall short of asserting viable constitutional claims. *Frese v. Formella*, 53 F.4th at 4 (citing *Garrison, supra,* 379 U.S. at 75, (1964)) (internal quotations omitted).

As to the First Amendment claim, Freese argued that criminal defamation laws should be per se unconstitutional. However, the First Circuit clarified that the Supreme Court "**has upheld the criminalizing of false speech, explaining that deliberate and recklessly false speech 'do[es] not enjoy constitutional protection**.'" *Frese*, 53 F.4th at 6 (citing *Garrison*, 379 U.S. at 75). (Emphasis added). Thus, "the state can impose criminal sanctions for criticism of the official conduct of public officials so long as the statements were made with actual malice, that is, with knowledge that they were false or with reckless disregard of whether they were false or not." *Id*. (citing *Garrison*, 379 U.S. at. 67, quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, (1964) (internal quotations omitted)). As to the Fourteenth Amendment claim, the Court concluded that "the New Hampshire statute is not unconstitutionally vague, because it gives meaningful enforcement guidelines and adequate notice." *Frese*, 53 F.4th at 11.

### D. Article 5.14(a) is valid law under intermediate scrutiny.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be validin." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Court has held that "a facial challenge must fail where the statute has a plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). The challenged provision cannot be deemed unconstitutional on the basis of being content-based. The Court found that the fact that the Government has the constitutional power to prohibit dissemination of false representations under certain circumstances does not mean it may exercise that power without regard to constitutional restrictions, particularly those found in the First Amendment. (Docket No. 92 at 29). Further, the Court stated that a provision that punishes false speech, not truthful speech is to favor one form of content over another. Id. at p. 14.

But statutes that prohibit false speech to protect the integrity of government processes and maintain the general good repute and dignity of government service itself are permissible restrictions on free speech. *Álvarez*, 567 U.S. 709. This view was also shared by Justice Breyer's concurring opinion and Justice Alito's dissent. Therefore, the Court should have given significant weight to these opinions in determining the constitutionality of the challenged provision.

In this case, the challenged provision prohibited conduct that included an expressive element, which is distinct from pure speech. Therefore, an intermediate scrutiny standard was the correct one to apply in determining the constitutionality of the statute. This view was expressed in *United States v. Tomsha-Miguel*, 766 F.3d 1041, 1048–49 (9th Cir. 2014) where the court applied intermediate scrutiny and found a false pretenses criminal statute to be a constitutionally permissible restriction on free speech. A similar standard was applied in *United States v. Perelman*,

695 F.3d 866, 871– 72 (9th Cir. 2012) where the court applied intermediate scrutiny to a statute prohibiting the wearing of false military medals, an action deemed to be expressive conduct.

According to intermediate scrutiny, a government regulation is considered justified if it is within the constitutional power of the government, furthers an important or substantial governmental interest, is unrelated to the suppression of free expression, and if the restriction on alleged First Amendment freedoms is no greater than essential to further that interest. This standard was set forth in *United States v. O'Brien*, 391 U.S. at 367. Defendants believe that this Court should not have disregarded the test in *O'Brien* because content-based restriction on speech is "outside of *O'Brien's* test altogether." (Docket No. 92 at 42). In this case, the government has the constitutional power to prohibit the dissemination of false representations, and that prohibition serves the substantial government interests of protecting the integrity of Government processes and maintaining the general good repute and dignity of government service itself. These interests are also unrelated to the suppression of free expression because the challenged provision does not prevent the expression of any particular message or viewpoint. Instead, the government's interests are concerned solely with the act of disseminating a false alarm itself, knowing that it was untrue, regardless of its content. In this regard, the Court found that the Government did not provide any evidence of a direct causal link connecting Article 5.14(a)'s prohibitions to the harm the Article attempts to assuage. However, as will be discussed below, Defendants were not afforded an opportunity to provide evidence in this case to prove a direct causal link.

### E. Defendants were not allowed to file dispositive motions in violation of their due process rights.

1. Defendants were prejudiced in their right to present evidence.

In the Opinion and Order, the Court stated that "the Government here did not present evidence of a direct causal link connecting Article 5.14(a)'s prohibitions to the harm the Article

attempts to assuage." (Docket No. 92 at p. 31). It further stated that "the Government did not present evidence to support the affirmation that a criminal prohibition against false warnings and alarms about the imminent occurrence of a catastrophe in Puerto Rico is necessary to advance the Government's asserted interest. The connection may be rational, but is devoid of evidentiary support." *Id*. at 31-32. The Commonwealth respectfully posits that it was deprived of an opportunity to present the evidence of a direct causal link connecting Article 5.14(a)'s prohibitions to the harm the alluded article attempts to assuage and the evidence to support the affirmation that a criminal prohibition against false warnings and alarms about the imminent occurrence of a catastrophe in Puerto Rico is necessary to advance the Government's asserted interest.

Defendants were prejudiced in their right to file dispositive motions in this case with the corresponding evidence that could have been filed with a motion to dismiss [9] or a motion for summary judgment. This would have allowed the court to make a fully informed decision with evidence and based on the merits.

2. <u>Defendants were unaware that the merits of the case would be decided after the consolidation of the preliminary injunction with the request for permanent injunctive relief.</u>

Courts can consolidate preliminary and permanent injunction applications. *VAMOS, Concertación Ciudadana, Inc. v. Puerto Rico*, 494 F. Supp. 3d 104, 126 (D.P.R. 2020); *Vaquería Tres Monjitas, Inc. v. LaBoy*, 448 F. Supp. 2d 340, 346–47 (D.P.R. 2006). The Federal Rules of Civil Procedure also allow a court to consolidate a preliminary injunction hearing with a trial on the merits. *Aponte v. Calderón*, 284 F.3d 184, 190 (1st Cir. 2002) (citing Fed.R.Civ.P. 65(a)(2)). In addition to provide the parties with clear and unambiguous notice of its intent to consolidate,

---

[9] The First Circuit permits courts, "in some instances, to consider on a Rule 12(b)(6) motion documents that were not attached to the complaint." *Foley v. Wells Fargo Bank, N.A*., 772 F.3d 63, 74 (1st Cir. 2014)*.* These narrow exceptions include documents the authenticity of which are not disputed by the parties; documents central to plaintiffs' claim; or documents sufficiently referred to in the complaint. *Id*. (citing *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993)).

the "notice must be given sufficiently early to allow the parties time to assemble and present their evidence." *Id*. "The object of the preliminary injunction is to preserve the status quo pending the litigation of the merits. This is quite different from finally determining the cause itself." *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975). Indeed, "judicial intervention before the merits have been finally determined may impose a burden on defendant that ultimately turns out to have been unjustified." § 2947 Purpose and Scope of Preliminary Injunctions, 11A Fed. Prac. & Proc. Civ. § 2947 (3d ed.)

In *T.M.T. Trailer Ferry v. Union de Tronquistas,* 453 F.2d 1171, 1172 (1st Cir. 1971), the First Circuit "reversed the district court's dismissal of the complaint where plaintiff had not been told, until after its case was completed, that the merits were to be decided along with the preliminary injunction motion." *K-Mart Corp. v. Oriental Plaza, Inc*., 875 F.2d 907, 913 (1st Cir. 1989). The First Circuit has also clarified that the power of consolidation under Federal Rule of Civil Procedure 65(a)(2) "must be tempered by the due process principle that fair notice and an opportunity to be heard must be given the litigants before the disposition of a case on the merits." *Id,*

A district court should not consolidate a hearing for preliminary relief with trial on merits unless the court has given both parties clear and unambiguous notice of its intent to do so. *Se. Pennsylvania Transp. Auth. v. Pennsylvania Pub. Util. Comm'n*, 210 F. Supp. 2d 689 (E.D. Pa. 2002), *aff'd sub nom. Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 342 F.3d 242 (3d Cir. 2003). In *Se. Pennsylvania Transp. Auth.*, 210 F. Supp. 2d 689 (E.D. Pa. 2002), the Court explained that because it did not provide such notice, it could not grant any relief in the form of a permanent injunction. *Id*.

On July 5, 2022, close to two years after the filing of Plaintiffs' Renewed Motion for Preliminary Injunction (*see* Docket 48), this Honorable Court issued an Order stating that after

reviewing the record the court was "persuaded that the preliminary injunction phase should be consolidated with the request for permanent injunctive relief." (Docket No. 86). It then ordered that by "July 19, 2022, the parties shall inform the court if special measures should be considered for the consolidation. By the same date, they may supplement their briefs on issues awaiting resolution." *Id*. (Docket No. 86). The Court did not mention deadlines for dispositive motions in its order. Both parties filed motions in compliance with the Court's Order at Docket No. 86 (Docket Nos. 87 and 88).

Importantly, Defendants' motion in compliance stated that "the Court should primarily adjudicate the standing issue—which has been fully briefed by both parties for two years—because it is essential to determine whether it has jurisdiction to move forward with the case, be it under a preliminary or permanent injunction criterion." (Docket No. 88 at 3-4) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Moreover, Defendants pointed that "once the standing inquiry is addressed by this Court, **Defendants will be in better position to determine if further briefing regarding the merits of the case is necessary**." *Id*. at 4. (Emphasis added). In other words, Defendants did not waive their right to brief the merits of the case.

On September 25, 2020, the Parties filed a Joint Motion indicating that Defendants reserved the right to conduct discovery and evidentiary hearing if the court were to address the merits of the preliminary injunction and make factual determinations. (Docket No. 78 at footnote 1).  On July 20, 2022, the Court noted the parties' motions in compliance (Docket Nos. 89 and 90). Then, on July 21, 2022, the Court ordered that "[a]fter providing notice of the court's intention to consolidate the preliminary injunction phase with the request for permanent injunctive relief, and considering the parties responses at Docket Nos. 87 and 88, the preliminary injunction phase is hereby consolidated with the request for permanent injunctive relief." (Docket No. 91). In the order, the Court: (i) did not notify the parties of its intention to resolve the case on the merits; (ii)

did not mention deadlines for dispositive motions and, most importantly; (iii) did not mention that the Commonwealth needed to present evidence of a direct causal link connecting Article 5.14(a)'s prohibitions to the harm the Article attempts to assuage and that evidence to support the affirmation that a criminal prohibition against false warnings and alarms about the imminent occurrence of a catastrophe in Puerto Rico is necessary to advance the Government's asserted interest. *See* Docket No. 92 at 31 (in which the Opinion and Order points out the evidence that was not presented by the Commonwealth).

Without further orders, on March 31, 2023, more than eight months later, the Court issued the Opinion and Order prohibiting the enforcement of Article 5.14(a) of Law 20, for which defendants are requesting reconsideration in the instant motion (Docket No. 92). Even though Defendants were aware of the consolidation of the preliminary injunction phase with the request for permanent injunctive relief, they were unaware that the merits of the case would be decided. The record shows that the court's intention was only to consolidate the preliminary injunctive relief with the permanent injunctive relief, not to reach the merits of the complaint. Thus, Defendants were prejudiced in their right to file dispositive motions, with evidence, to address the merits of the complaint.

In a civil case, a party is entitled as a general matter to discovery of any information sought if it appears reasonably calculated to lead to discovery of admissible evidence. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A. *Degen v. United States*, 517 U.S. 820, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996). The Court has pointed out instances where Defendants were not given the opportunity to conduct discovery, thereby violating their due process rights. As previously noted at Docket No. 88, Defendants requested that the Court address the Article III standing issue before ruling on the merits. Had Defendants been given the opportunity, they would have presented evidence that established a direct causal link between the prohibitions under Article 5.14(a) and

the harm that it aims to address. Therefore, Defendants respectfully urge the Court to reconsider its judgment and allow for discovery in order to fully evaluate the merits of the case. Defendants believe that such an approach would ensure a fair and just resolution of this matter.

Furthermore, the Defendants wish to bring attention to the fact that they were not granted the opportunity to file an answer to the complaint or a dispositive motion before the Court rendered its judgment. While the Defendants did inform the Court that the case was fully briefed for its consideration on the issue of standing, this did not constitute a waiver on their part. Had they been given the chance to conduct limited discovery, the Defendants would have been able to present to the Court a dispositive motion, complete with the evidence that the Court indicated was lacking in its Opinion and Order. Absent clear and unambiguous notice, Defendants respectfully request that the Court reconsider its ruling and allow for discovery and the filing of dispositive motions.

## IV.   CONCLUSION

Defendants respectfully urge the court to reconsider its Opinion and Order, wherein it ruled that Plaintiffs had standing to challenge the constitutionality of Article 5.14(a) of Law 20. Defendants submit that Plaintiffs' purported speech, even without considering their intention of not engaging in the proscribed speech, does not fall under the challenged statute, and no credible threat of prosecution exists.  In addition, Plaintiffs failed to meet the three prongs in the *SBA List* standing test, resulting in no credible threat of prosecution. Furthermore, defendants contend that Article 5.14(a) does not impede the reporting of emergency conditions that may include false statements and that it cannot be argued that Plaintiffs' intended speech falls within the ambit of the challenged provision. Therefore, defendants respectfully request this court to reconsider its ruling as to the issue of standing.

Plus, the challenged provision cannot be deemed unconstitutional on the basis of being content-based, as statutes that prohibit false speech to protect the integrity of government processes

and maintain the general good repute and dignity of government service itself are permissible restrictions on free speech. The challenged provision is more narrowly tailored than the invalidated Stolen Valor Act, as it specifically targets individuals who give a warning or false alarm, knowing that the information is false, in relation to the imminent occurrence of a catastrophe in Puerto Rico during a state of emergency. Intermediate scrutiny is the correct standard to apply in determining the constitutionality of the statute, and the government's interests are concerned solely with the act of disseminating a false alarm itself, knowing that it was untrue, regardless of its content.

Furthermore, Defendants advance they were not given an opportunity to conduct discovery as to Plaintiffs' allegations before the court issued its Opinion and Order at Docket No. 92. Defendants assert that they are entitled to discovery of any information that may lead to the discovery of admissible evidence, and they reserved their right to do so. By consolidating the requests for preliminary and permanent injunctions, the court deprived defendants of their due process.  Defendants request reconsideration of the court's finding of standing and going into the merits of the case without allowing for discovery and the filing of dispositive motions, in part, because it determined that Defendants did not provide enough evidence to persuade the Court as to the merits of the case. Defendants urge the Court to reconsider its Opinion and Order and Judgment and allow for a period of discovery and for the filing of dispositive motions.

**WHEREFORE**, Defendants pray that this Honorable Court reconsider its ruling at Docket No. 92 and, in so doing, find that Plaintiffs lack standing to challenge Article 5.14(a) of Law 20-2017, thus, denying the preliminary and permanent injunction. In the alternative, Defendants request this Court to issue a limited case management order to include discovery and dispositive motion deadlines so as to address the constitutional challenge to Article 5.14(a) of Law 20-2017.

**I HEREBY CERTIFY** that the undersigned attorney electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to the parties subscribing to the CM/ECF System.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 28th day of April 2023.

**DOMINGO EMANUELLI-HERNÁNDEZ**
Secretary of Justice

**SUSANA I. PEÑAGARÍCANO-BROWN**
Deputy Secretary in Charge of Litigation

**MARCIA I. PÉREZ LLAVONA**
Director of Legal Affairs
Federal Litigation and Bankruptcy Division

**DEPARTMENT OF JUSTICE OF PUERTO RICO**
Federal Litigation Division
PO Box 9020192
San Juan, PR 00902-0192

*/s/Joel Torres Ortiz*
**JOEL TORRES ORTIZ**
USDC-PR No. 302311
San Juan, PR 00902-0192
Tel. (787) 721-2900, ext. 1421 & 1412
joeltorres@justicia.pr.gov